*FDIC v. OneBeacon Midwest Insurance Company*
Case No. 1:11-cv-03972

# EXHIBIT B

# Professional @vantage
## *for Financial Institutions*

**Management and Professional Liability Policy**

☐ OneBeacon Insurance Company
☐ OneBeacon America Insurance Company
☒ OneBeacon Midwest Insurance Company
☐ The Employers' Fire Insurance Company
☐ York Insurance Company of Maine
☐ The Camden Fire Insurance Association

**OneBeacon**
I N S U R A N C E

**NOTICE: THIS IS A CLAIMS-MADE POLICY, AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE DURING THE POLICY PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, THE EXTENDED REPORTING PERIOD APPLIES. DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTION.**

**THE TERM 'INSURER' AS USED THROUGHOUT THE ATTACHED POLICY REFERS TO THE COMPANY PROVIDING THIS INSURANCE.**

**PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

| Policy Number: | 474000407-0000 |
|---|---|

| | | |
|---|---|---|
| Item 1. | Name of **Insured**:<br>Principal Address: | Wheatland Bank<br>2244 95th Street<br>Naperville, IL 60564<br>Attn: Insurance Risk Manager |
| Item 2. | **Policy Period:** | 12/14/2007 to 12/14/2010<br>12:01 a.m. local time at the address stated in Item 1. |
| Item 3. | Policy Premium: | $33,543 |
| Item 4. | Policy Year Shared<br>Limit of Liability: | $3,000,000 |
| Item 5. | Extended Reporting Period:<br>    a. Period<br>    b. Premium | <br>12 months<br>75% of Policy Premium |
| Item 6. | Notice of Claim<br>or Potential<br>Claim Address: | Community Bank Claims Department<br>1051 Texas Street<br>Salem, VA 24153<br>Phone: 877-624-2265<br>Fax: 877-624-6665<br>CommercialCS@OneBeacon.com |

Form No. SCB103, Ed. 01-06

# Professional @vantage
*for Financial Institutions*

**Management and Professional Liability Policy**

---

Item 7.  Endorsement(s) Effective at Inception:  SCB201, Ed. 01-06; SCB644, Ed. 01-06; SCB653, Ed. 01-06; SCB667, Ed. 01-06; SCB777, Ed. 01-06

---

Item 8.  Table of Limits
*Coverage is effective only for Insuring Agreements for which a Limit of Liability is set forth below.*

| Item 8.a. Insuring Agreement | Item 8.b. Limit of Liability | Item 8.c. Retention | Item 8.d. Prior or Pending Date | Item 8.e. Subject to Policy Year Shared Limit of Liability |
|---|---|---|---|---|
| A. Insured Persons Liability | $3,000,000 | $0 | 12/14/2006 | Shared |
| B. Financial Institution Indemnification | $3,000,000 | $50,000 | 12/14/2006 | Shared |
| C. Financial Institution Liability | $3,000,000 | $50,000 | 12/14/2006 | |
| C1. IRA/Keogh Liability   Included ☒  Excluded ☐ | | $50,000 | 12/14/2006 | |
| C2. Depositor Liability   Included ☒  Excluded ☐ | | $50,000 | 12/14/2006 | |
| C3. Loss of Sensitive Customer Information   Included ☒  Excluded ☐ | | $50,000 | 12/14/2006 | |
| D. Employment Practices Liability | $1,000,000 | $25,000 | 12/14/2006 | Shared |
| D1. Third Party Sexual Harassment   Included ☒  Excluded ☐ | | | 12/14/2006 | |
| E. Fiduciary Liability | $3,000,000 | $25,000 | 12/14/2006 | Shared |
| F. Lender Liability | $1,000,000 | $25,000 | | Shared |
| F1. Expanded Lender Liability   Included ☒  Excluded ☐ | | | 12/14/2006 | |
| G. Bankers Professional Liability | $1,000,000 | $25,000 | | Shared |
| G1. Expanded Bankers Professional Liability   Included ☒  Excluded ☐ | | | 12/14/2006 | |
| G2. Insurance Services   Included ☐  Excluded ☒ | | | | |
| G3. Broker/Dealer Services   Included ☐  Excluded ☒ | | | | |
| H. Trust Errors & Omissions | Not Covered | | | |

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Secretary.

**OneBeacon Midwest Insurance Company**

_____
Secretary

_____
President

# Professional @vantage
*for Financial Institutions*

## *Management and Professional Liability Policy*

I. INSURING AGREEMENTS
  A. INSURED PERSONS LIABILITY ........................................................................................2
  B. FINANCIAL INSTITUTION INDEMNIFICATION .............................................................2
  C. FINANCIAL INSTITUTION LIABILITY .............................................................................2
    C1. IRA/Keogh Liability ......................................................................................................2
    C2. Depositor Liability .........................................................................................................2
    C3. Loss of Sensitive Customer Information .......................................................................2
  D. EMPLOYMENT PRACTICES LIABILITY ..........................................................................2
    D1. Third Party Sexual Harassment ....................................................................................2
  E. FIDUCIARY LIABILITY ......................................................................................................3
    E1. Voluntary Correction Program .....................................................................................3
  F. LENDER LIABILITY ............................................................................................................3
    F1. Expanded Lender Liability .............................................................................................3
  G. BANKERS PROFESSIONAL LIABILITY ............................................................................3
    G1. Expanded Bankers Professional Liability .....................................................................3
    G2. Insurance Services .........................................................................................................4
    G3. Broker/Dealer Services ..................................................................................................4
  H. TRUST ERRORS AND OMISSIONS ...................................................................................4
II. ADDITIONAL BENEFITS
  A. SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES ........5
  B. NOT-FOR-PROFIT DIRECTORSHIPS ...............................................................................5
  C. EXTENDED REPORTING PERIOD .....................................................................................5
  D. INVESTIGATIVE COSTS COVERAGE ...............................................................................5
III. DEFINITIONS .............................................................................................................................7
IV. EXCLUSIONS .............................................................................................................................13
V. GENERAL AGREEMENTS AND CONDITIONS ......................................................................19
  A. LIMIT OF LIABILITY .........................................................................................................19
  B. RETENTION AND INDEMNIFICATION ...........................................................................19
  C. SINGLE CLAIM ...................................................................................................................19
  D. ORDER OF PAYMENTS .....................................................................................................19
  E. DEFENSE AND SETTLEMENT ..........................................................................................20
  F. ADVANCEMENT OF DEFENSE COSTS ...........................................................................20
  G. NOTICE OF CLAIMS AND POTENTIAL CLAIMS ...........................................................20
  H. NEW SUBSIDIARIES AND CHANGES IN BUSINESS ACTIVITIES ...............................21
  I. CANCELLATION AND NONRENEWAL ...........................................................................22
  J. CONVERSION .....................................................................................................................22
  K. ALLOCATION .....................................................................................................................23
  L. REPRESENTATIONS ...........................................................................................................23
  M. SEVERABILITY ...................................................................................................................23
  N. SEVERABILITY OF EXCLUSIONS ....................................................................................24
  O. SUBROGATION ..................................................................................................................24
  P. ASSIGNMENT AND ACCEPTANCE ..................................................................................24
  Q. CONFORMITY TO STATUTE .............................................................................................24
  R. AUTHORIZATION ..............................................................................................................24
  S. CHANGES ............................................................................................................................24
  T. ACTION AGAINST THE INSURER ....................................................................................24
  U. OTHER INSURANCE OR INDEMNIFICATION ...............................................................24
  V. LOSS INFORMATION ........................................................................................................24
  W. INSOLVENCY/BANKRUPTCY ..........................................................................................25
  X. HEADINGS AND SUB-HEADINGS ...................................................................................25

Form No. SCB002, Ed. 01-06

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*      *I. Insuring Agreements*

It is understood and agreed that coverage will not be provided under any Insuring Agreement unless a Limit of Liability and retention for such Insuring Agreement are set forth in Item 8. of the Declarations.

## A. INSURED PERSONS LIABILITY

The Insurer will pay on behalf of the **Insured Persons**, **Loss** for which the **Insured Persons** are not indemnified by the **Financial Institution** and for which the **Insured Persons** are legally obligated to pay by reason of **Claims** first made during the **Policy Period** or the Extended Reporting Period, if elected, against the **Insured Persons** for **Wrongful Acts**.

## B. FINANCIAL INSTITUTION INDEMNIFICATION

The Insurer will pay on behalf of the **Financial Institution**, **Loss** for which the **Financial Institution** grants indemnification to the **Insured Persons** and for which the **Insured Persons** are legally obligated to pay by reason of **Claims** first made during the **Policy Period** or the Extended Reporting Period, if elected, against the **Insured Persons** for **Wrongful Acts**.

## C. FINANCIAL INSTITUTION LIABILITY

The Insurer will pay on behalf of the **Financial Institution**, **Loss** for which the **Financial Institution** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or the Extended Reporting Period, if elected, against the **Financial Institution** for **Wrongful Acts** not described in any other Insuring Agreement of this **Policy**.

### C1. IRA/Keogh Liability

If C1. IRA/Keogh Liability is checked "included" under Item 8.a. of the Declarations, the Insurer will pay on behalf of the **Financial Institution**, **Loss** for which the **Financial Institution** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or the Extended Reporting Period, if elected, against the **Financial Institution** for **Wrongful Acts** while acting solely in the capacity as administrator, custodian, or trustee under any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan).

### C2. Depositor Liability

If C2. Depositor Liability is checked "included" under Item 8.a. of the Declarations, the Insurer will pay on behalf of the **Financial Institution**, **Loss** for which the **Financial Institution** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting

Period, if elected, against the **Financial Institution** for **Wrongful Acts** relating to establishing, maintaining, administering or servicing any FDIC-insured deposit account or processing any transaction relating thereto.

### C3. Loss of Sensitive Customer Information

If C3. Loss of Sensitive Customer Information is checked "included" under Item 8a. of the Declarations, the Insurer will pay on behalf of the **Financial Institution**, **Loss** for which the **Financial Institution** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, brought by a customer of the **Financial Institution** against the **Financial Institution** for **Wrongful Acts** relating to the failure to protect **Sensitive Customer Information**.

## D. EMPLOYMENT PRACTICES LIABILITY

The Insurer will pay on behalf of the **Insureds**, **Loss** for which the **Insured** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, against the **Insured** for **Wrongful Employment Acts**; provided such **Claims** are by or on behalf of a past, present or prospective **Employee** or a governmental body. For the purpose of the coverage afforded by this Insuring Agreement, the terms **Interrelated Wrongful Acts** and **Wrongful Act** wherever used throughout this **Policy** are deleted and replaced with **Interrelated Wrongful Employment Acts** and **Wrongful Employment Act**, respectively.

### D1. Third Party Sexual Harassment

If D1. Third Party Sexual Harassment is checked "included" under Item 8.a. of the Declarations, the Insurer will pay on behalf of the **Insureds**, **Loss** for which the **Insured** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, against the **Insured** for **Wrongful Third Party Harassment Acts**; provided such **Claims** are by or on behalf of a governmental body or any natural person other than an **Insured Person**. For the purpose of the coverage afforded by this Insuring Agreement, the terms **Interrelated Wrongful Acts** and **Wrongful Act** wherever used throughout this **Policy** are deleted and replaced with

Form No. SCB002, Ed. 01-06

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*                    *I. Insuring Agreements*

Interrelated Wrongful Third Party Harassment **Acts** and **Wrongful Third Party Harassment Act**, respectively.

## E. FIDUCIARY LIABILITY

The Insurer will pay on behalf of the **Insureds, Loss** for which the **Insured** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or the Extended Reporting Period, if elected, against the **Insureds** for **Wrongful Fiduciary Acts**. For the purpose of the coverage afforded by this Insuring Agreement, the terms **Interrelated Wrongful Acts** and **Wrongful Act** wherever used throughout this **Policy** are deleted and replaced with **Interrelated Wrongful Fiduciary Acts** and **Wrongful Fiduciary Act**, respectively.

### E1. Voluntary Correction Program

The Insurer will pay on behalf of the **Insureds, Voluntary Correction Fees** and **Defense Costs** with respect to a **Voluntary Correction Program Notice** first given to the Insurer during the **Policy Period**, or the Extended Reporting Period, if elected, provided:

1. the Voluntary Correction Fees and Defense Costs are incurred after such Voluntary Correction Program Notice is first given to the Insurer; and

2. the Insurer's maximum liability for all **Voluntary Correction Fees** and **Defense Costs** with respect to all **Voluntary Correction Program Notices** shall be $100,000, which is a part of, and not in addition to, the Fiduciary Liability Limit of Liability set forth in Item 8.b. of the Declarations.

## F. LENDER LIABILITY

The Insurer will pay on behalf of the **Insureds, Loss** for which the **Financial Institution** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, by a Borrower or a Guarantor against the **Insureds** for **Wrongful Acts** relating to:

1. an extension of credit;

2. an agreement or refusal to extend credit;

3. **Loan Servicing**, but only for any loan, lease, or extension of credit in which the **Financial Institution** has an ownership interest;

4. the collection or restructuring of any extension of credit by the **Financial Institution**; or

5. the rendering or failing to render **Incidental Insurance Services**.

### F1. Expanded Lender Liability

If F1. Expanded Lender Liability is checked 'included' under Item 8.a. of the Declarations, Insuring Agreement F. Lender Liability is deleted and replaced by the following:

The Insurer will pay on behalf of the **Insureds, Loss** for which the **Insureds** are legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, against the **Insureds** for **Wrongful Acts** relating to an extension of credit, an agreement or refusal to extend credit, **Loan Servicing**, the collection or restructuring of any extension of credit by the **Financial Institution,** or the rendering or failing to render **Incidental Insurance Services.**

## G. BANKERS PROFESSIONAL LIABILITY

The Insurer will pay on behalf of the **Insureds, Loss** for which the **Insured** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, brought by or on behalf of a customer of the **Financial Institution**, against the **Insured** for **Wrongful Professional Services Acts**. For the purpose of the coverage afforded by this Insuring Agreement, the terms **Interrelated Wrongful Acts** and **Wrongful Act** wherever used throughout this **Policy** are deleted and replaced with **Interrelated Wrongful Professional Services Acts** and **Wrongful Professional Services Act**, respectively.

### G1. Expanded Bankers Professional Liability

If G1. Expanded Bankers Professional Liability is checked 'included' under Item 8.a. of the Declarations, Insuring Agreement G. Bankers Professional Liability is deleted and replaced by the following:

The Insurer will pay on behalf of the **Insureds, Loss** for which the **Insured** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, against the **Insured** for **Wrongful Professional Services Acts**. For the purpose of the coverage afforded by this Insuring Agreement, the

Form No. SCB002, Ed. 01-06

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*        *I. Insuring Agreements*

terms **Interrelated Wrongful Acts** and **Wrongful Act** wherever used throughout this **Policy** are deleted and replaced with **Interrelated Wrongful Professional Services Acts** and **Wrongful Professional Services Act**, respectively.

### G2. Insurance Services

If G2. Insurance Services is checked "included" under Item 8.a. of the Declarations, the Insurer will pay on behalf of the **Insureds**, **Loss** for which the **Insured** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, against the **Insured** for **Wrongful Acts** in rendering or failing to render **Insurance Services**.

### G3. Broker/Dealer Services

If G3. Broker/Dealer Services Coverage is checked "included" under Item 8.a. of the Declarations, the Insurer will pay on behalf of the **Insureds**, **Loss** for which the **Insured** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or Extended Reporting Period, if elected, against the **Insured** for **Wrongful Acts** in rendering or failing to render **Broker/Dealer Services**.

## H. TRUST ERRORS AND OMISSIONS

The Insurer will pay on behalf of the **Insured**, **Loss** for which the **Insured** is legally obligated to pay by reason of **Claims** first made during the **Policy Period** or the Extended Reporting Period, if elected, against the **Insured** for **Wrongful Acts** in rendering or failing to render **Trust Department Services**.

# Professional @vantage
### *for Financial Institutions*

*Management and Professional Liability Policy*        *II. Additional Benefits*

**A. SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES**

1. This **Policy** shall cover **Loss** resulting from **Claims** for **Wrongful Acts** of an **Insured Person** made against:

   (A) the estates, heirs, legal representatives or assigns of any **Insured Persons** who are deceased, incompetent, insolvent or bankrupt; provided that such **Claims** would have been covered by this **Policy** in the absence of such death, incompetence, insolvency or bankruptcy; and

   (B) the lawful spouse or **Domestic Partner** of an **Insured Person** solely by reason of such person's status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

2. The coverage provided by this Subsection shall not apply with respect to any **Loss** arising from any act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

**B. NOT-FOR-PROFIT DIRECTORSHIPS**

Coverage otherwise afforded under Insuring Agreements A. Insured Persons Liability and B. Financial Institution Indemnification is extended to also apply to **Loss** resulting from **Claims** for **Wrongful Acts** by **Insured Persons** while serving on the board of directors, board of trustees, or as officers of any not-for-profit entity at the direction of the **Financial Institution**; provided, however, that this coverage shall be excess over any other insurance or indemnification available to the **Insured Persons**, including without limitation any insurance or indemnification available from or provided by such not-for-profit entity.

**C. EXTENDED REPORTING PERIOD**

1. If this **Policy** converts subject to Section V.J.1.(B) or (C) or if the **Named Insured** cancels this **Policy** or if the **Named Insured** or the Insurer refuse to renew this **Policy**, the **Insureds** shall have the right to purchase an optional extended reporting period (herein called the Extended Reporting Period) for the period set forth in Item 5.a. of the Declarations.

2. Subject to the other terms, conditions and limitations of this **Policy**, coverage during the Extended Reporting Period shall only apply with respect to **Claims** first made during the Extended Reporting Period resulting from **Wrongful Acts** that occurred prior to the effective date of such conversion, cancellation or non-renewal. Notice of facts and circumstances that may give rise to a **Claim**, pursuant to Section V.G.2., must be given during the **Policy Period** and shall not be effective if given during the Extended Reporting Period.

3. If this **Policy** converts subject to Section V.J.1.(B) or (C) and the **Insureds** elect to purchase the Extended Reporting Period, the premium due shall equal that percent set forth in Item 5.b. of the Declarations of the annualized premium for this **Policy** for the last **Policy Year** prior to such conversion, including the fully annualized amount of any additional premiums charged by the Insurer for or during such **Policy Year**.

4. The Extended Reporting Period is noncancellable and the entire premium shall be deemed fully earned at its commencement.

5. The **Insureds'** right to purchase the Extended Reporting Period shall lapse unless the Insurer receives written notice of the **Insureds'** election and full payment of any additional premium due within sixty (60) days after the effective date of such conversion, cancellation or non-renewal.

6. The offer by the Insurer to renew this **Policy** under terms, conditions, Limits of Liability, retentions, or premiums different from those applicable to the expiring **Policy** shall not constitute a refusal to renew and shall not entitle any **Insured** to elect the Extended Reporting Period.

**D. INVESTIGATIVE COSTS COVERAGE**

If **Financial Institution** Liability coverage under Insuring Agreement C. Financial Institution Liability is granted as set forth in Item 8. of the Declarations, the Insurer shall pay up to $100,000 on behalf of the **Financial Institution** for reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, trustees, members of the board of managers, management committee members, officers or employees of the **Financial Institution**) incurred by the **Financial Institution**, including its board of directors, board of managers, or any committee thereof, in connection with the **Financial Institution's** investigation or evaluation of any written demand first made upon the board of directors or board of managers of such **Financial Institution** during the **Policy Period** or Extended

Form No. SCB002, Ed. 01-06

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*                    *II. Additional Benefits*

Reporting Period, if elected, by one or more security holders of the **Financial Institution**, without the solicitation, assistance or active participation of any director or officer of a **Financial Institution**, to bring a civil proceeding in a court of law on behalf of the **Financial Institution** against any **Insured Person** for a covered **Wrongful Act**. This extension of coverage shall be part of, and not in addition to the Insuring Agreement C. Financial Institution Liability Limit of Liability set forth in Item 8.a. of the Declarations, and no retention shall apply to this extension of coverage.

# Professional @vantage
## *for Financial Institutions*

***Management and Professional Liability Policy***                    ***III. Definitions***

1. **Administration** means counseling **Employees**, participants or beneficiaries with respect to, interpreting, handling records in connection with, or effecting enrollment or cancellation of **Employees**, participants or beneficiaries under any **Benefit Plan**.

2. **Application** means all applications, attachments, and materials submitted to the Insurer for this **Policy** or any policy of which this **Policy** is a direct or indirect renewal or replacement. All such applications, attachments and materials are deemed attached to and incorporated into this **Policy**, as if physically attached.

3. **Benefit Plan means:**

   (A) any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each is defined in **ERISA**, which is operated solely by the **Financial Institution** or jointly by the **Financial Institution** and a labor organization solely for the benefit of the **Employees** of the **Financial Institution**;

   (B) any other employee benefit plan or program not subject to **ERISA** which is sponsored solely by the **Financial Institution** for the benefit of its **Employees**, including any fringe benefit or excess benefit plan;

   (C) any other plan or program otherwise described in paragraphs (A) or (B) above while such plan or program is being actively developed, formed or proposed by the **Financial Institution** prior to the formal creation of such plan or program; provided, however, no coverage is afforded under this **Policy** for any **Claim** against an **Insured** in a settlor or similar uninsured capacity with respect to any plan or program;

   (D) any government-mandated insurance program for workers compensation, unemployment, social security or disability benefits for **Employees**; and

   (E) any other plan, fund, or program specifically included as a **Benefit Plan** by written endorsement to this **Policy**.

   **Benefit Plan** shall not include any multi-employer plan created or acquired before or during the **Policy Period**, unless such plan is specifically included as a **Benefit Plan** by written endorsement to this **Policy**.

4. **Broker/Dealer Services** means the purchase or sale of securities, mutual funds, annuities, variable annuities, or life, accident or health insurance which have been approved by the **Financial Institution** to be transacted through a **Registered Representative** of the **Financial Institution** or a third party service provider pursuant to a contract between the **Financial Institution** and the service provider. In connection with the forgoing activities, **Broker/Dealer Services** also includes the provision of:

   (A) economic advice, financial advice or investment advisory services; and

   (B) financial planning advice including without limitation any of the following activities in conjunction therewith: the preparation of financial plans or personal financial statements, and the giving of advice with regard to insurance, savings, investments, retirement planning or taxes.

   **Broker/Dealer Services** shall not include **Insurance Services** or **Incidental Insurance Services**.

5. **Claim**, either in the singular or plural, means any of the following instituted against an **Insured**:

   (A) a written or oral demand for monetary damages or non-monetary relief;

   (B) a civil proceeding commenced by the service of a complaint or similar pleading;

   (C) a criminal proceeding commenced by a return of an indictment;

   (D) an arbitration or mediation proceeding in which monetary damages are sought;

   (E) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

   (F) solely with respect to Insuring Agreement E1. Voluntary Correction Program, a **Voluntary Correction Notice**; or

   (G) a written request to toll or waive a period of limitations, relating to a potential **Claim** described in subparagraphs (A) through (E) above;

   for a **Wrongful Act**.

   **Claim** shall not include a labor or grievance proceeding which is pursuant to a collective bargaining agreement.

6. **COBRA** means the Consolidated Omnibus Budget Reconciliation Act, as amended.

7. **Defense Costs** means reasonable and necessary fees and expenses incurred in defending or investigating any **Claim** and the premium for appeal, attachment or

# Professional @vantage
## *for Financial Institutions*

*Management and Professional Liability Policy*       *III. Definitions*

similar bonds. **Defense Costs** shall not include salaries, wages, overhead, or benefit expenses incurred by any **Insured**.

8. **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Financial Institution**.

9. **Employee**, either in the singular or plural, means:

   (A) any natural person who is a past, present or future employee of the **Financial Institution** including any part-time, seasonal or temporary employee, acting in their capacity as such;

   (B) any **Leased Employee**, provided that:

      (i) any coverage under this **Policy** for such **Leased Employee** only applies to the extent that the **Financial Institution** agrees to indemnify such **Leased Employee**; and

      (ii) any such coverage shall be specifically excess of any other indemnity and insurance otherwise available to such **Leased Employee** or any entity for which such **Leased Employee** is affiliated; or

   (C) solely with respect to Insuring Agreements D. Employment Practices Liability and D1. Third Party Sexual Harassment, any **Independent Contractor**, provided that:

      (i) any coverage under this **Policy** for such **Independent Contractor** only applies to the extent that the **Financial Institution** agrees to indemnify such **Independent Contractor**; and

      (ii) any such coverage shall be specifically excess of any other indemnity and insurance otherwise available to such **Independent Contractor** or any entity for which such **Independent Contractor** is affiliated.

10. **ERISA** means the Employee Retirement Income Security Act of 1974, as amended.

11. **Financial Impairment** means the status of the **Financial Institution** resulting from:

   (A) the appointment by any state or federal official, regulatory agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or

similar official to take control of, supervise, manage, or liquidate the **Financial Institution**; or

   (B) the **Financial Institution** becoming a debtor in possession.

12. **Financial Institution** means the entity or entities set forth in Item 1. of the Declarations, any **Subsidiary** created or acquired as of the inception date set forth in Item 2. of the Declarations, and, subject to Section V.H. of the **Policy**, any **Subsidiary** created or acquired during the **Policy Period**.

13. **Fungi** includes but is not limited to any fungus or mycota or any by-product or type of infestation produced by such fungus or mycota, including but not limited to mold, mildew, mycotoxins, spores or any biogenic aerosols.

14. **Incidental Insurance Services** means the sale of credit life or disability insurance incidental to the issuance of a loan.

15. **Independent Contractor** means a natural person, other than a director, officer, employee, or **Leased Employee** of the **Financial Institution**, who renders service to the **Financial Institution** as an independent contractor pursuant to a contract for specified services.

16. **Insurance Services** means any of the following services, other than **Incidental Insurance Services**, performed by an **Insured** as insurance agent, insurance broker, insurance consultant or insurance managing general agent:

   (A) sale and placement of insurance;

   (B) identification, analysis and evaluation of a client's insurance needs, including work performed for prospective clients;

   (C) appraisal of property and inspections for insurance purposes;

   (D) adjustment of claims on behalf of insurance companies, including loss payments; or

   (E) arrangement of premium financing for clients.

   **Insurance Services** does not include services as an insurance wholesaler, managing general underwriter, or third party administrator of benefit or insurance plans.

17. **Insured**, either in the singular or plural, means:

   (A) the **Insured Persons**;

   (B) the **Financial Institution**; and

Form No. SCB002, Ed. 01-06

# Professional @vantage
### *for Financial Institutions*

(C) solely with respect to Insuring Agreements E. Fiduciary Liability and E1. Voluntary Correction Program, any **Benefit Plan**.

18. **Insured Person**, either in singular or plural, means any past, present or future director, member of the board of trustees, officer, **Employee**, honorary or advisory director, or honorary or advisory member of the board of trustees of the **Financial Institution**. Solely with respect to coverage under Insuring Agreement E. Fiduciary Liability, **Insured Person** also means any past, present or future natural person trustee or natural person fiduciary of a **Benefit Plan**.

19. **Interrelated Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

20. **Interrelated Wrongful Employment Acts** means **Wrongful Employment Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

21. **Interrelated Wrongful Fiduciary Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

22. **Interrelated Wrongful Professional Services Acts** means **Wrongful Professional Services Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

23. **Interrelated Wrongful Third Party Harassment Acts** means **Wrongful Third Party Harassment Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

24. **Leased Employee** means a natural person, other than a director, officer, or employee of the **Financial Institution** or an **Independent Contractor**, who is leased to the **Financial Institution** to perform work for the **Financial Institution** and for whom the **Financial Institution** controls the mean and manner of the work performed.

25. **Loan Servicing** means the servicing of any loan, lease or extension of credit (not including financing for investment banking or leveraged or management buy-outs). **Loan Servicing** includes the following servicing activities: record keeping, billing and disbursements of principal and interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of a customer's creditworthiness, or the determination of the depreciation amount of property (but not projections of or an appraisal for residual or future value of property).

**Loan Servicing** does not include the purchase, extension of credit, any act of restructure, termination, transfer, and repossession or foreclosure of any loan, lease or extension of credit.

26. **Loss** means any amount which the **Insureds** are legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, **Defense Costs**, pre- and post-judgment interest, punitive or exemplary damages, the multiple portion of any multiplied damage award and liquidated damages under the Age Discrimination in Employment Act, where insurable by law. **Loss** shall not include:

(A) taxes, fines or penalties imposed by law, provided that this exception to the definition of **Loss** shall not apply under Insuring Agreement E. Fiduciary Liability to any **Voluntary Correction Fees** or to the 5% or less, or the 20% or less, civil penalties imposed upon an **Insured** under Section 502(i) or (l), respectively, of **ERISA**;

(B) any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt;

(C) other than **Defense Costs**, that portion of **Loss** that constitutes costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

(D) other than **Defense Costs**, that portion of **Loss** that the **Financial Institution** is obligated to pay pursuant to any express written or oral contract or agreement existing prior to the date the **Claim** is made; provided, however, if it is established in fact that such **Claim** involves an intentional breach of contract, the **Insured** agrees to reimburse the Insurer for such **Defense Costs**;

# Professional @vantage
## *for Financial Institutions*

(E) any restitution, disgorgement, return or repayment of any sums, including but not limited to the return of fees, commissions or charges for the **Financial Institution's** services; or

(F) any royalties or licensing fees, or

(G) any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

27. **Loss Information** means information on open, closed and potential **Claims**, including date, description, and payment amounts, if any.

28. **Named Insured** means the first named entity set forth in Item 1 of the Declarations.

29. **Policy** means, collectively, the Declarations, the **Application**, this policy form and any Endorsements attached hereto.

30. **Policy Period** means the period from the inception date set forth in Item 2. of the Declarations to the expiration date set forth in Item 2. of the Declarations or any earlier termination date in accordance with Section V.I.

31. **Policy Year** means the period of one year following the inception date and hour set forth in Item 2. of the Declarations or any anniversary thereof, or if the time between the inception date and termination of the **Policy Period** is less than one year, such lesser period. Any extension of the **Policy Period** shall not result in an increase or reinstatement of the Limit of Liability. If the **Policy Period** is extended beyond its original expiration date, the period of the extension shall be a part of the **Policy Year** which would have ended on the original expiration date.

32. **Pollutants** means any solid, liquid, gaseous or thermal organism, irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, hazardous substances, nuclear materials and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants also mean any other air emission, odor, waste, water, oil or oil products, asbestos or asbestos products, noise and electric or magnetic or electromagnetic field.

33. **Professional Services** means only those services performed or required to be performed by an **Insured** for or on behalf of a customer of the **Financial Institution:**

    (A) for a fee, commission or other monetary compensation;

(B) where a fee, commission or other monetary compensation would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**; or

(C) for other remuneration which inures to the benefit of the **Insured**.

**Professional Services** does not include: (i) medical or health care services; (ii) real estate appraisal services; (iii) architectural or construction management services; (iv) the practice of law or the rendering of legal services; (v) services provided to customers as an enrolled actuary as that term is used in or in connection with **ERISA**; (vi) rendering advice with regard to the FDIC-insured component of any deposit account; (vii) **Insurance Services**, **Broker/Dealer Services**, or **Trust Department Services**, or (viii) any services performed by or for any entity to which the **Insured** shall have acquired ownership or control as security for a loan, lease or other extension of credit.

34. **Registered Representative** means an individual who is:

    (A) registered with the National Association of Securities Dealers; or

    (B) a life insurance agent or insurance broker who is licensed by the appropriate regulatory authorities.

35. **Sensitive Customer Information** means any customer name, address, telephone number, social security number, driver's license number, account number, credit or debit card number, PIN, password, account history or any other private or personal customer information.

36. **Subsidiary** means:

    (A) any entity in which the **Financial Institution** owns, directly or indirectly, more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors;

    (B) any limited liability company in which the **Financial Institution**, directly or indirectly, has the right to appoint or designate fifty percent (50%) or more of such limited liability company's managers; or

    (C) any joint venture in which the **Financial Institution**, directly or indirectly, has the right to elect, appoint or designate more than fifty percent

# Professional @vantage
*for Financial Institutions*

(50%) of such entity's directors, trustees or other equivalent executives.

37. **Trust Department Services** means services performed or required to be performed for or on behalf of a customer by an **Insured** through a Trust Department or Trust **Subsidiary** of the **Financial Institution** in any of the following capacities:

(A) administrator, custodian or trustee under any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan);

(B) executor, administrator, or personal representative of estates, administrator of guardianships, trustee under personal or corporate trust agreements, or conservator of any person;

(C) trustee under a pension, profit sharing, health and welfare or any other employee benefit plan or trust, other than an employee benefit plan or trust sponsored or established by the **Financial Institution** for its own **Employees**;

(D) custodian, depository or managing agent for securities or real property, manager of any personal property owned by others, attorney-in-fact, interest or dividend disbursing agent, transfer or paying agent, redemption or subscriptions agent, fiscal agent, tax withholding agent, registrar of securities, agent for voting securities, sinking fund agent, escrow agent or trustee under a corporate bond indenture; or

(E) trustee exercising any other trust or fiduciary powers permitted by law.

38. **Voluntary Correction Fees** means any fees, fines, penalties or sanctions paid by an **Insured** to a governmental authority pursuant to a **Voluntary Correction Program** for the actual or alleged inadvertent non-compliance by a **Benefit Plan** with any statute, rule or regulation. **Voluntary Correction Fees** shall not include:

(A) any costs to correct the non-compliance, or any other charges, expenses, taxes, or damages; or

(B) any fees, fines, penalties or sanctions relating to a **Benefit Plan** which, as of the earlier of the inception of this **Policy** or the inception of the first policy in an uninterrupted series of policies issued by the Insurer of which this **Policy** is a direct or indirect renewal or replacement, any **Insured Person** knew to be actually or allegedly non-compliant.

39. **Voluntary Correction Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service or the U.S. Department of Labor, including but not limited to, the Employee Plans Compliance Resolution System, the Audit Closing Agreement Program, the Voluntary Compliance Resolution Program, the Walk-In Closing Agreement Program, the Administrative Policy Regarding Self Correction, the Tax Sheltered Annuity Voluntary Correction Program, the Delinquent Filer Voluntary Compliance Program, the Voluntary Fiduciary Correction Program, or any other similar program administered by a governmental authority located outside the United States.

40. **Voluntary Correction Program Notice** means prior written notice to the Insurer by the **Insured** of the **Insured's** intent to enter into a **Voluntary Correction Program**.

41. **Wrongful Act**, either in the singular or plural, means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by:

(A) any **Insured Person** in the discharge of their duties while acting in the capacity as such or while acting in the capacity as director, trustee or officer of a not-for-profit entity pursuant to Section II.B., or any other matter claimed against the **Insured Persons** solely by reason of serving in such capacities;

(B) any **Insured Person** in the discharge of their duties while acting in the capacity as administrator, custodian or trustee under any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan) outside of the scope of any Trust Department or Trust **Subsidiary** of the **Financial Institution**, if such service is at the direction of the **Financial Institution**; or

(C) the **Financial Institution** or any person or entity for which the **Financial Institution** is legally responsible, but only to the extent that coverage is granted to the **Financial Institution** by Insuring Agreements C. Financial Institution Liability, C1. IRA/Keogh Liability, C2. Depositor Liability, C3. Loss of Sensitive Customer Information, F. Lender Liability, F1. Expanded Lender Liability, G2. Insurance Services, G3. Broker/Dealer Services, or H. Trust Errors & Omissions of this **Policy**.

For purposes of Insuring Agreements A. Insured Persons Liability and B. Financial Institution

# Professional @vantage
*for Financial Institutions*

Indemnification, **Wrongful Act** shall not include any **Wrongful Act** described in any other Insuring Agreement of this **Policy** except Insuring Agreements F. Lender Liability, F1. Expanded Lender Liability, G. Bankers Professional Liability, G1. Expanded Bankers Professional Liability, G2. Insurance Services, or G3. Broker/Dealer Services.

42. **Wrongful Employment Act**, either in the singular or plural, means any actual or alleged act, error, omission, misleading statement, neglect, or breach of duty by any **Insured** in their capacity as such that constitutes or causes:

    (A) unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when:

        (i) submission to such conduct is made either explicitly or implicitly a term and condition of an individual's employment;

        (ii) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual;

        (iii) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment;

    (B) workplace harassment of a non-sexual nature as a consequence of race, color, creed, national origin, sex, sexual orientation or preference, religion, age, gender, disability or handicap, pregnancy, or any other legally protected status, which has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment;

    (C) the termination of employment, the failure or refusal to hire or promote, the demotion of, or the employment-related defamation of any individual because of race, color, creed, national origin, sex, sexual orientation or preference, religion, age, gender, disability or handicap, pregnancy, or any other legally protected status;

    (D) termination of an employment relationship in a manner which is against the law or in breach of an

implied agreement to continue employment, including constructive and retaliatory discharge;

    (E) employment-related misrepresentation or retaliation; employment-related libel, slander, humiliation, defamation, or invasion of privacy; wrongful failure to employ or promote; wrongful deprivation of career opportunity; wrongful demotion; negligent evaluation; negligent hiring; negligent retention; wrongful discipline; or

    (F) any other violation of any statutory or common law relating to employment other than those statutes or regulations set forth in Section IV.44.;

but only if such conduct relates to a past, present or prospective **Employee**.

43. **Wrongful Fiduciary Act** means:

    (A) any breach of the responsibilities, obligations or duties imposed by **ERISA** upon **Insureds** who are fiduciaries of any **Benefit Plan** in their capacity as such fiduciaries;

    (B) any negligent act, error or omission in the **Administration** of any **Benefit Plan** committed, attempted, or allegedly committed or attempted by any **Insured** in their capacity as such; or

    (C) any other matter claimed against any **Insureds** solely by reason of their service as a fiduciary of any **Benefit Plan**.

44. **Wrongful Professional Services Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured** in their capacity as such in the rendering or failure to render **Professional Services**.

45. **Wrongful Third Party Harassment Act** means any actual or alleged violation by any **Insured** in their capacity as such of any federal, state, provincial, or local statutory law, common law, or civil law anywhere in the world, prohibiting any kind of sexual harassment, such as unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature against any natural person other than an **Insured Person**, provided that **Wrongful Third Party Harassment Act** shall not include any **Wrongful Employment Act**.

# Professional @vantage
## *for Financial Institutions*

*Management and Professional Liability Policy*          *IV. Exclusions*

1. **Bankers Professional Liability** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving a **Wrongful Professional Services Act.**

   *This exclusion applies to all Insuring Agreements except A. Insured Persons Liability, B. Financial Institution Indemnification, G. Bankers Professional Liability, G1. Expanded Bankers Professional Liability, G2. Insurance Services, and G3. Broker/Dealer Services.*

2. **Bodily Injury and Property Damage** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible or intangible property including loss of use thereof.

   *This exclusion applies to all Insuring Agreements except G2. Insurance Services.*

3. **Bonding or Insurance Company** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** brought or maintained directly or indirectly by or for the benefit of any bond carrier or insurance carrier of the **Financial Institution**, regardless in whose name such **Claim** is actually made.

   *This exclusion applies to Insuring Agreements C. Financial Institution Liability, C1. IRA/Keogh Liability, C2. Depositor Liability, C3. Loss of Sensitive Customer Information, F. Lender Liability, F1. Expanded Lender Liability, G2. Insurance Services, and G3. Broker/Dealer Services.*

4. **Broker/Dealer Services** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the rendering or failing to render **Broker/Dealer Services.**

   *This exclusion applies to all Insuring Agreements except G3. Broker/Dealer Services.*

5. **Claim Participation** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** by any security holder of the **Financial Institution**, whether directly or derivatively, unless such security holder bringing such **Claim** is acting independently of, and totally without the solicitation, assistance, participation, or intervention of, any past, present or future director, officer or equivalent executive of the **Financial Institution**.

*This exclusion applies to all Insuring Agreements.*

6. **Commingling of Funds** – The Insurer shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** arising out of or in any way involving any actual or alleged commingling of funds or accounts.

   *This exclusion only applies to Insuring Agreement G2. Insurance Services.*

7. **Compensation Earned** – The Insurer shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** arising out of or in any way involving compensation earned by the claimant while employed by the **Financial Institution** but not paid by the **Financial Institution** for reasons other than **Wrongful Employment Acts**, or damages determined to be owing under an express written contract of employment or an express written obligation to make payments in the event of termination of employment.

   *This exclusion applies only to Insuring Agreement D. Employment Practices Liability.*

8. **Contract** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the assumption of any liability to defend, indemnify, or hold harmless any person or entity, other than an **Insured Person**, under any written contract or agreement; however, this exclusion shall not apply to:

   (A) liability which would be imposed regardless of the existence of such contract or agreement; or

   (B) solely with respect to Insuring Agreement E. Fiduciary Liability, liability which was assumed in accordance with or under the agreement or declaration of trust pursuant to which a **Benefit Plan** was established.

   *This exclusion applies to all Insuring Agreements except A. Insured Persons Liability, B. Financial Institution Indemnification, and D. Employment Practices Liability.*

9. **Custody and Control** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the actual loss of money, securities, property or other items of value in the custody or control of the **Financial Institution**, its correspondent bank or other authorized representative, or in transit while in the care, custody

Form No. SCB002, Ed. 01-06

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*                    *IV. Exclusions*

and control of an authorized representative of the **Financial Institution**.

*This exclusion only applies to Insuring Agreement G. Bankers Professional Liability, G1. Expanded Bankers Professional Liability, G2. Insurance Services and G3. Broker/Dealer Services.*

10. **Depreciation in Value** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the depreciation (or failure to appreciate) in value of any investment product, including securities, commodities, currencies, options or futures; provided that:

    (A) only with respect to Insuring Agreement E. Fiduciary Liability, this exclusion shall not apply to any depreciation (or failure to appreciate) caused solely by a **Wrongful Fiduciary Act** in the **Administration** of a **Benefit Plan**; and

    (B) only with respect to Insuring Agreements A. Insured Persons Liability, B. Financial Institution Indemnification, G. Bankers Professional Liability, G1. Expanded Bankers Professional Liability, or G3. Broker/Dealer Services, or H. Trust Errors and Omissions, this exclusion shall not apply to any depreciation (or failure to appreciate) due solely to the negligence on the part of an **Insured** in failing to effect a specific investment transaction in accordance with the specific prior instructions of a customer of the **Financial Institution**.

    *This exclusion applies to all Insuring Agreements except D. Employment Practices Liability and D1. Third Party Sexual Harassment.*

11. **Employee Benefits** – The Insurer shall not be liable to make any payment for **Loss** which constitutes or is equivalent to employment-related benefits, retirement benefits, perquisites, vacation and sick days, medical and insurance benefits, deferred compensation or any other type of compensation other than salary, wages or bonus compensation.

    *This exclusion applies only to Insuring Agreement D. Employment Practices Liability.*

12. **Employment Practices** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any **Wrongful Employment Act** or **Wrongful Third Party Harassment Act**.

*This exclusion applies to all Insuring Agreements except D. Employment Practices Liability and D1. Third Party Sexual Harassment.*

13. **ERISA** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** for any violation of **ERISA** or similar provisions of any federal, state or local statutory law, common law or administrative law with respect to any **Benefit Plan** or other pension, profit sharing or employee benefit program established in whole or in part for the benefit of **Employees** of the **Financial Institution**.

    *This exclusion applies to all Insuring Agreements except E. Fiduciary Liability, and E1. Voluntary Correction Program.*

14. **Failure to Collect Contribution or Benefits** – The Insurer shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** for:

    (A) the failure to collect contributions owed to a **Benefit Plan** or other employee benefit program unless such failure is due to the negligence of the **Insured**;

    (B) the return or reversion to an employer of any contribution to or asset of a **Benefit Plan**; or

    (C) benefits paid or payable to a participant or beneficiary of any **Benefit Plan** or other employee program or benefits which would be payable to such a participant or beneficiary if the **Benefit Plan** or other employee program or benefits complied with applicable law. This paragraph (C) shall not apply to the extent that the benefits are payable by an **Insured Person** as a personal obligation and recovery of the benefits is based upon a covered **Wrongful Fiduciary Act**.

    *This exclusion only applies to Insuring Agreements E. Fiduciary Liability, E1. Voluntary Correction Program and G2. Insurance Services.*

15. **Fee Dispute** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving disputes over fees, commissions, or charges for the **Financial Institution's** services.

    *This exclusion applies to all Insuring Agreements except A. Insured Persons Liability, B. Financial Institution Indemnification, D. Employment Practices Liability, and H. Trust Errors & Omissions.*

Form No. SCB002, Ed. 01-06

# Professional @vantage
### *for Financial Institutions*

16. **Financial Impairment** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the **Financial Impairment** of the **Financial Institution**, including any **Subsidiary**.

    *This exclusion only applies to Insuring Agreements C2. Depositor Liability, F. Lender Liability and F1. Expanded Lender Liability.*

17. **Foreclosed Property** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the ownership, operation, management or control of any entity or property acquired by the **Financial Institution** as security or collateral for any loan, lease or extension of credit. This exclusion shall not apply to **Claims** resulting from **Wrongful Acts** in connection with the foreclosure process or the ownership, operation, management or control of any one to four family residential property.

    *This exclusion applies to all Insuring Agreements except A. Insured Persons Liability, B. Financial Institution Indemnification, D. Employment Practices Liability, and E. Fiduciary Liability.*

18. **Fraud or Violation of Law** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** against any **Insured** arising out of or in any way involving any deliberately fraudulent, dishonest or criminal act or any willful violation of any civil or criminal statute, regulation or law by such **Insured**, provided a final judgment or adjudication establishes such fraudulent, dishonest, or criminal act or such willful violation of statute, regulation or law.

    *This exclusion applies to all Insuring Agreements except D. Employment Practices Liability, D1. Third Party Sexual Harassment and E. Fiduciary Liability.*

19. **Front Pay** - The Insurer shall not be liable to make any payment for **Loss** which constitutes front pay, future damages or other future economic relief or the equivalent thereof which compensates the claimant for damages beyond the date of settlement or adjudication, where the **Financial Institution** has the option pursuant to a settlement or adjudication to reinstate the claimant, but fails to reinstate the claimant.

    *This exclusion applies only to Insuring Agreement D. Employment Practices Liability.*

20. **Illegal Profit or Payment Exclusion** - The Insurer shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** against an **Insured** arising out of or in any way involving:

    (A) such **Insured** in fact gaining any profit, remuneration, or financial advantage to which such **Insured** was not legally entitled; or

    (B) the **Financial Institution** paying inadequate or excessive consideration in connection with its purchase of **Financial Institution** securities.

    *This exclusion applies to all Insuring Agreements except D. Employment Practices Liability.*

21. **Insurance Services Exclusion** - The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the rendering or failing to render **Insurance Services** (other than **Incidental Insurance Services**).

    *This exclusion applies to all Insuring Agreements except G2. Insurance Services and D. Employment Practices Liability.*

22. **Insured vs. Insured** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** by, on behalf of, or at the behest of any **Insured** in any capacity except where such **Claim** is brought and maintained:

    (A) in the form of a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded by the terms of the **Policy**;

    (B) by an **Insured Person** solely as a customer of the **Financial Institution**; provided such **Claim** is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any other **Insured**; or

    (C) by a security holder of the **Financial Institution** as a derivative action on behalf of the **Financial Institution**; provided such **Claim** is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any **Insured**.

    *This exclusion applies to all Insuring Agreements except D. Employment Practices Liability and E. Fiduciary Liability.*

23. **Intellectual Property** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any actual or alleged infringement or violation of any

# Professional @vantage
## *for Financial Institutions*

**Management and Professional Liability Policy**                                    *IV. Exclusions*

intellectual property rights or laws, including copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret, or trademark.

*The exclusion applies to all Insuring Agreements except A. Insured Persons Liability, B. Financial Institution Indemnification, D. Employment Practices Liability and E. Fiduciary Liability.*

24. **Internet Services** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving:

   (A) access to or transmission of data via the Internet or private computer network owned, operated or controlled by the **Financial Institution**; or

   (B) website development, software development or network security services to third parties; or hosting services or services as an internet service provider, internet access provider, application service provider or provider of like services.

   *This exclusion applies to all Insuring Agreements except A. Insured Persons Liability, B. Financial Institution Indemnification, D. Employment Practices Liability and E. Fiduciary Liability.*

25. **Investment Banking and Securities Underwriting** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving:

   (A) underwriting, syndicating or promoting any security (except loan syndications or equity or debt securities issued by the **Financial Institution**);

   (B) rendering of advice or recommendations regarding any actual or attempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, bankruptcy, reorganization, restructuring, recapitalization, spin-off, offering of securities, dissolution or sale of all or substantially all of the assets or stock of an entity;

   (C) rendering of any fairness opinion;

   (D) proprietary trading;

   (E) any acquisition or sale of securities of the **Financial Institution** for its own account; or

   (F) any other investment banking activity;

   including any disclosure requirements in connection with any of the foregoing activities.

*This exclusion applies only to Insuring Agreements C. Financial Institution Liability, F. Lender Liability, F1. Expanded Lender Liability, G. Bankers Professional Liability, G1. Expanded Bankers Professional Liability, G2. Insurance Services, G3. Broker/Dealer Services, or H. Trust Errors and Omissions.*

26. **Investment Performance** – The Insurer shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** arising out of or in any way involving oral or written representations, promises or guarantees regarding the past performance or future value of any investment product.

   *This exclusion only applies to Insuring Agreement G3. Broker/Dealer Services.*

27. **Legal Lending Limit** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any extension of credit which was, at the time of its making, in excess of 105% of the applicable legal lending limit of the **Financial Institution**.

   *This exclusion applies only to Insuring Agreements C. Financial Institution Liability, F. Lender Liability, F1. Expanded Lender Liability, G. Bankers Professional Liability and G1. Expanded Bankers Professional Liability.*

28. **Lender Liability and Loan Servicing** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving **Loan Servicing** or any extension of credit, any agreement or refusal to extend credit, or the collection, or restructuring of any extension of credit.

   *This exclusion only applies to Insuring Agreements C. Financial Institution Liability, G. Bankers Professional Liability, and G1. Expanded Bankers Professional Liability.*

29. **Loss Control and Safety Engineering** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving warranties or representations made in connection with safety inspections, loss control or safety engineering services.

   *This exclusion only applies to Insuring Agreement G2. Insurance Services.*

30. **Mechanical Malfunction** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving

# Professional @vantage
*for Financial Institutions*

**Management and Professional Liability Policy**              *IV. Exclusions*

the mechanical or electronic failure, breakdown or malfunction of any machine or system of machines.

*This exclusion only applies to Insuring Agreements G. Bankers Professional Liability, G1. Expanded Bankers Professional Liability, and G3. Broker/Dealer Services.*

31. **Notary Services** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the notarization or certification of a signature of a person unless that person or someone claiming to be that person physically appeared before the **Insured** at the time of notarization or certification.

*This exclusion only applies to Insuring Agreements C. Financial Institution Liability, G. Bankers Professional Liability, G1. Expanded Bankers Professional Liability, G2. Insurance Services, and G3. Broker/Dealer Services.*

32. **Outside Directorship Liability** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any **Wrongful Act** by the **Insured Persons** in their capacities, or solely by reason of their status, as directors, officers, trustees, or employees of any entity other than the **Financial Institution**, even if directed or requested by the **Financial Institution** to serve as directors, officers, trustees, or employees of such other entity; provided this exclusion shall not apply with respect to coverage granted pursuant to Section II.B. of this **Policy**.

*This exclusion applies to all Insuring Agreements.*

33. **Personal Injury** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, abuse of process, assault, battery, mental anguish, emotional distress, loss of consortium, invasion of privacy, defamation, false light, libel, or slander.

*This exclusion applies to all Insuring Agreements except C3. Loss of Sensitive Customer Information, D. Employment Practices Liability, D1. Third Party Sexual Harassment, F. Lender Liability, and F1. Expanded Lender Liability.*

34. **Pollution** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving:

(A) the actual, alleged or threatened proliferation, discharge, disposal, migration, dispersal, release or escape of **Pollutants** or **Fungi**; or

(B) any direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize **Pollutants** or **Fungi**, or to pay for or contribute to the costs of undertaking such actions, including **Claims** alleging damage to the **Financial Institution** or its security holders.

*This exclusion applies to all Insuring Agreements except D. Employment Practices Liability.*

35. **Prior and Pending Litigation** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any litigation against any **Insured** initiated prior to the respective date set forth in Item 8.d. of the Declarations, or arising out of or in any way involving the same or substantially the same fact, circumstance or situation underlying or alleged in such prior litigation, provided this exclusion shall not apply to any **Claim** under Insuring Agreement D. Employment Practices Liability arising out of or in any way involving circumstances or situations underlying or alleged in any such prior or pending administrative proceeding before the Equal Employment Opportunity Commission or any similar federal, state, provincial or local government body if such administrative proceeding was brought by and on behalf of **Employees** who did not bring the **Claim**.

*This exclusion applies to all Insuring Agreements.*

36. **Prior Notice** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any **Wrongful Act**, any **Interrelated Wrongful Acts**, or any fact, circumstance or situation, which has been the subject of any notice given prior to inception of this **Policy** to any carrier other than the Insurer under any other insurance policy providing protection for any **Insured**.

*This exclusion applies to all Insuring Agreements.*

37. **Receivership** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the **Financial Institution's** function or activity as receiver, trustee in bankruptcy, or assignee for the benefit of creditors.

*This exclusion applies to all Insuring Agreements except A. Insured Persons Liability, B. Financial Institution Indemnification, D. Employment Practices*

Form No. SCB002, Ed. 01-06

# Professional @vantage
### *for Financial Institutions*

*Management and Professional Liability Policy*        *IV. Exclusions*

*Liability, E. Fiduciary Liability, G2. Insurance Services, and H. Trust Errors & Omissions.*

38. **Safe Deposit Operations** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the safe deposit box operations of the **Financial Institution**.

    *This exclusion only applies to Insuring Agreement C. Financial Institution Liability, G. Bankers Professional Liability, and G1. Expanded Bankers Professional Liability.*

39. **Securities Claims Under Bankers Professional Liability** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** by or on behalf of any person, entity or concern (including but not limited to any shareholder, bondholder, or debenture holder), or their estate, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond debenture or other form of security or ownership in the **Financial Institution**, when such **Claim** is based upon, arises out of or pertains to any interest in such security or ownership interest. This exclusion shall not apply to any **Claim** brought by such person solely in the capacity as a customer of the **Financial Institution** provided such **Claim** is brought independently of, and totally without the solicitation, assistance, participation or intervention of any other **Insured**.

    *This exclusion only applies to Insuring Agreements G. Bankers Professional Liability and G1. Expanded Bankers Professional Liability.*

40. **Subsidiary Wrongful Acts** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** against any **Subsidiary** or its **Insured Persons** acting in the capacity of director, member of the board of trustees, officer or **Employee** of such **Subsidiary** for any **Wrongful Act** or **Interrelated Wrongful Acts** actually or allegedly committed in whole or in part at any time when the entity was not a **Subsidiary**.

    *This exclusion applies to all Insuring Agreements.*

41. **Taxes and Premiums** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving disputes over taxes or the failure to collect, pay or return premiums.

*This exclusion only applies to Insuring Agreement G2. Insurance Services.*

42. **Third Party Insolvency** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the:

    (A) insolvency, receivership, liquidation or bankruptcy of any insurance company the **Insured** represents; or

    (B) bankruptcy of or suspension of payments by any bank, banking firm, broker or dealer in securities or commodities or any other financial institution;

    provided that this exclusion shall not apply to the extent such **Claim** alleges a covered **Wrongful Act** solely in connection with an **Insured's** investment on behalf of a customer in the stock of any of the entities enumerated in paragraphs (A) and (B) above.

    *This exclusion only applies to Insuring Agreements G. Bankers Professional Liability, G1. Expanded Bankers Professional Liability, G2. Insurance Services, G3. Broker Dealer Services, and H. Trust Errors and Omissions.*

43. **Trust Department Services** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the rendering or failing to render **Trust Department Services**.

    *This exclusion applies to all Insuring Agreements except D. Employment Practices Liability and H. Trust Errors & Omissions.*

44. **Violation of Employment Law** – The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** for an actual or alleged violation of the responsibilities, obligations, duties or prohibitions imposed by any Worker's Compensation, Unemployment Insurance, or disability benefits law, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Occupational Safety and Health Act, or any rules or regulations promulgated under any of the above statutes, or similar provisions of any federal, state or local statutory, administrative or common law.

    *This exclusion applies only to Insuring Agreements D. Employment Practices Liability, D1. Third Party Sexual Harassment, and E. Fiduciary Liability.*

Form No. SCB002, Ed. 01-06

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*      *V. General Agreements and Conditions*

## A. LIMIT OF LIABILITY

1. The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** which are covered under one or more of the Insuring Agreements that are subject to the Policy Year Shared Limit of Liability, as set forth in Item 8.e. of the Declarations, and which are first made against the **Insureds** during the same **Policy Year**, including, if exercised, the Extended Reporting Period, shall be the Policy Year Shared Limit of Liability set forth in Item 4. of the Declarations. The Policy Year Shared Limit of Liability shall be reduced and may be exhausted by payment of **Loss** under any such Insuring Agreements.

2. With respect to any Insuring Agreement made a part of this **Policy** that is not subject to the Policy Year Shared Limit of Liability as set forth in Item 8.e. of the Declarations, the Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** which are covered under such Insuring Agreement and which are first made against the **Insureds** during the same **Policy Year**, including, if exercised, the Extended Reporting Period, shall be the Limit of Liability for such Insuring Agreement set forth in Item 8.b. of the Declarations.

3. **Defense Costs** shall be part of, and not in addition to, the applicable Limit of Liability set forth in Items 4. and 8. of the Declarations, and **Defense Costs** shall reduce and may exhaust such Limit(s) of Liability.

4. If a **Claim** is subject to more than one separate Limit of Liability, the Insurer's maximum liability for such **Claim** shall be the largest unexhausted Limit of Liability applicable to such **Claim**, provided however (i) this paragraph does not apply to the Insurer's maximum liability for **Loss** covered under Insuring Agreement A. Insured Persons Liability if no retention applies to such **Loss** and if the Insuring Agreement A. Insured Persons Liability Limit of Liability is separate from the Limit(s) of Liability applicable to all other Insuring Agreements, and (ii) this paragraph creates a sublimit which further limits and does not increase the Insurer's maximum liability under this **Policy**.

5. The Insurer's obligations for all **Claims** first made against the **Insureds** during the same **Policy Year** under each Insuring Agreement made part of this **Policy** shall cease once the applicable Limit of Liability has been exhausted by payment of **Loss**.

6. The limit of liability for the Extended Reporting Period, if exercised, shall be part of and not in addition to, the applicable Limit of Liability for the **Policy Year** immediately preceding the Extended Reporting Period. The purchase of the Extended Reporting Period shall not increase or reinstate the applicable Limit of Liability for the **Policy Year** immediately preceding the Extended Reporting Period.

## B. RETENTION AND INDEMNIFICATION

1. The Insurer shall only pay for covered **Loss**, including covered **Defense Costs**, in excess of the applicable retention for each **Claim** set forth in Item 8.c. of the Declarations. No retention shall apply to **Loss** incurred by the **Insured Persons** for which the **Financial Institution** is:

   (A) not permitted or required by law to advance **Defense Costs** or indemnify the **Insured Persons**; or

   (B) permitted or required to advance **Defense Costs** or indemnify the **Insured Persons** but does not do so by reason of **Financial Impairment**.

2. If the **Financial Institution** is permitted or required by law to advance **Defense Costs** or indemnify the **Insured Persons** for **Loss**, but fails to advance or indemnify such **Loss** for any reason other than **Financial Impairment**, then coverage under Insuring Agreement A. Insured Persons Liability shall be subject to the retention applicable to Insuring Agreement B. Financial Institution Indemnification.

3. If **Loss** arising from a single **Claim** is subject to more than one retention, the applicable retention shall be applied separately to each part of such **Loss**, but the largest applicable retention set forth in Item 8.c. of the Declarations shall be the maximum retention applicable to all **Loss** arising from such **Claim**.

## C. SINGLE CLAIM

All **Claims** based upon or arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** committed by one or more **Insureds** shall be considered a single **Claim**, and only one retention and Limit of Liability shall apply to such single **Claim**. Each such single **Claim** shall be deemed to be first made on the date the earliest of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**.

## D. ORDER OF PAYMENTS

1. If **Loss** resulting from one or more **Claims** is covered both under Insuring Agreement A. Insured Persons

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy* — *V. General Agreements and Conditions*

Liability and under one or more other Insuring Agreements which are subject to the same Limit of Liability as applies to Insuring Agreement A. Insured Persons Liability and if such potential or actual **Loss**, in the aggregate, in the Insurer's judgment could reasonably exceed such Limit of Liability, then the Insurer shall first pay such **Loss** which is covered under Insuring Agreement A. Insured Persons Liability, subject to such Limit of Liability. This Section V.D.1. shall not apply if the Insuring Agreement A. Insured Persons Liability Limit of Liability is separate from the Limit(s) of Liability applicable to all other Insuring Agreements.

4. The **Financial Impairment** of any **Insured** shall not relieve the Insurer of its obligation to prioritize payment of covered **Loss** under this **Policy** pursuant to this Subsection.

## E. DEFENSE AND SETTLEMENT

1. Amounts incurred as **Defense Costs** will reduce and shall be part of and not in addition to the applicable Limit of Liability. It shall be the duty of the **Insured** and not the duty of the Insurer to defend **Claims**. The **Insured** shall only retain counsel that is mutually agreed upon with the Insurer, consent for which shall not be unreasonably withheld.

2. The **Insured** agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Insurer's prior written consent, which shall not be unreasonably withheld. The **Insured** will immediately advise the Insurer of any settlement demand. The Insurer shall not be liable for any **Defense Costs**, for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Insurer's prior written consent. The Insurer shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.

3. The Insurer shall have the right but not the duty to effectively associate with the **Insured** in the settlement and defense of any **Claim** that appears reasonably likely to involve the Insurer. Such association shall include, but not be limited to, participation in the formation of litigation strategy, review of pleadings and other pertinent papers prior to filing, and participation in the settlement negotiations.

4. Only with respect to any **Claim** covered under Insuring Agreements D. Employment Practices Liability and D1. Third Party Sexual Harassment, if the **Insured**

receives a settlement offer in such **Claim** that the Insurer deems reasonable and the **Insured** withholds consent to such settlement, the Insurer's liability for all **Loss** on account of such **Claim** shall not exceed:

(A) the amount for which the **Claim** could have been settled; plus

(B) **Defense Costs** accrued as of the date such settlement was proposed; plus

(C) fifty (50%) percent of the covered **Loss**, including **Defense Costs** incurred in excess of the amounts in (A) and (B) above.

Notwithstanding the foregoing, if the proposed settlement amount does not exceed the applicable retention set forth in the Item 8.c. of the Declarations, paragraph (C) above shall not apply and the Insurer's liability for all **Loss** arising from such **Claim** shall not exceed the amount for which the **Claim** could have been settled plus **Defense Costs** incurred as of the date such settlement was proposed. Any amounts paid by the Insurer under paragraphs (A), (B), or (C) above shall be part of and not in addition to the applicable Limit of Liability set forth in Item 8. of the Declarations.

## F. ADVANCEMENT OF DEFENSE COSTS

1. Subject to Section V.K., the Insurer, if requested by the **Insured**, shall advance covered **Defense Costs** on a current basis, except when advancement of **Defense Costs** is prohibited by law or regulation. The **Insured** shall repay any advanced **Defense Costs** to the Insurer in the event it is established that the Insurer has no liability under this **Policy** for such **Defense Costs**.

2. Prior to advancing or indemnifying **Defense Costs**, the Insurer shall be entitled to sufficient information and documentation as to the amount and purpose of any **Defense Costs** to enable it to evaluate the reasonableness and necessity of such **Defense Costs** and to verify that such **Defense Costs** were actually incurred.

## G. NOTICE OF CLAIMS AND POTENTIAL CLAIMS

1. The **Insured**, as a condition precedent to any rights under this **Policy**, shall give the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable, but in no event later than sixty (60) days after expiration of the **Policy Year** in which the **Claim** was first made or the expiration of the Extended Reporting Period, if exercised.

Form No. SCB002, Ed. 01-06

# Professional @vantage
## *for Financial Institutions*

*Management and Professional Liability Policy*      *V. General Agreements and Conditions*

2. If during the **Policy Period**, any titled officer, branch manager or risk manager of the **Insured** first becomes aware of circumstances which may give rise to a **Claim**, and gives written notice to the Insurer of the circumstances and the reasons for anticipating a **Claim**, then any **Claim** subsequently made which arises out of such circumstances shall be deemed to have been first made during the **Policy Year** in which notice of such circumstances was first given to the Insurer. As a condition precedent to any coverage hereunder for such **Claims**, such notice of circumstances must be specific and contain full particulars as to the names, dates, and persons involved in the underlying facts potentially giving rise to the **Claim**, as well as the identity of the potential plaintiffs and the causes of action to be asserted.

3. All notices required to be given to the Insurer under this **Policy** as described in paragraphs 1. and 2. above shall be given to the Insurer at the respective address set forth in Item 6. of the Declarations.

## H. NEW SUBSIDIARIES AND CHANGES IN BUSINESS ACTIVITIES

1. If during the **Policy Period** the **Financial Institution**:

   (A) acquires voting securities in or creates another organization which as a result of such acquisition or creation becomes a **Subsidiary**; or

   (B) acquires another organization by merger into or consolidation with the **Financial Institution**; or

   (C) creates a **Benefit Plan**; or

   (D) acquires a **Benefit Plan** through merger into or consolidation with the **Financial Institution**;

   then, subject to Section V.H.2. below and all other terms, conditions and limitations of this **Policy**, such organization, or **Benefit Plan**, and its **Insureds** shall be covered under this **Policy** but only with respect to **Wrongful Acts** occurring after such acquisition or creation.

2. If the total assets of such created or acquired organization equal or exceed:

   (A) twenty-five percent (25%) of the **Financial Institutions'** total assets at the time of the acquisition, or

   (B) $250,000,000;

or, with respect to a created or acquired **Benefit Plan**, if the total assets of such acquired **Benefit Plan** equal or exceed:

   (A) twenty-five percent (25%) of the total assets of all **Benefit Plans** at the time of the acquisition,

then coverage under this **Policy** for such organization, or **Benefit Plan**, and its **Insureds** as provided in Section V.H.1. above shall cease ninety (90) days after the effective date of such acquisition or the end of the **Policy Period**, whichever is sooner ("Automatic Coverage Period") unless, as a condition precedent to further coverage for such organization and its **Insureds**:

   (A) the **Named Insured** shall give written notice of such acquisition to the Insurer as soon as practicable, but in no event later than forty-five (45) days following the effective date of such creation or acquisition, and shall thereafter promptly provide to the Insurer such information as the Insurer may request; and

   (B) the **Named Insured** promptly agrees to any special terms, conditions and/or exclusions, and pays any additional premium, required by the Insurer.

If the **Named Insured** fails to comply with such conditions precedent, coverage otherwise afforded by this **Policy** for such organization and its **Insureds** shall terminate upon expiration of the Automatic Coverage Period.

3. If during the **Policy Period** the **Financial Institution**:

   (A) creates or acquires a financial services holding company or converts from a bank holding company to a financial services holding company, or

   (B) converts from a mutual company to a stock company,

then as a condition precedent to coverage for such **Financial Institution** and its **Insureds** for **Claims** for **Wrongful Acts** occurring after such transaction:

   (A) the **Financial Institution** shall give written notice of such transaction to the Insurer as soon as practicable, but in no event later than forty-five (45) days following the effective date of such transaction, and shall thereafter promptly provide to the Insurer such information as the Insurer may request; and

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*      *V. General Agreements and Conditions*

(B) the **Financial Institution** shall promptly agree to any special terms, conditions and/or exclusions, and shall pay any additional premium, required by the Insurer.

If the **Financial Institution** fails to comply with such conditions precedent, no coverage shall be afforded by this **Policy** for such **Financial Institution** and its **Insureds** for **Claims** for **Wrongful Acts** occurring after the effective date of such transaction.

4. If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to each **Subsidiary** and its **Insureds** shall continue until termination of the **Policy Period**, but only with respect to **Claims** for **Wrongful Acts** occurring prior to the date such organization ceased to be a **Subsidiary**.

5. If the **Financial Institution** terminates a **Benefit Plan** before or after the inception date set forth in Item 2 of the Declarations, coverage under this **Policy** with respect to such terminated **Benefit Plan** and its **Insureds** shall continue until termination of this **Policy** for those who were **Insureds** prior to or at the time of such **Benefit Plan** termination or who would have been **Insureds** at the time of such termination if this **Policy** had then been in effect. Such continuation of coverage shall apply with respect to **Claims** for **Wrongful Fiduciary Acts** occurring prior to or after the date the **Benefit Plan** was terminated.

## I. CANCELLATION AND NONRENEWAL

1. This **Policy** shall terminate at the earliest of the following times:

   (A) the effective date of cancellation specified in a prior written notice by the **Named Insured** to the Insurer; or

   (B) upon expiration of the **Policy Period**; or

   (C) twenty (20) days after receipt by the **Named Insured** of a written notice of cancellation of this **Policy** from the Insurer for nonpayment of premium, unless the premium is paid within such twenty (20) day period. Notice will be mailed to the **Named Insured** by certified mail to the address set forth in Item 1. of the Declarations. The mailing of such notice aforesaid shall be sufficient proof of notice, and this **Policy** shall terminate at the date and hour specified in such notice.

2. The Insurer may not cancel this **Policy** before expiration of the **Policy Period**, except as provided

above for the non-payment of premium. The Insurer shall refund the unearned premium computed at customary short rates if this **Policy** is cancelled by the **Named Insured**. Under any other circumstances, the refund shall be computed prorata. The return of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such cancellation, but such payment shall be made as soon as practicable.

## J. CONVERSION

1. Upon the occurrence of any of the following events, this **Policy** shall continue in full force and effect until termination of this **Policy**, but only with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such event. Coverage shall cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** committed or allegedly committed after such event:

   (A) **Financial Impairment** of the **Named Insured** or any **Subsidiary** comprising more than fifty percent (50%) of the **Named Insured's** total assets;

   (B) the merger or consolidation of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity;

   (C) acquisition by any person, entity or group of persons or entities acting in concert of all or substantially all of the assets of the **Named Insured** or of rights resulting in such person, entity or group having the right to elect, appoint or designate at least 50% of the directors or equivalent executives of the **Named Insured**; or

   (D) the **Named Insured** ceasing to engage actively in its primary business.

2. This **Policy** may not be cancelled by the **Named Insured** after such an event, and the entire premium for this **Policy** shall be deemed fully earned as of the effective date of such an event. The occurrence of any such event shall not affect the **Insured's** right to purchase the Extended Reporting Period pursuant to Section II.C.

3. In the event of **Financial Impairment** of a **Subsidiary** comprising less than fifty percent (50%) of the **Named Insured's** total assets, this Section V.J. shall apply only to such **Subsidiary** and its direct or indirect **Insureds**, and the **Policy** shall continue in full force with respect to all other **Insureds**.

Form No. SCB002, Ed. 01-06

# Professional @vantage
*for Financial Institutions*

## K. ALLOCATION

1. If in any **Claim** the **Insureds** are jointly and severally liable with others (including the **Financial Institution** if no coverage is afforded under this **Policy** for such **Claim** against the **Financial Institution**) for **Loss** otherwise covered under this **Policy**, then:

   (A) 100% of all such **Loss** incurred jointly by the **Insured Persons** and the **Financial Institution** shall be treated as **Loss** incurred solely by the **Insured Persons**; and

   (B) all other **Loss** shall be allocated between the **Insureds** and others based on the relative legal exposures of the parties to such **Claims**.

2. If in any **Claim** the **Insureds** incur an amount consisting of both covered **Loss** and uncovered loss because the **Claim** includes both covered and uncovered matters, then the amount shall be allocated between covered **Loss** and uncovered loss based on the relative legal exposures of the **Insureds** to the covered and uncovered matters.

3. The **Insureds** and the Insurer agree to use their best efforts to reach a proper allocation of **Defense Costs**. If the **Insured** and the Insurer cannot agree on an allocation:

   (A) no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

   (B) the Insurer shall advance on a current basis **Defense Costs** which the Insurer believes to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined; and

   (C) the Insurer, if requested by the **Insured**, shall submit the allocation dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The arbitration panel shall consist of one arbitrator selected by the **Insured**, one arbitrator selected by the Insurer, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses.

4. Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** will be applied retroactively to all **Defense Costs**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss** arising from such **Claim** or any other **Claim**.

## L. REPRESENTATIONS

1. It is agreed and represented that the particulars and statements contained in the **Application** are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**. By acceptance of this **Policy**, the **Insureds** agree that:

   (A) such **Application** shall be construed as a separate **Application** for coverage by each **Insured Person**;

   (B) this **Policy** shall not be deemed to be a series of individual insurance contracts with each **Insured**; and

   (C) the statements in the **Application** are the **Insureds'** representations, such representations are material to the acceptance of the risk or hazard assumed by the Insurer under this **Policy**, and this **Policy** is issued in reliance upon the truth of such representations.

## M. SEVERABILITY

1. The **Insureds** agree that in the event the **Application** contains misrepresentations or omissions (i) which materially affect the risk or hazard assumed by the Insurer under this **Policy**, or (ii) made with the actual intent to deceive, then no coverage will be provided under this **Policy** with respect to:

   (A) any **Insured Person** who knew of any fact, circumstance or situation that was not truthfully disclosed in the **Application**;

   (B) the **Financial Institution**, to the extent the **Financial Institution** indemnifies the **Insured Person** reflected in paragraph (A) above; or

   (C) the **Financial Institution**, to the extent coverage is granted to the **Financial Institution** by any Insuring Agreement made a part of this **Policy**, if any past, present, or future chief financial officer, in-house general counsel, chief executive officer, President or Chairman of the Board of any **Financial Institution**, or any person holding any equivalent position within any **Financial Institution** (regardless of title), knew of any fact, circumstance or situation that was not truthfully disclosed in the **Application**;

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*      *V. General Agreements and Conditions*

whether or not the **Insured Person** or such director or officer actually knew the misrepresentation or omission was made in the **Application**.

## N. SEVERABILITY OF EXCLUSIONS

1. With respect to the Exclusions in this **Policy**, in order to determine if coverage is available:

   (A) no fact pertaining to or knowledge possessed by any **Insured Person** will be imputed to any other **Insured Person**; and

   (B) only facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, in-house general counsel, chief executive officer, President or Chairman of the Board of the **Financial Institution**, or any person holding any equivalent position within the **Financial Institution** (regardless of title), shall be imputed to the **Financial Institution**.

## O. SUBROGATION

In the event of any payment under this **Policy**, the Insurer shall be subrogated to the extent of such payment to all the **Insured Persons**' and the **Financial Institution's** rights to recovery therefor, and the **Insured** shall execute all papers required and shall do everything that may be necessary to secure the Insurer's rights, including the execution of such documents as may be necessary to enable the Insurer effectively to bring suit in the name of the **Insured Persons** or the **Financial Institution**.

## P. ASSIGNMENT AND ACCEPTANCE

By acceptance of this **Policy**, the **Insured** and the Insurer agree that this **Policy**, including the **Application** and any written Endorsements attached thereto, constitute the entire agreement between the parties. Assignment of interest under this **Policy** shall not bind the Insurer until its consent to such assignment is endorsed hereon.

## Q. CONFORMITY TO STATUTE

Any terms of this **Policy** which are in conflict with the terms of any applicable laws governing this **Policy** are hereby amended to conform to such laws.

## R. AUTHORIZATION

By acceptance of this **Policy**, the **Insureds** agree that the **Named Insured** will act on behalf of all **Insureds** for all purposes under this **Policy** including, but not limited to, giving and receiving of all notices and correspondence, cancellation, nonrenewal or termination of this **Policy**, payment of premiums, the negotiation and acceptance of Endorsements, and receipt of any return premiums that may be due under this **Policy**.

## S. CHANGES

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this **Policy** or estop the Insurer from asserting any right under the terms of this **Policy**, nor shall the terms, conditions and limitations of this **Policy** be waived or changed, except by written Endorsement issued to form a part of this **Policy**.

## T. ACTION AGAINST THE INSURER

1. No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this **Policy**, and until the **Insured's** obligation to pay is finally determined, either by adjudication or by written agreement of the **Insureds**, the claimant, and the Insurer.

2. No person or organization shall have any right under this **Policy** to join the Insurer as a party to any **Claim** against the **Insured** nor shall the Insurer be impleaded by the **Insureds** or their legal representatives in any such **Claim**.

## U. OTHER INSURANCE OR INDEMNIFICATION

1. This **Policy** shall not be subject to the terms of any other insurance. Any coverage under this **Policy** shall be specifically excess to:

   (A) any other existing insurance regardless of whether collectable, including but not limited to, any insurance under which there is a duty to defend, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**; and

   (B) indemnification to which an **Insured** is entitled from any entity other than the **Financial Institution**.

## V. LOSS INFORMATION

The Insurer will provide **Loss Information** to the **Financial Institution** within ten (10) days of the **Financial Institution's** request or, if required by statute, at the same time as any notice of cancellation or nonrenewal of this **Policy**.

# Professional @vantage
*for Financial Institutions*

*Management and Professional Liability Policy*          *V. General Agreements and Conditions*

**W. INSOLVENCY/BANKRUPTCY**

The **Financial Impairment** of the **Insured** or of the estate of such **Insured** shall not release the Insurer from its obligations nor deprive the Insurer of its rights under this **Policy**.

**X. HEADINGS AND SUB-HEADINGS**

The descriptions in the headings and sub-heading of this **Policy** are solely for convenience and form no part of the terms and conditions of coverage.

IN WITNESS WHEREOF, the Insurer has caused this **Policy** to be signed by its President and Secretary.

_____          _____
Secretary                                 President

Form No. SCB002, Ed. 01-06

## Notice of Terrorism Insurance Coverage

*Management and Professional Liability*
*Endorsement No. 1*



You are hereby notified that under the Terrorism Risk Insurance Act, as extended on December 22, 2005, that you now have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses caused by certified acts of terrorism such losses may be partially reimbursed by the United States Government under a formula established by Federal law. Under this formula, the United States Government pays 90% (85% in 2007) of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

TERRORISM COVERAGE IS PROVIDED ON THIS POLICY AT $0 PREMIUM. NO ADDITIONAL ACTION IS REQUIRED ON YOUR PART TO BE COVERED FOR LOSSES ARISING FROM TERRORIST ACTS.

*All other terms of your policy remain the same.*

*To be attached to*
**Policy No.:** 474000407-0000

**Insured:** Wheatland Bank

Form No. SCB201, Ed. 01-06

**ILLINOIS CHANGES –
CANCELLATION AND NONRENEWAL**

*Management and Professional Liability
Endorsement No. 2*



It is agreed that:

I. The following replaces Section II.C.6. of this **Policy**:

6. The offer by the Insurer to renew this **Policy** under terms, conditions, Limits of Liability, retentions, or premiums different from those applicable to the expiring **Policy** shall not constitute a refusal to renew and shall not entitle any **Insured** to elect the Extended Reporting Period. If the Insurer offers to renew directly to the **Named Insured** with a renewal increase of 30% or more, or with a change in deductible or coverage that materially alters the policy, the Insurer must mail to the **Named Insured** written notice of such premium increase or change at least 60 days prior to the renewal or anniversary date.

II. The following is added to Section V.I. of this **Policy**:

3. If the Insurer decides not to renew or continue this **Policy**, written notice, stating the reason for nonrenewal, will be mailed to the **Insured** and the **Insured's** agent or broker, at least 60 days before the end of the **Policy Period**. If the Insurer offers to renew or continue and the **Insured** does not accept, this **Policy** will terminate at the end of the current **Policy Period**. Failure to pay the required renewal or continuation premium when due shall mean that the **Insured** has not accepted the offer.

   If the Insurer fails to mail proper written notice of nonrenewal and the **Insured** obtains other insurance, this **Policy** will end on the effective date of that insurance.

4. The Insurer will mail cancellation and nonrenewal notices to the last addresses known to the Insurer. Proof of mailing will be sufficient proof of notice.

*All other terms of your policy remain the same.*

**To be attached to**
**Policy No.:** 474000407-0000

**Insured:** Wheatland Bank

Form No. SCB644, Ed. 01-06

*This endorsement shall become effective as of 12:01a.m. on*
12/14/2007

**Nuclear Energy Liability Exclusion -**
(All States except: NY, TX, VT, VA)

*Management and Professional Liability*
*Endorsement No. 3*



It is agreed that:

1. This **Policy** does not apply:

    A. To bodily injury or Property Damage

        1. with respect to which an **Insured** under this **Policy** is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        2. resulting from the Hazardous Properties of Nuclear Material and with respect to which

            (A) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

            (B) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

    B. Under any medical payments coverage, to expenses incurred with respect to bodily injury resulting from the Hazardous Properties of Nuclear Material and arising out of the operation of a Nuclear Facility by any person or organization.

    C. To bodily injury or Property Damage resulting from Hazardous Properties of Nuclear Material, if:

        1. the Nuclear Material

            (A) is at any Nuclear Facility owned by, or operated by or on behalf of, an **Insured**; or

            (B) has been discharged or dispersed therefrom; or

        2. the Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an **Insured**; or

        3. the bodily injury or Property Damage arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to Property Damage to such Nuclear Facility and any property threat.

2. As used in this endorsement:

    A. Hazardous Properties includes radioactive, toxic or explosive properties.

    B. Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

    C. Source material, Special Nuclear Material, and By-Product Material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    D. Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

    E. Waste means any waste material

        1. containing By-Product Material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content, and

        2. resulting from the operation by any person or organization of any Nuclear Facility included under the first two paragraphs of the definition of Nuclear Facility.

    F. Nuclear Facility means:

        1. any Nuclear Reactor;

*All other terms of your policy remain the same.*

**To be attached to**
**Policy No.:** 474000407-0000

**Insured:** Wheatland Bank

Form No. SCB653, Ed. 01-06

*This endorsement shall become effective as of 12:01a.m. on*
12/14/2007

Page 1 of 2

**Nuclear Energy Liability Exclusion -**
(All States except: NY, TX, VT, VA)

*Management and Professional Liability*
*Endorsement No. 3*



    2.  any equipment or device designed or used for

       (A) separating the isotopes of uranium or plutonium,

       (B) processing or utilizing Spent Fuel, or

       (C) handling, processing or packaging Waste;

    3.  any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    4.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste; and include the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

G.  Nuclear Reactor means any apparatus designed or used to sustain nuclear fission in a self supporting chain reaction or to contain a critical mass of fissionable material.

H.  Property Damage includes all forms of radioactive contamination of property.

*All other terms of your policy remain the same.*

*To be attached to*
**Policy No.:** 474000407-0000

**Insured:** Wheatland Bank

Form No. SCB653, Ed. 01-06

*This endorsement shall become effective as of 12:01a.m. on*
12/14/2007

**ILLINOIS CHANGES**

*Management and Professional Liability*
*Endorsement No. 4*



It is agreed that:

I. The following is added to Section II. *Additional Benefits*:

    **E. PRE- AND POST-JUDGMENT INTEREST**

        If a judgment is entered against the **Insured** for a covered **Claim**, the principal amount of which is within the applicable Limit of Liability, the Insurer will reimburse the **Insured** for its share of the prejudgment interest and accrued post judgment interest. Reimbursement of prejudgment interest and post judgment interest is an additional benefit and is not included within such Limit of Liability.

II. The phrase "pre- and post-judgment interest" is hereby deleted from definition 26. **Loss** in Section III. of this **Policy**.

III. The following replaces definition 7. **Defense Costs** in Section III. of this **Policy**:

7.   **Defense Costs** means reasonable and necessary fees and expenses incurred in defending or investigating any **Claim** and the premium for appeal, attachment or similar bonds. **Defense Costs** shall not include salaries, wages, overhead, or benefit expenses incurred by the Insurer or any **Insured**.

IV. The following replaces definition 32. **Pollutants** in Section III. of this **Policy**:

32.   **Pollutants** means any solid, liquid, gaseous or thermal organism, irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, hazardous substances, nuclear materials and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants also mean any other air emission, odor, waste, water, oil or oil products, asbestos or asbestos products, and noise. Pollutants do not include smoke or fumes from a hostile fire.

V. The following replaces Section V.U. of this **Policy**:

U.   **OTHER INSURANCE OR INDEMNIFICATION**

1.   This **Policy** shall not be subject to the terms of any other insurance. All **Loss**, including **Defense Costs**, payable under this **Policy** shall be shared proportionately with other similar coverage the **Insured** may have in place.

2.   Any coverage under this **Policy** shall be specifically excess to indemnification to which an **Insured** is entitled from any entity other than the **Financial Institution**.

*All other terms of your policy remain the same.*

**To be attached to**
**Policy No.:** 474000407-0000
**Insured:** Wheatland Bank

Form No. SCB667, Ed. 01-06

*This endorsement shall become effective as of 12:01a.m. on*
12/14/2007

## ILLINOIS COMPLAINT NOTICE



*Management and Professional Liability*
*Endorsement No. 5*

### IMPORTANT NOTICE

**This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:**

1. To obtain information or make a complaint, you may call OneBeacon's toll-free telephone number, 800-622-0156, or contact:

OneBeacon Insurance Company
1051 Texas Street
Salem, Virginia 24153

2. You may also write the Illinois Division of Insurance at:

   **Illinois Division of Insurance**
   **Consumer Division of Public Services Section**
   **320 Washington Street,**
   **Springfield, IL 62767-0001**

### ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

*All other terms of your policy remain the same.*

| | |
|---|---|
| ***To be attached to*** | ***This endorsement shall become effective as of 12:01a.m. on*** |
| **Policy No.:** 474000407-0000 | 12/14/2007 |
| **Insured:** Wheatland Bank | |

Form No. SCB777, Ed. 01-06

**Increase Insuring Agreement Limit of Liability**

*Management and Professional Liability*
*Endorsement No. 6*



In consideration of the premium charged and in reliance upon the statements made to the Insurer by letter or **Application** dated 10/21/2008, which is deemed attached to and incorporated into this **Policy**, it is hereby agreed that effective 10/1/2008, Item 8.b. Limit of Liability as set forth in the Declarations is increased to the amount(s) shown in the table below with respect to the Insuring Agreement(s) marked with an X.

It is further agreed that effective 10/1/2008, Item 8.d. Prior or Pending Date as set forth in the Declarations is amended as shown in the table below, but only as respects the amount by which the applicable Limit(s) of Liability are increased pursuant to this endorsement.

| | Item 8.a. Insuring Agreement | | Item 8.b. Limit of Liability | Item 8.d. Prior or Pending Date |
|---|---|---|---|---|
| ☒ | A. Insured Persons Liability | | $5,000,000 | 10/01/2008 |
| ☒ | B. Financial Institution Indemnification | | $5,000,000 | 10/01/2008 |
| ☒ | C. Financial Institution Liability | | $5,000,000 | 10/01/2008 |
| | C1. IRA/Keogh Liability | Included ☒ Excluded ☐ | | 10/01/2008 |
| | C2. Depositor Liability | Included ☒ Excluded ☐ | | 10/01/2008 |
| | C3. Loss of Sensitive Customer Information | Included ☒ Excluded ☐ | | 10/01/2008 |
| ☐ | D. Employment Practices Liability | | | |
| | D1. Third Party Sexual Harassment | Included ☐ Excluded ☐ | | |
| ☐ | E. Fiduciary Liability | | | |
| ☐ | F. Lender Liability | | | |
| | F1. Expanded Lender Liability | Included ☐ Excluded ☐ | | |
| ☐ | G. Bankers Professional Liability | | | |
| | G1. Expanded Bankers Professional Liability | Included ☐ Excluded ☐ | | |
| | G2. Insurance Services | Included ☐ Excluded ☐ | | |
| | G3. Broker/Dealer Services | Included ☐ Excluded ☐ | | |
| ☐ | H. Trust Errors & Omissions | | | |

*All other terms of your policy remain the same.*

**To be attached to**
**Policy No.:** 474000407-0000
**Insured:** Wheatland Bank

Form No. SCB424, Ed. 01-06

***This endorsement shall become effective as of 12:01a.m. on*** 10/01/2008

Page 1 of 1

**Increase Policy Year Shared Limit of Liability**



*Management and Professional Liability*
*Endorsement No. 7*

In consideration of the premium charged and in reliance upon the statements made to the Insurer by letter or **Application** dated 10/21/2008, which is deemed attached to and incorporated into this **Policy**, it is hereby agreed that effective 10/01/2008, Item 4. Policy Year Shared Limit of Liability as set forth in the Declarations is increased from $3,000,000 to $5,000,000.

Note: The Policy Year Shared Limit of Liability is the maximum amount payable by the Insurer for all **Loss** on account of all **Claims** made against the **Insureds** during the same **Policy Year** under all Insuring Agreements, combined, that are subject to the Policy Year Shared Limit of Liability.

It is further agreed that, with respect to the amount by which the Policy Year Shared Limit of Liability is increased, the Insurer shall not be liable for **Loss** on account of any **Claim** against any **Insured** arising out of or in any way involving any fact, circumstance or situation which has been the subject of any written notice given under any insurance in force prior to 10/01/2008, including any applicable Extended Reporting Period.

*All other terms of your policy remain the same.*

**To be attached to**
**Policy No.:** 474000407-0000

**Insured:** Wheatland Bank

Form No. SCB425, Ed. 01-06

*This endorsement shall become effective as of 12:01a.m. on* 10/01/2008

Page 1 of 1