11-3972.121-RSK                                             July 10, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

THE FEDERAL DEPOSIT INSURANCE          )
CORPORATION, as Receiver for           )
WHEATLAND BANK,                        )
                                       )
    Plaintiff/Counter-Defendant,   )
                                       )
            v.                  )      No. 11 C 3972
                                       )
ONEBEACON MIDWEST INSURANCE            )
COMPANY,                               )
                                       )
    Defendant/Counter-Plaintiff.   )
_____ )
ONEBEACON MIDWEST INSURANCE            )
COMPANY,                               )
                                       )
    Plaintiff,                     )
                                       )
            v.                  )
                                       )
LEWIS MARK SPANGLER, ARTHUR P.         )
SUNDRY, MICHAEL A. SYKES, LEONARD      )
EICHAS, FRNAK MALY, DOLORES            )
RITTER, MARY DAVOLT, BEVERLY           )
HARVEY, MICHAEL REES, and NORMAN       )
BELES,                                 )
                                       )
    Third-Party Defendants.        )

### MEMORANDUM OPINION

Before the court are: (1) the third-party defendants' motion
to strike and dismiss or sever and transfer the claims against
them; and (2) the Federal Deposit Insurance Corporation's ("FDIC")
motion to dismiss. For the reasons explained below, we grant the
third-party defendants' motion, and grant in part, and deny in
part, the FDIC's motion.

- 2 -

## BACKGROUND

**1.    The FDIC's Complaint**

The FDIC, as receiver for Wheatland Bank ("Wheatland"), has filed a one-count breach-of-contract complaint against OneBeacon Midwest Insurance Company ("OneBeacon") alleging that OneBeacon has wrongfully denied coverage under a "Financial Institution Bond" (the "Bond").  Pursuant to the Bond, OneBeacon agreed to indemnify Wheatland for financial losses "resulting directly from dishonest or fraudulent acts committed by an Employee . . . with the intent: (a) to cause [Wheatland] to sustain such loss; or (b) to obtain financial benefit for the Employee or another person or entity." (See Bond, attached as Ex. A to FDIC's Compl., at § I (A) ("Employee Dishonesty").)  Two Wheatland executives — Michael A. Sykes (the bank's former CEO) and Arthur P. Sundry (a former director) — caused Wheatland to make loans that benefitted Sykes and Sundry at the bank's expense.[1]  (Compl. ¶¶ 13, 15-51.) Wheatland first became aware of the fraud on or after June 13, 2009, and it gave OneBeacon timely notice of its losses on June 23, 2009.  (Id. at ¶¶ 52-53.)  The bank submitted a proof of loss to OneBeacon on April 8, 2010.  (Id. at ¶ 54.)  Approximately two weeks later, on April 23, 2010, the Illinois Department of Financial and Professional Regulation closed Wheatland and

---

[1]  The specifics of Sykes's and Sundry's alleged fraud, which the FDIC has set forth in significant detail in its complaint, are largely irrelevant to the present motions.

appointed the FDIC as receiver. (Id. at ¶ 3.) The FDIC thereby acquired Wheatland's rights under the Bond. See 12 U.S.C. § 1821(d)(2)(A). OneBeacon has refused coverage for Sykes's and Sundry's wrongful conduct, prompting this lawsuit. (Compl. ¶¶ 52-55.)

### 2. Other Litigation Incident to Wheatland's Failure

Several lawsuits were filed just prior to, and in the wake of, Wheatland's failure. On December 21, 2009, before the FDIC was appointed receiver, Wheatland filed a lawsuit against Sykes, Sundry, and two other defendants in the Circuit Court of Cook County arising out of the same transactions that underlie the FDIC's complaint in this case. See Compl., attached as Ex. 1 to the FDIC's Notice of Removal, FDIC v. Spangler, Case No. 10-C-4288 (N.D. Ill.) (Dow, J.) (DKT #1). On May 12, 2010, Sykes filed a "shareholder's derivative complaint" on Wheatland's behalf against certain of the bank's former directors and against Wheatland, as a "nominal defendant," alleging breach of fiduciary duty and mismanagement. The FDIC removed both cases to this District, where they were consolidated and the parties were realigned. The FDIC is currently the sole plaintiff in the consolidated case and it seeks relief against the bank's former executives, including Sykes. See First Am. Compl., FDIC v. Spangler, et al., Case No. 10-C-4288

- 4 -

(N.D. Ill.) (Dow, J.) (DKT #29).[2]  Finally, on October 10, 2010,
Sundry filed a complaint against the FDIC seeking review of the
FDIC's denial of his administrative claim for indemnification in
connection with the Spangler lawsuit.  See Compl., Sundry v. FDIC,
Case No. 10-C-6749 (N.D. Ill.) (Zagel, J.) (DKT #1).

### 3. OneBeacon's Affirmative Defenses, Counterclaims, and Third-Party Complaint

OneBeacon has responded to the FDIC's complaint with numerous
affirmative defenses and a four-count counterclaim with respect to
the Bond.  It has also filed a separate five-count counterclaim and
"third-party complaint" against the FDIC and certain former
Wheatland officers and directors with respect to a Management and
Professional Liability Policy (the "D&O Policy").  The thrust of
OneBeacon's counterclaims is that if the FDIC proves Sykes's and
Sundry's alleged fraud, then it will have established grounds to
rescind the policies.  On November 7, 2007, Sykes executed on
Wheatland's behalf an application to renew the Bond and the D&O
Policy.  (OneBeacon's Counterclaim ¶¶ 44; see also OneBeacon's
Third-Party Compl. ¶ 44.)  In the application, Wheatland denied
knowledge of any claim that "could reasonably be expected to give
rise to a future liability or bond loss."  (See OneBeacon's
Counterclaim ¶ 46; see also id. at ¶¶ 47-50.)  OneBeacon alleges
that it relied on these and similar representations in the

---

[2]  As we read its current complaint in Spangler, the FDIC is no longer
pursuing claims against the defendants for the specific loan transactions at
issue in this case.

application when it renewed the Bond. (See id. at ¶ 51.) Later, in October 2008, OneBeacon increased the Bond's coverage from $1 million to $3 million, and the D&O Policy's coverage from $3 million to $5 million, in reliance on a "No Known Loss Letter" executed by Sykes representing that Wheatland was not aware of any losses. (See id. at ¶¶ 52-54; see also OneBeacon's Third-Party Compl. ¶¶ 53-55.) OneBeacon contends that the renewal application and the "No Known Loss Letter" were false because Sykes was integrally involved in the fraud alleged in the FDIC's complaint. Based on these alleged misrepresentations, OneBeacon asserts claims for: (1) recission of the Bond (Count I); (2) recission of the increase in the Bond's coverage (Count II, pled in the alternative to Count I); and (3) declaratory judgment that there is no coverage under the Bond (Count III). In a separate count labeled "Reservation of Rights" (Count IV), OneBeacon purports to reserve "all of its rights under the Bond and applicable law." (OneBeacon's Counterclaims ¶ 89.) OneBeacon has also filed a separate counterclaim against the FDIC, and purported third-party claims against some of Wheatland's former directors and officers (including Sykes and Sundry), seeking to rescind the D&O Policy and/or the increased coverage on essentially the same theory underlying its claims with respect to the Bond. (See OneBeacon Third-Party Complaint Counts I (recission of the D&O Policy); II (recission of the D&O Policy's increased coverage, pled in the

- 6 -

alternative to Count I).) OneBeacon also seeks declaratory judgments that the D&O Policy's "Loan Loss Carve-Out" (Count III) and its "Insured v. Insured Exclusion" (Count IV) bar coverage for any damages in the lawsuit pending before Judge Dow and relieve OneBeacon of any duty to advance defense costs to the defendants in that case. Finally, OneBeacon again purports to reserve its rights "under the [D&O Policy] and applicable law" (Count V). (See OneBeacon Third-Party Compl. ¶ 89.)

The FDIC has moved to dismiss OneBeacon's counterclaims, its third-party complaint, and one of its affirmative defenses on the grounds that they are barred by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). See 12 U.S.C. § 1821 et seq. The third-party defendants ask us to dismiss the claims against them because they were improperly joined as defendants under Rule 14(a) or, alternatively, for the reasons stated in the FDIC's motion.

**B.    The FDIC's Motion to Dismiss**

    **1.    Legal Standard**

The FDIC brings its motion pursuant to Rule 12(b)(1) and Rule 12(b)(6). When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a district court accepts as true all well-pled factual allegations and draws reasonable inferences from the allegations in favor of the plaintiff. Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993). The court

may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject matter jurisdiction exists. Id. The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The FDIC asserts three primary arguments for dismissal. First, it argues that OneBeacon's affirmative claims are barred because it failed to exhaust its administrative remedies under FIRREA. Second, it argues that the relief OneBeacon seeks is

barred by 12 U.S.C. § 1821(j). Third, it argues that OneBeacon's claims for recission with respect to the Bond, and its Third Affirmative Defense, are barred by 12 U.S.C. §§ 1823(e) and 1821(d)(9)(A). Until recently, our Court of Appeals considered FIRREA's exhaustion requirement jurisdictional. See Maher v. Harris Trust & Sav. Bank, 75 F.3d 1182, 1190 (7th Cir. 1996) ("Compliance with the FIRREA process is a strict jurisdictional prerequisite to a claim in federal district court against the receiver."). But after the parties in this case completed briefing on the FDIC's motion to dismiss, our Court of Appeals decided Campbell v. FDIC, 676 F.3d 615, 618 (7th Cir. 2012), which ruled that FIRREA's exhaustion requirement is properly characterized as a "claims processing rule" rather than a jurisdictional prerequisite. Id. In light of Campbell, we will address our subject matter jurisdiction under § 1821(j) first. See, e.g., Hanson v. FDIC, 113 F.3d 866, 870 n.5 (8th Cir. 1997) (concluding that § 1821(j) bars subject matter jurisdiction over certain claims against the FDIC).

**2.  12 U.S.C. § 1821(j)**

After the FDIC is appointed receiver, it has broad authority under FIRREA to operate the failed bank and dispose of its assets. See 12 U.S.C. § 1821(d)(2)(B). Section 1821(j) limits courts' authority to "restrain or affect" the FDIC's exercise of these powers:

**Limitation on court action**

- 9 -

> Except as provided in this section, no court may take any
> action, except at the request of the Board of Directors
> by regulation or order, to restrain or affect the
> exercise of powers or functions of the Corporation as a
> conservator or a receiver.

12 U.S.C. § 1821(j).  Courts have construed § 1821(j) broadly to bar claims for injunctive, declaratory, and equitable relief.  See Courtney v. Halleran, 485 F.3d 942, 947-48 (7th Cir. 2007); see also Freeman v. FDIC, 56 F.3d 1394, 1399 (D.C. Cir. 1995) ("Section 1821(j) does indeed effect a sweeping ouster of courts' power to grant equitable remedies to parties like the Freemans.").[3] OneBeacon cites Sharpe v. FDIC, 126 F.3d 1147, 1154-55 (9th Cir. 1997) for the proposition that a court may "restrain" the FDIC from taking an action exceeding its authority under FIRREA.  (See OneBeacon's Resp. (FDIC) at 15.)  But there is no allegation here that the FDIC has acted *ultra vires*.  The real question, we believe, is whether the declaratory and equitable relief that OneBeacon requests will "affect or restrain" the FDIC.

### a. Declaratory Judgment

We agree with OneBeacon that its claim for declaratory judgment of "no coverage" with respect to the Bond does not restrain the FDIC in the relevant sense.  See Village of Sugar

---

[3] Section 1821(j)'s proviso language — "[e]xcept as otherwise provided in this section" — suggests that other provisions might grant courts greater leeway to "restrain or affect" the FDIC.  But the statute's other provisions only tend to reinforce § 1821(j).  See Courtney, 485 F.3d at 948 (Section 1821(j) "prohibits a court from taking any action either to restrain or affect the FDIC's exercise of its powers as a receiver, unless authorization can be found elsewhere in the section.  Far from finding such an authorization, however, we see nothing but language that reinforces § 1821(j).").

<u>Grove v. FDIC</u>, No. 10 C 3562, 2011 WL 3876935, *8 (N.D. Ill. Sept. 1, 2011) (concluding that we had subject matter jurisdiction over a similar claim). In <u>Sugar Grove</u>, the plaintiff alleged that the FDIC (as receiver for Benchmark Bank, N.A.) and MB Financial Bank (as the successor to certain of the failed bank's assets) wrongfully dishonored "sight drafts" that the plaintiff had presented to Benchmark for payment. <u>Id.</u> at *1. It essentially repackaged the same allegations in a separate count requesting a declaratory judgment. <u>Id.</u> at *9. We concluded that we had subject-matter jurisdiction over that request, reasoning that § 1821(j) did not prohibit us from construing agreements that were already before us. <u>See id.</u> at *8 ("We do not read § 1821(j) to prohibit us from declaring the parties' rights under [the agreement allegedly transferring the failed bank's obligations under the sight drafts,] or to require us to accept the FDIC's interpretation of it."). Nevertheless, we dismissed the Village's declaratory-judgment count as redundant because we would necessarily address the issues it raised in ruling on the plaintiff's substantive claims. <u>Id.</u> at *9. Here, OneBeacon cites a provision of the Bond excluding coverage for losses suffered in connection with a loan unless certain requirements are satisfied. (<u>See</u> Counterclaim (Bond) ¶ 85.) It alleges that those requirements are not satisfied here, and therefore requests a declaration of "no coverage." (<u>Id.</u> at ¶¶ 86-87.) This claim is not "preemptive," insofar as OneBeacon

has asserted it in response to the FDIC's claim that its losses are covered.  Cf. Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co., Civil Action No. 08-2993, 2009 WL 3163557, *13 n.11 (E.D. Pa. Oct. 1, 2009) (Section 1821(j) "withholds a Court's ability to hear equitable claims that seek to inhibit, in a preemptive manner, the FDIC's exercise of its powers, including a future use of those powers.").  More importantly, the relief would not "restrain or affect" the FDIC's authority to operate the bank and collect its debts any more than a ruling against it on its breach-of-contract claim would.  But for that same reason, the claim is redundant: we will necessarily address the coverage question when ruling on the FDIC's affirmative claim for breach-of-contract. (See Compl. ¶ 60 (alleging that Wheatland's losses are covered by the Bond)); see also Sugar Grove, 2011 WL 3876935, *9; Amari v. Radio Spirits, Inc., 219 F.Supp.2d 942, 944-45 (N.D. Ill. 2002) (dismissing declaratory judgment suit that was the mirror image of a substantive suit pending between the same parties).  On that basis, Count III of OneBeacon's counterclaim with respect to the Bond is dismissed.

Whether we have subject matter jurisdiction over OneBeacon's counterclaims for declaratory judgment with respect to the D&O Policy is a closer question.  On the one hand, the relief OneBeacon requests — declaratory judgment that particular policy exclusions bar coverage for the Spangler lawsuit — is similar to the relief

- 12 -

that it seeks with respect to the Bond. And unlike the plaintiffs in Courtney and Freeman, OneBeacon is not seeking declaratory relief to compel the FDIC to take (or prevent it from taking) a specific action authorized by FIRREA. See Courtney, 485 F.3d at 946 (court lacked jurisdiction over a declaratory judgment claim tantamount to an injunction prohibiting the FDIC's settlement with another party); Freeman, 56 F.3d at 1399 (court lacked jurisdiction over a declaratory judgment claim that would have prohibited the FDIC from foreclosing on the plaintiffs' property). On the other hand, OneBeacon has sued the FDIC preemptively to seek a determination of rights with respect to a contract in which the FDIC (as receiver) claims an interest. In that sense, the claim will "affect" the FDIC's authority to "collect all obligations and money due the institution." 12 U.S.C. § 1821(d)(2)(B)(ii). Radian is closest to our own facts. In that case, Radian issued insurance policies to Deutsche Bank, as trustee for certain mortgage-backed securities, insuring the underlying mortgages against default. Radian, 2009 WL 3163557, *1. The mortgages were originated and serviced by Indymac, which was later placed into FDIC receivership. Id. Radian sued Indymac (and later the FDIC, as Indymac's receiver) for declaratory judgment.[4] The Radian court's opinion is unclear about the substance of this claim, but

---

[4] The court believed that there was some confusion about whether the FDIC was also named as a defendant to Radian's claim to rescind the insurance policies. Radian, 2009 WL 3163557, *6. Radian clarified, however, that it had not named the FDIC as a defendant to that claim. Id.

- 13 -

we understand from the complaint in that case that Radian asked the court to declare that it did not owe Indymac any duties,[5] or "[i]n the alternative, [to] declare the parties' respective rights, duties and obligations under" the insurance policies. See Am. Compl., Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co., Civil Action No. 08-2993 (DKT #103), at 26. The Radian court concluded that § 1821(j) barred Radian's declaratory-judgment claim because it could "impact the FDIC's ability to assert certain claims against Radian in the future, thereby potentially reducing the assets of the depository institutions, contrary to the express goals of FIRREA." Radian, 2009 WL 3163557, *13; see also id. at 13 n.11 ("[T]he FDIC has power to assert claims against other parties in order to collect monies it believes is owed to the depository institution. Regardless of its abilities to prevail on those claims, the FDIC has the clear authority to assert claims against Radian. Yet any decision in this preemptive declaratory judgment action will prevent the FDIC from having the opportunity to even assert those claims.").

The FDIC suggests two possible ways in which OneBeacon's request for declaratory judgment may affect its powers under FIRREA. First, the FDIC contends that it has a present interest in

---

[5] Radian alleged that Indymac was neither an insured nor a third-party beneficiary of Radian's policies with Deutsche Bank. See Radian, 2009 WL 3163557, *6.

- 14 -

the policies as a tort-claimant in the <u>Spangler</u> lawsuit.[6]  <u>See,
e.g.</u>, <u>Bankers Trust Co. v. Old Republic Ins. Co.</u>, 959 F.2d 677, 682
(7th Cir. 1992) ("[T]he victim of an insured's tort, even though he
is not a third-party beneficiary of his injurer's insurance policy,
has a legally protectable interest in that policy before he has
reduced his tort claim to judgment (but only after he has been
injured).").  Second, the FDIC contends that it may be liable to
Wheatland's former officers and directors for indemnification if
coverage is not available under the D&O Policy.  We tend to agree
with OneBeacon that this risk is negligible, but applying the
<u>Radian</u> court's reasoning, the likelihood that a particular claim
will affect receivership assets is irrelevant.  <u>See</u> <u>Radian</u>, 2009 WL
3163557, *13 n.11 (declining to speculate what claims the FDIC
might bring, or under what legal theory it might proceed).  We
believe that <u>Radian</u> is consistent with § 1821(j)'s broad language
prohibiting courts from taking any action affecting or restraining
the FDIC.[7]  We acknowledge that dismissing OneBeacon's declaratory-

---

[6]  Wheatland is an insured under the policy's other coverages, but the
FDIC appears to concede that the requested declaratory relief only impacts
"Coverage A."

[7]  OneBeacon has not cited, nor are we aware of, any court adopting a
contrary interpretation.  Indeed, besides our own opinion in <u>Sugar Grove</u>, we are
not aware of any court permitting a declaratory-judgment claim to proceed against
the FDIC.  The Fifth and Eleventh Circuits have stated in dicta that § 1821(j)
does not bar all claims for declaratory relief.  <u>See</u> <u>RPM Investments, Inc. v.
Resolution Trust Corp.</u>, 75 F.3d 618, 619 n.1 (11th Cir. 1996) (barring
declaratory judgment claim that was "tantamount" to a claim for specific
performance, but declining to hold that "every claim for declaratory relief
against a failed institution would be subject to the jurisdictional bar of §
1821(j)."); <u>Carney v. Resolution Trust Corp.</u>, 19 F.3d 950, 958 n. 3 (5th
Cir.1994) ("Naturally, we do not hold that § 1821(j) would bar all actions for
declaratory relief against the receiver of a failed financial institution.").  But

judgment counterclaims deprives it of a remedy that is traditionally available to insurers asked to defend lawsuits for which they contend there is no coverage. See American Safety Cas. Ins. Co. v. City of Waukegan, Ill., 678 F.3d 475, 485 (7th Cir. 2012) ("Illinois requires an insurer that denies coverage either to defend under a reservation of rights or to seek a declaratory judgment of non-coverage; if it takes neither step while the underlying litigation proceeds, it is estopped to deny coverage."). And the harm to the FDIC's interests is speculative: it may never sue under the D&O Policy.[8] But we do not see any basis in the statute's language to balance the relative interests of the FDIC and the party seeking non-monetary relief. Cf. Freeman, 56 F.3d at 1398 ("Although [§ 1821(j)'s] limitation on courts' power to grant equitable relief may appear drastic, it fully accords with the intent of Congress at the time it enacted FIRREA in the midst of the savings and loan insolvency crisis to enable the FDIC and the Resolution Trust Corporation [] to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country."). In light of Radian's persuasive

---

neither Carney nor RPM Investments discuss circumstances in which such claims may proceed without violating § 1821(j).

[8] OneBeacon argues that the FDIC has previously litigated declaratory-judgment actions in similar situations without raising jurisdictional objections. (OneBeacon's Resp. (FDIC) at 13-14.) OneBeacon has made no real effort to demonstrate that judicial estoppel is appropriate in this case, and we are unaware of any prior case in which the FDIC has interpreted FIRREA in a manner that is "clearly inconsistent" with its position here. In re Airadigm Communications, Inc., 616 F.3d 642, 662 (7th Cir. 2010).

reasoning, the fact that § 1821(j) has been broadly construed by circuit courts (including our own), and the dearth of authority permitting claims for declaratory relief against the FDIC, we conclude that FIRREA bars OneBeacon's claims for declaratory judgment with respect to the D&O Policy.

### b. Rescission

We also conclude that the § 1821(j) bars OneBeacon's claims to rescind the Bond and the D&O Policy. Courts have held that rescission claims have the same capacity to "restrain or affect" the FDIC's powers as claims for injunctive relief. See Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 715 (8th Cir. 1996); Freeman, 56 F.3d at 1399; Ward v. Resolution Trust Corp., 996 F.2d 99, 103-04 (5th Cir. 1993); United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1329 (6th Cir. 1993); see also Courtney, 485 F.3d at 948 (citing Tri-State and Freeman with approval). In Tri-State, a bank breached its loan agreement with the plaintiff before going into receivership. Tri-State, 79 F.3d at 710. After the FDIC was appointed receiver, the plaintiff filed a lawsuit seeking (among other things) to rescind the parties' underlying loan agreements. Id. at 711. The Tri-State court held that § 1821(j) barred this claim: "[b]ecause FIRREA grants the FDIC the power to 'collect all obligations and money due the institution,' 12 U.S.C. § 1821(d)(2)(B)(ii), rescinding the agreements would act as an impermissible restraint on the ability of the FDIC to exercise its

powers as receiver." Id. at 715. Tri-State is arguably distinguishable because, with respect to the Bond at least, the FDIC has already filed a claim for affirmative relief. But there is no suggestion in the Tri-State court's opinion that it would have entertained the plaintiff's rescission claim if it had been filed as a counterclaim in a suit brought by the FDIC. Cf. Brusik v. One Fourth St. N. Ltd., 84 F.3d 1395, 1396-97 (11th Cir. 1996) (concluding that § 1821(j) barred the defendants' counterclaims for equitable relief). Moreover, we cannot anticipate what other claims the FDIC might make in the future under the policy. With respect to the D&O Policy, there is no meaningful difference between OneBeacon's claims for rescission and the declaratory-judgment claims of non-coverage we have already held are barred. See supra. We conclude that OneBeacon's counterclaims for rescission of the Bond and the D&O Policy would "restrain or affect" the FDIC's authority as receiver. Accordingly, § 1821(j) bars those claims.

### c. Whether the Claims May Proceed Against the Non-FDIC Defendants

We agree with the FDIC that OneBeacon's claims for declaratory and equitable relief cannot proceed against the non-FDIC defendants alone. "[A] court order which operates against a third party is precluded by section 1821(j) if the order would have the same effect from the FDIC's perspective as a direct action against it precluded by section 1821(j)." Hindes v. FDIC, 137 F.3d 148, 160

- 18 -

(3d Cir. 1998); see also Telematics Intern., Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 707 (1st Cir. 1992). A judgment rescinding the policies would clearly affect the FDIC whether or not it is formally named a defendant to such a claim. Similarly, a declaration that Wheatland's former directors and officers are not entitled to coverage would impact the FDIC's interest as the tort-claimant in Spangler. It is true, as OneBeacon points out (see OneBeacon's Resp. (FDIC) at 18), that the Radian court permitted the plaintiff to pursue a claim for rescission against Deutsche Bank (its insured) despite the FDIC's hypothetical interest in the policy. See Radian, 2009 WL 3163557, *6. But it reached that conclusion based upon the FDIC's decision to abandon its argument that rescission implicated § 1821(j) whether or not it was formally named as a defendant to that claim. Id. Indeed, the court hinted in a footnote that it would have applied § 1821(j) to bar Radian's rescission claim against Deutsche Bank if the FDIC had pressed the argument. Id. at *6 n.6 ("Without deciding the issue, this Court observes that several other courts have barred claims for equitable relief directed at non-FDIC third parties, such as Deutsche Bank and the Certificate Insurers, where the relief would still effect [sic] or restrain the FDIC.") (collecting cases). In a footnote at the end of its response brief, OneBeacon argues that its claims may proceed against the non-FDIC defendants because the FDIC is not an "indispensable" party. (See OneBeacon's Resp. (FDIC) at 25 n.12.)

- 19 -

Our ruling here is based upon our interpretation of § 1821(j)'s scope — an issue that OneBeacon does not squarely address — not Rule 19.  As for its due process argument, (see OneBeacon's Resp. (FDIC) at 25 n.12), we note that our ruling does not mean that there *is* coverage for the Spangler lawsuit, notwithstanding any policy defenses OneBeacon may have.  It merely means that OneBeacon cannot preemptively sue for an early determination of that issue. (See supra at 14-15.)

### d.  Summary

OneBeacon's counterclaim against the FDIC with respect to the Bond is dismissed in its entirety.  We conclude that § 1821(j) bars its rescission claims (Counts I and II) with respect to the Bond. Count III of that counterclaim is dismissed as redundant in light of the FDIC's claim for breach of contract.  Count IV, styled a "Reservation of Rights," is dismissed as it fails to assert any claim against the FDIC.  Likewise, OneBeacon's counterclaim against the FDIC and Wheatland's former officers and directors is dismissed in its entirety.  We conclude that § 1821(j) bars Counts I, II, III, and IV of OneBeacon's counterclaim with respect to the D&O Policy.  Count V ("Reservation of Rights") is dismissed for the reasons we just explained.  Among other grounds for dismissal, the third-party defendants have expressly adopted the arguments made by the FDIC. (See Third-Party Defs.'s Mem. at 12.)  On that basis, we

grant the third-party defendants' motion to dismiss OneBeacon's counterclaim against them.

**3.    Exhaustion**

Even if we concluded that we had subject-matter jurisdiction over OneBeacon's counterclaims, we would still dismiss those claims under § 1821(d)(13)(D).   Section 1821(d)(13)(D) ("Limitation on judicial review") provides,

> Except as otherwise provided in this subsection, no court shall have jurisdiction over —
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).   This provision requires parties to exhaust their administrative remedies under FIRREA before bringing a "claim" or "action" against the FDIC in state or federal court. See Village of Oakwood v. State Bank and Trust Co., 539 F.3d 373, 385–86 (6th Cir.2008) (collecting cases).   The FDIC contends, and OneBeacon does not dispute, that OneBeacon did not submit a proof of claim to the FDIC before the 90-day deadline to submit such claims expired on July 28, 2012.   See 12 U.S.C. § 1821(d)(3)(B); (FDIC Mem. at 4).   OneBeacon argues, however, that its counterclaims are not subject to FIRREA's exhaustion requirement.

- 21 -

First, OneBeacon argues that § 1821(d)(13)(D) applies only to a failed bank's creditors, not its alleged debtors. In support of this argument, OneBeacon relies primarily on the Ninth Circuit's decision in Parker N.A. Corp. v. Resolution Trust Corp., 24 F.3d 1145, 1152 (9th Cir. 1994). The Parker court reasoned that FIRREA's administrative claims procedure refers only to "creditors," see 12 U.S.C. § 1821(d)(3)(B)-(C), not debtors, and therefore the word "claims" in § 1821(d)(13)(D) must refer to creditors' claims. Id. at 1152-53; see also American Cas. Co. of Reading, Pa. v. Sentry Federal Sav. Bank, Civ. A. No. 91-12050-WGY, 91-11016-WGY, 1995 WL 170037, *3 (D. Mass. Mar. 16, 1995) (applying the same reasoning to a creditor's declaratory-judgment "action"). However, the Ninth Circuit has since limited Parker to cases involving the intersection of FIRREA and the Bankruptcy Code. See McCarthy v. FDIC, 348 F.3d 1075, 1078 (9th Cir. 2003) (declining "to extend Parker beyond bankruptcy"). As the McCarthy court noted, "[t]he text of § 1821(d)(13)(D) plainly states that any claim or action that asserts a right to assets of a failed institution is subject to exhaustion. There is no limitation to creditors, or exclusion of debtors . . . ." Id. at 1077. Although our Court of Appeals has not weighed in on the question, other circuits have similarly concluded that § 1821(d)(13)(D) is not limited to claims by creditors. See, e.g., In re Lewis, 398 F.3d 735, 741-42 (6th Cir. 2005) (concluding that § 1821(d)(13)(D)

applies to debtors and citing supporting authority from the First, Third, Eighth, Ninth, and D.C. Circuits); see also Tri-State, 79 F.3d at 714 ("The great weight of authority holds that FIRREA requires debtors as well as creditors to undergo the administrative review process."). We believe that these authorities are persuasive because they are consistent with FIRREA's plain language. See Tri-State, 79 F.3d at 714 ("While the notice provisions do apply only to creditors, such limiting language is conspicuously absent in the jurisdictional bar provision.").

OneBeacon next argues that § 1821(d)(13)(D) does not apply because it is responding defensively to the FDIC's complaint. But "[c]ourts have uniformly held that parties must exhaust their administrative remedies under FIRREA before proceeding on a counterclaim." FDIC v. Scott, 125 F.3d 254, 259 n.2 (5th Cir. 1997); see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B., 28 F.3d 376, 394 (3d Cir. 1994) (requiring exhaustion for counterclaims). The analysis with respect to the Bond is straightforward: "[i]nsurance policies which a bank has purchased and under which it is an insured fall neatly within" the general definition of "assets." Nat'l Union, 28 F.3d at 384. The analysis with respect to the D&O Policy is somewhat less clear, insofar as that policy includes multiple coverages. Wheatland is an insured under coverages "B" ("Financial Institution Indemnification") and "C" ("Financial Institution Liability"), but

not coverage "A" ("Insured Persons Liability"). (See D&O Policy at 2.) OneBeacon points out that in the bankruptcy context, some courts distinguish between the liability policy itself (which is an asset of the debtor) and the proceeds of the policy (which may or may not be an asset of the debtor, depending on the policy's terms and the claims at issue). See, e.g., In re Allied Digital Technologies, Corp., 306 B.R. 505, 509 (D. Del. Bkr. 2004); see also Davis v. Connolly, NO. 10 C 6553, 2011 WL 1378875, *1 (N.D. Ill. Apr. 12, 2011). But this issue is unsettled as a matter of bankruptcy law, see, e.g., In re marchFIRST, Inc., 288 B.R. 526, 529-30 (N.D. Ill. Bkr. 2002) (recognizing disagreement), and this is not a bankruptcy case. In the bankruptcy context, courts have expressed concern that debtors will use the automatic stay to prevent insurance companies from distributing policy proceeds to other insureds, despite their priority according to the policy's terms. See In re Allied, 306 B.R. at 513 ("The bottom line is that the Trustee seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for."). This has led some courts to make nuanced distinctions between the policy and its proceeds. We see no reason to adopt a similarly nuanced approach here in the face of FIRREA's clear language. The D&O Policy is a receivership "asset," applying Nat'l Union's common-sense definition, and

- 24 -

OneBeacon seeks a "determination of rights with respect to" that asset. The fact that the FDIC ultimately may not collect under the policy — either because there are not currently any claims implicating Wheatland's coverage or because there may not be any money left after OneBeacon fulfills its defense obligations to the directors and officers — is irrelevant. See Nat'l Union, 28 F.3d at 384 ("An insurance policy is of value to the owner and named insured of the policy, even though it is possible that the owner will ultimately be found not to be entitled to a particular recovery under the policy.").

This leads us to the question of affirmative defenses. The FDIC concedes that affirmative defenses are not subject to exhaustion. See, e.g., Tri-State, 79 F.3d at 715; Nat'l Union, 28 F.3d at 393 (concluding that § 1821(d)(13)(D) does not bar affirmative defenses). It argues, however, that OneBeacon's Third Affirmative Defense — "[t]he FDIC's claim is barred or limited because the alleged contract is unenforceable and/or void *ab initio* due to concealment, material misrepresentation, and/or material breach of warranty by the Bank" — is not a true affirmative defense. According to the FDIC, an affirmative defense is really a "claim" or "action" subject to FIRREA's exhaustion requirement if it: (1) could have been asserted in the claims process; and (2) seeks a remedy that § 1821(d)(13)(D) bars unless the claimant has exhausted its administrative remedies. (See FDIC's Mem. at 15.)

- 25 -

There is authority supporting this broad interpretation of §
1821(d)(13)(D). See, e.g., RTC v. Schonacher, 844 F.Supp. 689, 696
(D. Kan. 1994). Other courts have construed § 1821(d)(13)(D) more
narrowly. In Nat'l Union, the Third Circuit relied on the
following definition of an affirmative defense: "'[a] response to
a plaintiff's claim which attacks the plaintiff's [legal] right to
bring an action, as opposed to attacking the truth of [that]
claim.'" Nat'l Union, 28 F.3d at 393 (quoting Black's Law
Dictionary 60 (6th ed. 1990)). A "claim," by contrast, "is
essentially an action which asserts a right to payment." Id. at
394. So, a party cannot avoid § 1821(d)(13)(D) by re-labeling an
unexhausted claim for damages as an affirmative defense. See,
e.g., American First Federal, Inc. v. Lake Forest Park, Inc., 198
F.3d 1259, 1265 (11th Cir. 1999) ("Lake Forest's claim for damages
stemming from Professional's refusal to fund the balance of the
construction loan is clearly a claim against the assets of the
failed institution rather than a defense which attacks AFF's legal
right to bring the action."). But a true "response" in defense to
an FDIC claim is permissible. See Nat'l Union, 28 F.3d at 393.
Applying this approach, the First Union court held that the
plaintiff's counterclaim for rescission was barred by §
1821(d)(13)(D), but it permitted the plaintiff to assert the same

- 26 -

theory as an affirmative defense.[9]  We believe that <u>National Union</u>'s approach is the most consistent with the statute's plain language.  See <u>Nat'l Union</u>, 28 F.3d at 393-94; <u>see also</u> <u>Resolution Trust Corp. v. Love</u>, 36 F.3d 972, 977-78 (10th Cir. 1994) (concluding that the court had jurisdiction over unexhausted affirmative defenses).  The fact that a particular defense *could be* asserted as an administrative claim does not convert that defense into a "claim" or "action" within the ordinary meaning of those terms.  We conclude that OneBeacon's Third Affirmative Defense is not barred by § 1821(d)(13)(D).

### 4.    12 U.S.C. §§ 1823(e) and 1821(d)(9)(A)

The FDIC alternatively argues that OneBeacon's Third Affirmative Defense is barred by 12 U.S.C. §§ 1823(e) and 1821(d)(9)(A) and the related common-law doctrine announced by the Supreme Court in <u>D'Oench, Duhme & Co. v. FDIC</u>, 315 U.S. 447 (1942).[10]  The defendant in <u>D'Oench, Duhme</u>, a securities firm, sold bonds to Belleville Bank & Trust Co. that later defaulted.

---

[9]    The <u>National Union</u> court did not address § 1821(j), except parenthetically.  <u>See</u> <u>Nat'l Union</u>, 28 F.3d at 392 n.23 (citing the Fifth Circuit's decision in <u>Carney</u>, a case applying § 1821(j), as consistent with the <u>Nat'l Union</u> court's conclusion that it lacked jurisdiction over the defendant's declaratory-judgment counterclaim under § 1821(d)(13)(D)).  We have held that § 1821(j) bars OneBeacon's rescission claims, and although the issue is not squarely before us, we doubt that OneBeacon could revive those claims as affirmative defenses.  By its terms, section 1821(j) is not limited to "claims" or "actions."  Nevertheless, we find <u>National Union</u>'s interpretation of § 1821(d)(13)(D), if not its holding, persuasive.

[10]    The FDIC also relies on these authorities in support of dismissing OneBeacon's affirmative claims.  In light of our ruling that those claims are barred by §§ 1821(j) and 1821(d)(13)(D), we will only address §§ 1823(e), 1821(d)(9)(A), and <u>D'Oench, Duhme</u> as they apply to OneBeacon's Third Affirmative Defense.

D'Oench, Duhme, 315 U.S. at 454. To avoid showing past due bonds on the bank's books, the defendant executed notes in the bank's favor subject to the parties' agreement that the bank would not call them for payment. Id. Belleville Bank later failed, and the FDIC, unaware of the bank's "secret" agreement with the defendant, demanded payment on the notes. Id. The Supreme Court held, as a matter of federal common law, that the defendant could not rely on the secret agreement to defeat the FDIC's claim: "[i]f the secret agreement were allowed as a defense in this case the maker of the note would be enabled to defeat the purpose of the [Federal Reserve Act] by taking advantage of an undisclosed and fraudulent arrangement which the statute condemns and which the maker of the note made possible." Id. at 461. Congress later "partially codified" (John v. Resolution Trust Corp., 39 F.3d 773, 775 (7th Cir. 1994)) the D'Oench, Duhme doctrine in 12 U.S.C. § 1823(e)(1), which currently reads as follows:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement —
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which

approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). Section 1821(d)(9)(A), enacted as part of FIRREA in 1989, states that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the [FDIC]." 12 U.S.C. § 1821(d)(9)(A). The Supreme Court has broadly defined the term "agreement" in § 1823(e), holding in Langley v. FDIC, 484 U.S. 86, 89 (1987) that the term encompassed a failed bank's misrepresentations concerning property that the defendants purchased with a loan from the bank. See id. at 96 ("A condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach."); see also Resolution Trust Corp. v. Ehrenhaus, 34 F.3d 441, 442 (7th Cir. 1994) (applying Langley and concluding that § 1823(e) applied to a bank's alleged concealment of facts material to the defendant's loan guaranty).

Although our Court of Appeals has not explicitly addressed whether a fidelity bond is subject to § 1823(e), it established an interpretative framework in John that excludes such agreements from the statute's scope. In John, the defendant bank (later taken over by the FDIC) allegedly concealed defects in a house

that it sold to the plaintiffs. John, 39 F.3d at 774. The
district court concluded that the plaintiffs' fraud claims were
barred by § 1823(e) and the D'Oench, Duhme doctrine. Id. at 775.
Our Court of Appeals reversed, stating that the § 1823(e) applies
only to "conventional loan activities," id. at 776, and
distinguishing other authorities applying § 1823(e) on that basis.
See id. 777 n.2 (distinguishing Ehrenhaus and other authorities on
the grounds that they involved "loan transactions" governed by §
1823(e)); id. at 777 n.3 (distinguishing FDIC v. State Bank of
Virden, 893 F.2d 139 (7th Cir. 1990) on the grounds that that case
involved a "loan agreement" covered by § 1823(e)). The Court
observed that "[s]ection 1823(e) requires an identifiable 'asset'
which is acquired by the bank and then transferred to the
regulatory agency, and to which the unenforceable agreements must
relate." Id. When the FDIC took over the bank in John, it did
not acquire an identifiable asset traceable to the bank's sale to
the plaintiffs, which the parties had completed six years before
the FDIC entered the picture. Id. Moreover, as the Fifth
Circuit observed in another case involving an asset sale by a
failed bank, § 1823(e)(2) — which requires that the bank execute
the "agreement" "contemporaneously with the acquisition of the
asset" by the bank — "does not comfortably, to say the least, fit
the sale of an asset." Thigpen v. Sparks, 983 F.2d 644, 647 (5th

Cir. 1993) (emphasis added); see also John, 39 F.3d at 776 (citing Thigpen with approval).

Arguably, applying § 1823(e) to Wheatland's bond application does not create the same interpretative problems: (1) the Bond is an identifiable asset (see, e.g., Nat'l Union, 28 F.3d at 384), (2) it was acquired by Wheatland, (3) it was transferred to the FDIC, and (4) the application "relate[s]" to that asset. See John, 39 F.3d at 776. On the other hand, we do not interpret John's repeated emphasis that § 1823(e) applies only to loan activities as an overbroad gloss on a more narrow holding. First, as we just discussed, the Court drew a clear distinction between cases involving conventional loan activities and cases involving other transactions. Only the former are governed by § 1823(e). Second, the Court went on to observe that applying § 1821(d)(9)(A) — and by implication, § 1823(e) — beyond loan transactions would give the FDIC sweeping powers that the Court did not believe Congress had intended to confer. See John, 39 F.3d at 776.[11] We are constrained by John to conclude that §§ 1823(e) and

---

[11] The FDIC argues that the Seventh Circuit incorrectly required that an "agreement" under § 1821(d)(9)(A) must relate to a specific asset, as per § 1823(e). (See FDIC Reply at 13.) This argument is based upon a "Statement of Policy" that the FDIC released in 1997 that gives a contrary interpretation and purports to distinguish John and Thigpen on the ground that those cases involved "pre-FIRREA facts." Statement of Policy, 65 FR 5984, 5985 n.2. This is a flimsy basis for distinguishing John, which explicitly applied §§ 1823(e) and 1821(d)(9)(A) to the facts of that case. As for the substance of the FDIC's interpretation, its argument for Chevron deference is undeveloped. (See FDIC's Mem. at 20; FDIC's Reply at 13.) On this record, we will not ignore John's clear statements that §§ 1823(e) and 1821(d)(9)(A) are both limited to "conventional loan transactions."

1821(d)(9)(A) does not apply to Wheatland's Bond application. <u>Cf.</u> <u>FDIC v. Oldenburg</u>, 34 F.3d 1529 (10th Cir. 1994) (striking affirmative defense predicated on alleged misrepresentations in a fidelity-bond application); <u>but see</u> <u>FDIC v. Aetna Cas. & Surety Co.</u>, 947 F.2d 196 (6th Cir. 1991) (concluding on similar facts that a fidelity bond is not subject to § 1823(e)).

The <u>John</u> Court left the door open to applying the common law <u>D'Oench, Duhme</u> doctrine to non-loan transactions. <u>See</u> <u>John</u>, 39 F.3d at 776 ("Courts have split over whether the common law <u>D'Oench</u> doctrine is also broader than § 1823(e) and extends to non-loan transactions."). But it declined to rule definitively on the question "because as a matter of both policy and common sense" the doctrine did not apply to the transaction in <u>John</u>. <u>Id.</u> The FDIC has not pursued an argument based on <u>D'Oench, Duhme</u> independent of §§ 1823(e) and 1821(d)(9)(A). (<u>Cf.</u> FDIC Mem. at 19 n.2.) Moreover, it is unclear whether the doctrine remains viable after more recent Supreme Court cases curtailing federal common law. <u>See, e.g.</u>, <u>Murphy v. FDIC</u>, 61 F.3d 34, 38-40 (D.C. Cir. 1995) (concluding that the doctrine is no longer viable); <u>cf.</u> <u>Hillman v. Resolution Trust Corp.</u>, 66 F.3d 141, 142 n.2 (7th Cir. 1995) (observing that some courts had ruled that <u>D'Oench, Duhme</u> "did not survive the arguably narrower statutory framework embodied in 12 U.S.C. §§ 1823(e) and 1821(d)(9)(A)," but declining to reach the issue). But even assuming that <u>D'oench, Duhme</u>

applies to non-loan transactions, <u>John</u>'s discussion of the doctrine persuades us that it would not apply here. The <u>John</u> Court construed <u>Langley</u> and its progeny to apply only to those situations in which the parties' "secret agreement" is inconsistent with their written agreement: "<u>Langley</u> has nothing to say about the present case, where the Johns' reliance on Germania's fraudulent omission and concealment was completely consistent with the terms of a form sales contract silent on the issue of latent defects." <u>Id.</u> at 777. So, for example, if OneBeacon produced a "secret agreement" purporting to show that the Bond's policy limit was $1 million, not $3 million, then a case could be made that the <u>D'Oench, Duhme</u> doctrine barred a defense predicated on that agreement. But the FDIC has not cited any provision of the Bond that is inconsistent with OneBeacon's reliance on the policy application. <u>Cf.</u> <u>Aetna Cas. & Surety</u>, 947 F.2d at 208 ("[W]hen the FDIC, in the course of a purchase and assumption transaction, finds a bankers blanket bond, it acquires the bond with knowledge of the recognized defenses available under insurance law."). Moreover, the <u>John</u> Court's analysis of the policies underlying the doctrine supports the view that the doctrine does not apply here. Among other things, the doctrine "allow[s] federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." <u>Id.</u> (quoting <u>Langley</u>, 484 U.S. at 91-92). "Clearly, the inclusion of

the statement 'this house is not subsiding' in the Johns' written sales contract would not have changed the transaction or the records available to bank examiners in the slightest." Id. The FDIC suggests that OneBeacon could have avoided D'Oench, Duhme by incorporating the application into the Bond by reference, as it did in the D&O Policy. (See FDIC's Reply at 15; see also D&O Policy at 7.) But it is difficult to see how incorporating the application by reference in the Bond would have meaningfully changed the records that were available to the FDIC's examiners when evaluating Wheatland's assets. Wheatland used the same application form to apply for both policies, and the FDIC has not suggested that it somehow took the application into account when evaluating the D&O Policy. As the Sixth Circuit explained in Aetna Cas. & Surety, an insurance policy, unlike a promissory note, is not susceptible to "overnight" analysis because its coverage depends on factors outside the document itself:

> [A]ssuming that an insurance policy is an asset within the meaning of the statute, a conclusion Aetna contested at the district court level, an insurance policy, due to its conditional nature, is not the type of asset that lends itself easily to an "overnight" or instantaneous assessment. Generally, insurance policies contain provisions specifying the conditions under which the insurer is obligated to pay and those under which the insurer is not obligated to pay. Unlike a promissory note or other negotiable instrument, there is no certainty, without reviewing potential policy defenses or limitations, whether insurance proceeds will be paid. It would thus be difficult to ascertain instantaneously the likely proceeds, if any, to which the FDIC would be entitled.

<u>Id.</u> at 202. Even assuming that the <u>D'Oench, Duhme</u> doctrine applies to non-loan transactions, we conclude that it does not apply here to bar OneBeacon's Third Affirmative Defense.

## **CONCLUSION**

The third-party defendants' motion to dismiss [25] is granted. The FDIC's motion to dismiss [17] is granted in part and denied in part. OneBeacon's counterclaims against the FDIC are dismissed. The motion is denied as to OneBeacon's Third Affirmative Defense. A status hearing is set for July 25, 2012 at 10:30 a.m.


DATE:          July 10, 2012


ENTER:         _____

John F. Grady, United States District Judge