11-3972.131-RSK                                         March 12, 2013

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE FEDERAL DEPOSIT INSURANCE          )
CORPORATION, as Receiver for           )
WHEATLAND BANK,                        )
                                       )
        Plaintiff,                     )
                                       )
            v.                         )    No. 11 C 3972
                                       )
ONEBEACON MIDWEST INSURANCE            )
COMPANY,                               )
                                       )
        Defendant.                     )
_____ )

**MEMORANDUM OPINION**

Before the court is defendant OneBeacon Midwest Insurance Company's ("OneBeacon") motion for leave to amend and for limited reconsideration. For the reasons explained below, we grant OneBeacon's motion.

**BACKGROUND**

We will assume that the reader is familiar with our prior opinion in this case. See Federal Deposit Ins. Corp. v. OneBeacon Midwest Ins. Co., 883 F.Supp.2d 754 (N.D. Ill. 2012). However, it will be helpful to briefly revisit the background facts. The Federal Deposit Insurance Company, as receiver for Wheatland Bank (the "FDIC"), has filed a one count complaint alleging that OneBeacon has wrongfully denied coverage under a "Financial Institution Bond" (the "Bond") issued to Wheatland Bank

- 2 -

("Wheatland").[1]   Pursuant to the Bond, OneBeacon has agreed to indemnify Wheatland (and now the FDIC) for financial losses "resulting directly from dishonest or fraudulent acts committed by an Employee . . . with the intent: (a) to cause [Wheatland] to sustain such loss; or (b) to obtain financial benefit for the Employee or another person or entity." (See Bond, attached as Ex. A to Am. Compl., at § I(A) ("Employee Dishonesty").) The FDIC alleges that two former Wheatland executives — Michael A. Sykes and Arthur P. Sundry — fraudulently induced the bank to lend money to a company in which they had an interest. (See, e.g., Am. Compl. ¶ 2.)[2]  According to the FDIC, the bank has lost more than $4 million on the loan. (Id. at ¶ 38.)  OneBeacon has refused coverage for Sykes's and Sundry's alleged misconduct.

In response to the FDIC's original complaint, OneBeacon filed a five-count counterclaim and third-party complaint against the FDIC and certain former officers and directors of Wheatland with respect to a Management and Professional Liability Policy (the "D&O Policy"), also issued by OneBeacon.[3]  Those former officers and directors (including Sykes and Sundry) are defendants in a separate

---

[1]   The FDIC acquired Wheatland's rights under the Bond when it was appointed receiver for the bank. See 12 U.S.C. § 1821(d)(2)(A).

[2]   Since we filed our earlier opinion, the FDIC has amended its complaint to narrow the scope of the alleged fraud. The change is immaterial to the current motion.

[3]   OneBeacon also filed a four-count counterclaim against the FDIC with respect to the Bond, which we dismissed. See OneBeacon, 883 F.Supp.2d at 761-68. OneBeacon has not asked us to reconsider any portion of that ruling.

lawsuit filed by the FDIC to recover losses allegedly caused by the defendants' negligence. See <u>FDIC v. Spangler, et al.</u>, Case No. 10 CV 4288 (N.D. Ill.). Under the D&O Policy, OneBeacon must advance defense costs to the <u>Spangler</u> defendants and may eventually be required to indemnify them for a judgment or settlement in that case. (<u>See</u> D&O Policy at 2, 20.) OneBeacon's original third-party complaint/counterclaim sought: (1) to rescind the D&O Policy; (2) to rescind an agreement raising the policy limits; and/or (3) declaratory judgment that the D&O Policy does not cover the damages that the FDIC is seeking in <u>Spangler</u>. (<u>See</u> Original Counterclaim and Third-Party Compl., Dkt. 9, 32-51.) We dismissed OneBeacon's D&O Policy claims because we concluded that they were barred by 12 U.S.C. §§ 1821(j) and 1821(d)(13)(D). See <u>OneBeacon</u>, 883 F.Supp.2d at 761-68.

OneBeacon has now moved to "amend" and asks us to reconsider our earlier ruling insofar as it applies to the proposed amendment. There is some ambiguity in the briefs about whether OneBeacon is asking our permission to file an entirely new and separate complaint — perhaps to be filed in a different court — or whether it wants leave to amend its earlier pleading in *this* case. (<u>Compare</u> OneBeacon's Mem. at 1 (requesting leave "to file a separate action"), <u>with</u> <u>id.</u> at 2 (requesting leave to "amend its pleadings"); <u>see also</u> <u>id.</u> at 2 n.2 (citing Rule 15).) It would be inappropriate to speculate about the propriety of a complaint that

- 4 -

will be filed with a different court.  And the parties' substantive arguments presume that the matter is properly before us.  (See, e.g., FDIC Resp. at 11 (arguing that we should exercise our discretion to decline to hear OneBeacon's declaratory-judgment claims); Third-Party Defs.' Resp. at 4 (arguing that we should deny OneBeacon leave to file the amended complaint because the FDIC is an indispensable party).)  So, we will construe OneBeacon's motion to request leave to amend its earlier pleading in this case.

## A.    Legal Standard

Rule 54(b) governs OneBeacon's motion to reconsider our earlier, interlocutory order:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."  Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1269 (7th Cir. 1996).  "In regard to the 'manifest error' prong, the Seventh Circuit has explained that a motion to reconsider is proper only when 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of

- 5 -

apprehension.'" <u>Almy v. Kickert School Bus Line, Inc.</u>, No. 08-cv-2902, 2013 WL 80367, *8 (N.D. Ill. Jan. 7, 2013) (quoting <u>Bank of Waunakee v. Rochester Cheese Sales, Inc.</u>, 906 F.2d 1185, 1191 (7th Cir. 1990)).

The FDIC argues that OneBeacon's decision to file a combined motion to amend and reconsider is an improper gambit. (<u>See</u> FDIC Resp. at 8-10.) We disagree. There is nothing inappropriate or unusual about a party amending its claims in response to a ruling concerning an earlier pleading. In this case, OneBeacon's original pleading named the FDIC as a defendant to its claims for rescission and declaratory judgment. We construed § 1821(j) broadly to bar claims affecting the FDIC's contingent interests in the D&O Policy. <u>See OneBeacon</u>, 883 F.Supp.2d at 761-66. We further held that simply dropping the FDIC as a defendant would not solve the problems that we identified with OneBeacon's claims. <u>See id.</u> at 765-66. The FDIC is correct that the parties briefed this issue as it applied to OneBeacon's original claims, and that we addressed many of the authorities that OneBeacon has marshaled in support of its current motion. (<u>See</u> FDIC's Resp. at 5-8.) However, OneBeacon's proposed amendment substantially narrows its claims to address only its obligation to pay the <u>Spangler</u> defendants' defense costs. (<u>See</u> Proposed Compl., attached as Ex. A to Mot. to Reconsider, at 12 ("Prayer for Relief").) It has not named the FDIC as a defendant, and it no longer seeks (1) rescission (in

whole or in part), or (2) a declaration that it is not obligated to indemnify an eventual judgment or settlement in <u>Spangler</u>. (<u>See</u> <u>id.</u>) Its earlier complaint encompassed the relief that it is currently seeking. (<u>See</u> Original Third-Party Compl. at 51 (requesting a declaration that it was not obligated to pay defense costs or indemnify any judgment in <u>Spanlger</u>).) But the parties did not brief that specific issue and we did not address it. So, we think it is appropriate to revisit our prior decision in light of OneBeacon's proposed amendment.

**B.   Section 1821(j)**

Section 1821(j) limits courts' authority to "restrain or affect" the FDIC's exercise of its functions under FIRREA:

> **Limitation on court action**
>
> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j). The particular "power" or "function" at issue in this case is the FDIC's authority to "collect all obligations and money due the institution" placed into receivership. 12 U.S.C. § 1821(d)(2)(B)(ii). "Coverage A" of the D&O Policy covers Wheatland executives for losses stemming from claims for their wrongful acts:

> The Insurer will pay on behalf of the Insured Persons, Loss for which the Insured Persons are not indemnified by the Financial Institution and for which the Insured

- 7 -

> Persons are legally obligated to pay by reason of Claims
> first made during the Policy Period or the Extended
> Reporting Period, if elected, against the Insured Persons
> for Wrongful Acts.

(D&O Policy at 2.)[4] We previously held that the FDIC has an interest in the proceeds of this coverage in two respects: (1) it has an interest in this coverage as the tort claimant in Spangler, and (2) it could be required to indemnify the Spangler defendants if coverage is unavailable under the D&O Policy. See OneBeacon, 883 F.Supp.2d at 763-64. We described the latter risk as "negligible," id. at 763, and OneBeacon's proposed complaint contains allegations indicating that the possibility that the FDIC would ever indemnify the Spangler defendants is truly far-fetched. (See Proposed Compl. ¶ 25 (alleging that Wheatland's deposit liability exceeds receivership assets); ¶ 26 (alleging that the Spangler defendants have not filed proofs of claim with the FDIC for indemnification, and that the deadline to do so has expired).) In light of these allegations, which we accept as true at this stage of the case, we conclude that the FDIC's hypothetical indemnification liability is no impediment to OneBeacon's amended claims. Insofar as our earlier opinion could be read to suggest that *any* hypothetical interest of the FDIC in an asset is sufficient to trigger § 1821(j), we abandon it.

---

[4] Wheatland itself is an insured under separate coverages, but those coverages are not relevant to this case.

- 8 -

The FDIC's interest in the D&O Policy as the tort claimant in _Spangler_ _is_ real, and the question is whether the amended complaint would "affect" that interest in the relevant sense. First, it is apparent that the FDIC does not have any interest in the "Defense Costs" that are the subject of OneBeacon's amended complaint. (<u>See</u> D&O Policy at 7-8.) That issue is strictly a matter between OneBeacon and the _Spangler_ defendants, and granting the relief that OneBeacon has requested will not affect the FDIC's rights in the D&O Policy. It is true that OneBeacon's obligation to advance defense costs and its duty to indemnify any eventual judgment in _Spangler_ are intertwined. The core issue underlying both duties is the same: does the D&O Policy cover the defendants' "Loss[es]" in _Spangler_? (<u>See</u> D&O Policy at 2; <u>see also</u> <u>id.</u> at 9 (defining "Loss" to include "Defense Costs").) OneBeacon contends that it does not, citing the policy's "Loan Loss Carveout" and "Insured v. Insured" provisions. (<u>See</u> Proposed Compl. ¶¶ 35-47.) If we conclude that OneBeacon is correct, then it may stop advancing defense costs and recoup payments that it has already made. That same conclusion, _if it bound the FDIC_, would also mean that OneBeacon was off the hook for any judgment or settlement that the FDIC might obtain in _Spangler_. But the parties all agree that the FDIC would _not_ be bound because it is not a party to OneBeacon's amended claims. (<u>See</u> OneBeacon's Mem. at 4; FDIC's Resp. at 12; Third-Party Defs.' Resp. at 8.) It would be free to argue later that, contrary to a decision in this case adverse to the third-

party defendants, the D&O Policy covers losses stemming from the misconduct alleged in Spangler. See, e.g., Casualty Indem. Exchange v. Village of Crete, 731 F.2d 457, 461-62 (7th Cir. 1984) (noting that a nonparty with an interest in the parties' coverage dispute could later obtain a different result in a different court). The FDIC and the third-party defendants raise several practical and procedural objections to proceeding with OneBeacon's claims in the FDIC's absence. (See FDIC's Resp. at 10-15; Third Party Defs.' Resp. at 4-11; see also infra.) These objections are distinct from the issue of our subject matter jurisdiction under § 1821(j). Indeed, the FDIC essentially concedes that § 1821(j) does not bar OneBeacon's amended complaint. (See FDIC's Resp. at 14-15 (arguing only that if OneBeacon later attempts to use a ruling in this case against the FDIC, then § 1821(j) and § 1821(d)(13)(D) would apply).) We conclude that OneBeacon's amended claims do not "restrain or affect" the FDIC's interests in the D&O Policy, and therefore they are not barred by § 1821(j).

## C.   Section 1821(d)(13)(D)

In our earlier decision, we held that OneBeacon's claims were also barred by 12 U.S.C. § 1821(d)(13)(D). See OneBeacon, 883 F.Supp.2d at 766-67. Section 1821(d)(13)(D) ("Limitation on judicial review") provides,

> Except as otherwise provided in this subsection, no court shall have jurisdiction over —
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the

assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). This provision requires parties to exhaust their administrative remedies under FIRREA before bringing a "claim" or "action" against the FDIC in state or federal court. See Village of Oakwood v. State Bank and Trust Co., 539 F.3d 373, 385-86 (6th Cir. 2008) (collecting cases). We previously held that OneBeacon's claims constituted an "action seeking a determination of rights with respect to" Wheatland's assets, namely the Bond and the D&O Policy. See OneBeacon, 883 F.Supp.2d at 766-67. In doing so, we rejected OneBeacon's attempts to distinguish among the various coverages available under the D&O Policy. Id. at 767. We concede that that reasoning would require dismissal for failure to exhaust administrative remedies if applied to OneBeacon's amended complaint. However, OneBeacon's proposed claims — limited to its obligation to pay defense costs to "Insured Persons" under insuring agreement A — were not before us. It is no longer asking us to rescind the D&O Policy (in whole or in part), nor is it asking us to declare that the policy does not cover the defendants' losses in the event that the FDIC prevails in Spangler. As we stated before, the FDIC does not have an interest in the third-party defendants' asserted right to defense-costs coverage. So, the proceeds of that

coverage are not a receivership asset, even if they arise from an insurance policy that includes other coverages in which the FDIC does have an interest. Whether or not OneBeacon's analogy to bankruptcy law is apt, cf. id. at 767, it makes practical sense to distinguish between different coverages in the same policy. It would be a "pointless bureaucratic exercise" to submit an administrative claim to the FDIC concerning a dispute that does not involve or affect the FDIC. American Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1143 (D.C. Cir. 2011). We conclude that OneBeacon's amended complaint is not barred by § 1821(d)(13)(D)(i).

**D.    Whether We Should Nevertheless Decline to Hear OneBeacon's Amended Claims**

The FDIC argues that we should exercise our discretion under the Declaratory Judgment Act to dismiss OneBeacon's claims for declaratory relief due to the possibility of future litigation if the FDIC prevails in Spangler. (See FDIC's Resp. at 10-14); see also Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1133 (7th Cir. 2012) ("The Declaratory Judgment Act by its own terms grants district courts discretion in determining whether to entertain such an action."). However, the FDIC does not address OneBeacon's claim for reimbursement of the defense costs that it has already paid to the Spangler defendants. (See Proposed Compl. ¶¶ 48-53 ("Claim for Reimbrusement.").) This claim seeks nondeclaratory relief, and OneBeacon argues that we have a "virtually unflagging obligation" to exercise jurisdiction over it.

- 12 -

R.R. Street & Co., Inc. v. Vulcan Materials Co., 569 F.3d 711, 715
(7th Cir. 2009) (quoting Colorado River Water Conservation Dist. v.
United States, 424 U.S. 800, 817 (1976)). If a complaint includes
declaratory and non-declaratory claims, we must exercise
jurisdiction over the non-declaratory claims if they are
"independent." See id. at 716-13. "A claim for non-declaratory
relief is 'independent' of the declaratory claim if: 1) it has its
own federal subject-matter-jurisdictional basis, and 2) its
viability is not wholly dependent upon the success of the
declaratory claim." Id. at 716 n.6. OneBeacon's proposed
complaint alleges that the parties are diverse and that more than
$75,000 is in controversy. (See Proposed Compl. ¶¶ 2-13.)[5] In
support of its argument that the second prong is also satisfied,
OneBeacon relies on United Nat. Ins. Co. v. R&D Latex Corp., 242
F.3d 1102, 1113 (9th Cir. 2001). The R&D Latex court concluded
that an insurance company's claim for reimbursement of defense
costs was "independent" of its claim for declaratory relief
concerning future defense obligations. Id. at 1113-14. But the
court applied California (not Illinois) law and its conclusion was
tentative. See id. at 1114 ("[I]t appears that under California
law, Travelers' request for reimbursement is independent of the

_____

[5] OneBeacon's amended complaint does not specifically allege that its
defense costs to date in Spangler exceed $75,000. (See Proposed Compl. ¶ 13
(alleging only that the amount in controversy exceeds $75,000, which may include
future obligations).) However, it is highly likely that they do exceed that
amount: Spangler is now over three years old and fact discovery only recently
closed.

- 13 -

request for declaratory relief."). Moreover, OneBeacon raised this argument for the first time in its reply brief — appropriately, because it was responding to an argument that the FDIC raised in its own memorandum. But the fact remains that the issue is undeveloped.

It is unnecessary to resolve this question because, even assuming that we have discretion to dismiss OneBeacon's claims, we decline to exercise it. See Northfield Ins., 701 F.3d at 1134 ("[D]istrict courts have wide discretion in adjudicating declaratory judgment actions and motions to stay proceedings."). First, the procedural problems that the FDIC raises may never come to pass. If the defendants in Spangler prevail, then there will be no need for further litigation between the FDIC and OneBeacon. By contrast, OneBeacon's claims for declaratory relief and reimbursement are ripe for adjudication. It is *currently* advancing defense costs to the Spangler defendants. Under the circumstances, we think it would be unfair to require OneBeacon to wait and run the risk that the Spangler defendants cannot satisfy a judgment for reimbursement when the case is over. The FDIC suggests that this outcome is dictated by the D&O Policy itself, which requires OneBeacon to advance defense costs upon request, subject to reimbursement. (See D&O Policy at 20 ("The Insured shall repay any advanced Defense Costs to the Insurer in the event it is established that the Insurer has no liability under this Policy for

- 14 -

such Defense Costs.").) But the policy does not say *when* OneBeacon
may seek a determination that it is not liable for defense costs,
and declaratory-judgment actions are routinely filed in insurance-
coverage disputes. Second, the FDIC shares responsibility for any
inefficiencies that may come to pass. It has chosen to exercise
its broad powers under FIRREA to stymie OneBeacon's attempts to
resolve all coverage disputes in the same lawsuit.[6] That is its
prerogative, but it cannot have it both ways. It cannot decline to
participate in this lawsuit, and then fault OneBeacon for creating
the possibility of piecemeal litigation. So, even assuming that we
have discretion under the Declaratory Judgment Act to dismiss
OneBeacon's claims, we will not do so.

**E.   Federal Rule of Civil Procedure 19**

The third-party defendants (but not the FDIC) argue that we
should refuse to permit OneBeacon to amend its claims because the
FDIC is an indispensable party. We will assume that the FDIC is a
"required" party under Rule 19(a), and we previously held that it
cannot be compelled to join this lawsuit. Therefore, we must
"determine whether, in equity and good conscience, the action
should proceed among the existing parties or should be dismissed."

---

[6]   As OneBeacon notes, it appears that the FDIC has chosen to participate
in similar cases without raising objections under § 1821(j) and § 1821(d)(13)(D).
(See OneBeacon's Mem. at 6 n.4 (collecting cases).) We have rejected OneBeacon's
argument that the FDIC is judicially estopped from raising those objections in
this case. See OneBeacon, 883 F.Supp.2d at 764 n.8. But we think that the FDIC's
past practice is a relevant consideration in deciding whether to exercise our
discretion under the Declaratory Judgment Act.

Fed. R. Civ. P. 19(b).  Rule 19(b) lists factors that we must consider when deciding whether to dismiss for nonjoinder:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  "[T]he rule does not state what weight is to be given to each factor.  This must be determined by the court in terms of the facts of a given case and in light of the governing equity-and-good-conscience test."  7 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1608 (3d Ed.).

As OneBeacon points out, several courts in this district have held that tort claimants are not indispensable parties to insurance coverage disputes.  See Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co., 173 F.R.D. 507, 508-09 (N.D. Ill. 1997); Providence Hosp. v. Rollins Burdick Hunter of Illinois, Inc., No. 92 C 8096, 1993 WL 278552, *2 (N.D. Ill. July 20, 1993); Sliwa v. Hunt, No. 92 C 6215, 1992 WL 346425, *1-2 (N.D. Ill. Nov. 18, 1992); see also Wright & Miller, supra, § 1619 (opining it is

- 16 -

"unlikely" that courts will consider the tort claimant an indispensable party to an insurance coverage dispute between the insured and his insurer). Consistent with these cases, we conclude that the FDIC is not an indispensable party. The third-party defendants acknowledge that the FDIC would not be bound by a judgment on OneBeacon's amended complaint, but nevertheless argue that such a judgment would be "highly prejudicial." (Third Party Def.'s Resp. at 8.) This argument is undeveloped, and the only case they cite actually undercuts their position. See Casualty Indem., 731 F.2d at 461-62. In Causalty Indemnity, the defendant was named as a co-insured under an insurance policy issued by the plaintiff insurance company to the defendant's contractor. Id. at 458. The defendant was sued for wrongful death in connection with the construction project and tendered its defense to the plaintiff. Id. The plaintiff refused, and sued for a declaratory judgment that the defendant had violated its policy's notice provision. Id. at 458-59. The district court granted summary judgment to the plaintiff on the notice question, and the Seventh Circuit affirmed. Id. at 460. The defendant separately argued that the district court should have dismissed the case for failing to join the insured's general liability insurer. Id. at 461. The Casualty Indemnity Court acknowledged the possibility of future litigation between the plaintiff and the general liability insurer, but concluded that the risk was insufficient to disturb the judgment:

> Admittedly, there is some possibility that the Hartford may try to relitigate this matter with CIE, and in that case, there would already be a judgment on the books declaring that the village's notice was too late. But a second court would be able to decide otherwise, particularly on a better-developed record, and the possible effects of the judgment here on such possible future litigation do not warrant setting aside this judgment. We are unwilling to set aside this judgment based on unsupported speculation about uncertain and remote effects on the Hartford's interests.

Id. at 462. Just so here. In addition, the FDIC's interests are aligned with the interests of the third-party defendants. See, e.g., 401 North Wabash Venture, LLC v. Ascher Bros. Co., Inc., No. 10 C 1962, 2010 WL 3699982, *7 (N.D. Ill. Sept. 13, 2010) ("The Court agrees that given this alignment of interests, there is no good reason to believe that the absent parties would be prejudiced by allowing Wabash's claim to proceed without them."). In fact, the third-party defendants have an even stronger incentive to prevail on the coverage question because they face losses in the Spangler lawsuit (in the form of defense costs) even if they ultimately prevail on the merits. In sum, we conclude that the parties (including the FDIC) will not be prejudiced by proceeding with this lawsuit in the FDIC's absence. See Fed. R. Civ. P. 19(b)(1).

The other Rule 19(b) factors also indicate that dismissal is not warranted. If we find for OneBeacon, our judgment will be confined to OneBeacon's defense obligations, only. See Fed. R. Civ. P. 19(b)(2)(A) & (B). And that judgment would be adequate to

resolve the narrow question presented by OneBeacon's amended
complaint: whether it must continue to advance defense costs to the
Spangler defendants and whether it is entitled to recoup what it
has already paid. See Fed. R. Civ. P. 19(b)(3). For the reasons
discussed earlier in this opinion, the FDIC's absence is irrelevant
to that particular claim. Finally, the third-party defendants
argue that OneBeacon has an adequate alternative remedy because it
can pursue its claims after the FDIC initiates coverage litigation
(or else after the Spangler defendants prevail). See Fed. R. Civ.
P. 19(b)(4). We noted in our earlier opinion that OneBeacon has
the option under Illinois law to defend under a reservation of
rights in lieu of seeking a declaratory judgment. See OneBeacon,
883 F.Supp.2d at 763-64. But this alternative merely preserves
OneBeacon's coverage defenses, see American Safety Cas. Ins. Co. v.
City of Waukegan, Ill., 678 F.3d 475, 485 (7th Cir. 2012), it does
not allow it to stop advancing defense costs. Needless to say,
OneBeacon would prefer to retain the policy proceeds than attempt
to obtain and execute a judgment to get those proceeds back. We do
not believe that OneBeacon should be required to forego a superior
remedy because the FDIC has invoked its interest in the D&O Policy,
but declined to participate in litigation to determine whether that
policy applies.

**F.    The Procedural Posture of OneBeacon's Amended Complaint**

- 19 -

We will grant OneBeacon leave to amend its original pleading consistent with the draft attached as Ex. A to its motion. It is apparent, however, that it is not a third-party complaint: OneBeacon does not allege that the third-party defendants are liable for the damages that the FDIC is seeking in its complaint with respect to the Bond. See Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."). Indeed, OneBeacon's original third-party complaint was also deficient in this respect. Its original pleading could have been construed as a counterclaim joining additional parties. See, e.g., Comtel Technologies, Inc. v. Paul H. Schwendener, Inc., No. 04 C 3879, 2005 WL 433327, *13 (N.D. Ill. Feb. 22, 2005) (treating an improper third-party complaint as a counterclaim). But that is no longer an option because the FDIC is not a party to OneBeacon's amended claims. Accordingly, OneBeacon should file an ordinary complaint directly against the D&O defendants, and we will sever that complaint pursuant to Rule 21. Fed. R. Civ. P. 21 ("Misjoinder and Nonjoinder of Parties") ("The court may also sever any claim against a party."). OneBeacon's claims against the D&O defendants are clearly "discrete and separate" from the FDIC's claim against OneBeacon with respect to the Bond. Gaffney v. Riverboat Services of Indiana, Inc., 451 F.3d 424, 442 (7th Cir. 2006) ("[A] district

- 20 -

court may sever claims under Rule 21, creating two separate
proceedings, so long as the two claims are discrete and separate.")
(citation and internal quotation marks omitted).

## CONCLUSION

OneBeacon's motion for leave to amend its complaint and for
limited reconsideration [70] is granted. OneBeacon may file its
amended complaint by March 15, 2013. The third-party defendants
shall answer or otherwise plead to the amended complaint by April
5, 2013. OneBeacon's amended claims against the D&O defendants are
severed from the FDIC's claim against OneBeacon. A status hearing
is set for April 10, 2013 at 10:30 a.m. to discuss setting a
discovery schedule with respect to the D&O claims. The FDIC may,
but is not required to, attend that hearing.


DATE:          March 12, 2013


ENTER:         _____
               John F. Grady, United States District Judge