**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **THE FEDERAL DEPOSIT INSURANCE** | § | |
| **CORPORATION, as Receiver for** | § | |
| **WHEATLAND BANK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **C.A. NO. 1:11-CV-03972** |
| | § | |
| **ONEBEACON MIDWEST INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT ONEBEACON MIDWEST INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**MICHAEL KEELEY**
Texas Bar No. 11157800
Admitted Pro Hac Vice
michael.keeley@strasburger.com
**TONI SCOTT REED**
Texas Bar No. 07788376
Admitted Pro Hac Vice
toni.reed@strasburger.com
**JUSTIN P. MELKUS**
Texas Bar No. 21041469
Admitted Pro Hac Vice
justin.melkus@strasburger.com
**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, TX 75202
(214) 651-4300
(214) 651-4303 – fax

**MICHAEL P. TONE**
michael.tone@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER, LLP**
55 West Monroe Street, Suite 3800
Chicago, IL 60603
(312) 704-0550

**COUNSEL FOR DEFENDANT
ONEBEACON MIDWEST INSURANCE COMPANY**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   THE FACTS MATERIAL TO ONEBEACON'S MOTION FOR SUMMARY
      JUDGMENT.......................................................................................................... 2

III.  LEGAL STANDARDS ........................................................................................... 4

IV.   ONEBEACON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE
      BANK MADE MATERIAL MISREPRESENTATIONS IN ITS
      APPLICATION FOR THE BOND THAT WERE RELIED UPON BY
      ONEBEACON TO ITS DETRIMENT ................................................................... 4

      A.    Pendolino Loan ........................................................................................... 7

      B.    Village Walk Loan ...................................................................................... 8

      C.    The Bond Application.................................................................................. 9

V.    ONEBEACON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
      COVERAGE FOR SYKES AND SUNDRY TERMINATED UNDER THE
      BOND AT THE MOMENT THE BANK LEARNED OF THEIR DISHONEST
      CONDUCT IN CONNECTION WITH THE PENDOLINO LOAN, LONG
      BEFORE THE VILLAGE WALK LOAN WAS MADE .......................................... 13

VI.   ONEBEACON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE
      FDIC ADMITS THERE WAS NO COLLUSION BETWEEN SYKES
      AND/OR SUNDRY AND VILLAGE WALK......................................................... 20

VII.  SUMMARY ........................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adair State Bank v. Am. Cas. Co. Reading, Pa.,*
949 F.2d 1067 (10th Cir. 1991) ................................................................. 14

*Alcona Cnty. v. Mich. Mun. League*,
No. 292115, 2011 Mich. App. LEXIS 473 (Ct. App. Mich. Mar. 10, 2011)............... 14

*American Service Ins. Co. v. United Automobile Insurance Company*,
947 N.E.2d 382 (Ill. App. 2011) ................................................................. 12

*Bankers Trust Co. v. Old Republic Ins. Co.,*
No. 87 C. 7853, 1993 U.S. Dist. LEXIS 11065 (N.D. Ill. Aug. 9, 1993) ................ 5, 11

*Bankinsure, Inc. v. Peoples Bank of the South*,
866 F. Supp. 2d 577 (S.D. Miss. 2012) .................................................... 21

*Boston Sec., Inc. v. United Bonding Ins. Co.*,
441 F.2d 1302 (8th Cir. 1971) ................................................................. 16

*C. Douglas Wilson & Co. v. INA*,
590 F.2d 1275 (4th Cir. 1979) ............................................................. 14, 15

*Capital Bank & Trust Co. v. Gulf Ins. Co.*,
91 A.D.3d 1251 (N.Y. App. Div. 2012) .................................................... 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1982) ................................................................................. 4

*Cent. Progressive Bank v. Fireman's Fund Ins. Co.*,
658 F.2d 377 (5th Cir. 1981) ................................................................. 16

*City State Bank v. United States Fidelity & Guaranty Co.*,
778 F.2d 1103 (5th Cir. 1985) ............................................................. 14, 15

*Community Sav. Bank v. Federal Ins. Co.*,
960 F. Supp. 16 (D. Conn. 1997) ..................................................... 13, 16, 17

*Cooper Sportswear Mfg. Co. v. Hartford Cas. Co.*,
818 F. Supp. 721 (D.N.J. 1993) ............................................................. 15

*Crum & Forster Managers Corp. v. RTC*,
620 N.E.2d 1073 (Ill. 1993) ................................................................. 20

*Ellenberg v. Certain Underwriters at Lloyd's*,
187 B.R. 785 (Bankr. N.D. Ga. 1995) .................................................... 15

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

*Fidelity & Casualty Co. v. Central Bank of Houston*,
    672 S.W.2d 641 (Tex. App. 1984) ...................................................................... 14, 16

*First Nat. Bank of Sikeston v. Transamerica Ins. Co.*,
    514 F.2d 981 (8th Cir. 1975) ............................................................................... 14, 16

*First Nat'l Bank of Louisville v. Lustig*,
    961 F.2d 1162 (5th Cir. 1992) .................................................................................. 14

*First Sec. Sav. v. Kan. Bankers Sur. Co.*,
    849 F.2d 345 (8th Cir. 1988) ................................................................................... 14

*Garde v. Country Life Ins. Co.*,
    498 N.E.2d 302 (Ill. App. Ct. 1986) ..................................................................... 6, 12

*Garde v. Inter-Ocean Ins. Co.*,
    842 F.2d 175 (7th Cir. 1988) ............................................................................ 5, 6, 11

*Hudson United Bank v. Progressive Cas. Ins. Co.*,
    284 F. Supp. 2d 249 (E.D. Pa. 2003) ....................................................................... 21

*Kan. Bankers Sur. Co. v. Farmers State Bank*,
    408 F. Supp. 2d 751 (S.D. Iowa 2005) ..................................................................... 21

*Kinzer v. Fidelity & Deposit Co. of Maryland*,
    652 N.E.2d 20 (Ill. Ct. App. 1995) ..................................................................... 13, 17

*Methodist Medical Ctr. v. American Medical Ctr. of Ill.*,
    38 F.3d 316 (7th Cir. 1994) ......................................................................... 4, 5, 6, 12

*Miami Nat'l Bank v. Penn. Ins. Co.*,
    314 F. Supp. 858 (S.D. Fla. 1970) .......................................................................... 16

*National Fidelity Life Ins. Co. v. Karaganis*,
    811 F.2d 357 (7th Cir. 1987) ..................................................................................... 4

*Nat'l Bank of Andover v. Kan. Bankers Sur. Co.*,
    225 P.3d 707 (Kan. 2010) ....................................................................................... 21

*Newhard, Cook & Co. v. INA*,
    929 F.2d 1355 (8th Cir. 1991) ............................................................................ 14, 15

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*,
    607 N.E.2d 1204 (Ill. 1992) ...................................................................................... 4

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

*Oxford Bank & Trust v. Hartford Accident & Indem. Co.*,
  698 N.E.2d 204 (Ill. App. Ct. 1998) .......................................................... 21

*Peoples State Bank v. American Casualty Co.*,
  818 F. Supp. 1073 (E.D. Mich. 1993) ................................................... 21, 22

*Progressive Cas. Ins. Co. v. First Bank*,
  828 F. Supp. 473 (S.D. Tex. 1993) ..................................................... 21, 22

*Ritchie Grocer Co. v. Aetna Cas. & Sur. Co.*,
  426 F.2d 499 (8th Cir. 1970) ................................................................... 16

*RTC v. Aetna Cas. & Sur. Co.*,
  873 F. Supp. 1386 (D. Ariz. 1994) ..................................................... 14, 16

*Standard Chartered Bank v. Milus*,
  826 F. Supp. 310 (D. Ariz. 1990) ....................................................... 21, 22

*TIG Ins. Co. v. Reliable Research Co.*,
  334 F.3d 630 (7th Cir. 2003) ....................................................... 4, 6, 7, 11

*Troy State Bank v. BancInsure, Inc.*,
  No. 92115, 2005 Kan. App. Unpub. LEXIS 120, *12-13
  (Kan. Ct. App. April 8, 2005) ......................................................... 14, 15, 16

## STATUTES

215 ILL. COMP. STAT. 5/154 (2012) ...................................................... 4, 5

## RULES

FED. R. CIV. P. 56(c) ................................................................................ 4

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **THE FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for WHEATLAND BANK,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **C.A. NO. 1:11-CV-03972** |
| **ONEBEACON MIDWEST INSURANCE COMPANY,** | § § § | |
| **Defendant.** | § § | |

**DEFENDANT ONEBEACON MIDWEST INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant OneBeacon Midwest Insurance Company ("OneBeacon") files this its Memorandum in Support of its Motion for Summary Judgment, and would respectfully show the Court as follows:

**I.
INTRODUCTION**

This lawsuit involves an insurance coverage dispute. Plaintiff, the Federal Deposit Insurance Corporation, as Receiver for Wheatland Bank (the "FDIC"), and Wheatland Bank (the "Bank") before it, pursued a claim under a Financial Institution Bond seeking recovery for losses the Bank allegedly incurred as a result of the dishonest actions of the President and Chief Executive Officer of the Bank, Michael Sykes ("Sykes"), and one of the Bank's directors, Art Sundry ("Sundry"), in making two loans: a $693,750 loan to Anthony and Stephanie Pendolino (the "Pendolino Loan"), and a $5.4 Million loan to Village Walk (the "Village Walk Loan"). There is no coverage

for the FDIC's claims and OneBeacon is entitled to summary judgment for three reasons. First and foremost, there can be no coverage under the Bond because Sykes, who completed the application for the Bond on behalf of the Bank, failed to disclose on the application those dishonest acts the FDIC admits Sykes and Sundry committed prior to the inception of the Bond. Therefore, the Bank made a material misrepresentation in its application for the Bond, giving rise to a complete defense to coverage under the Bond. Second, the Bank was aware of the dishonesty of Sykes and Sundry at the time they made the Pendolino Loan in March 2007, and thus coverage for Sykes and Sundry under the Bond terminated at that time. As a result, there can be no coverage for any loss the Bank incurred in connection with the Village Walk Loan, which was made nine months after the Pendolino Loan.[1] Finally, the FDIC has admitted that neither Sykes nor Sundry acted in collusion with Village Walk as borrower. This admission is fatal to the FDIC's claim because collusion with the borrower is a required element of coverage under the Bond.

## II.
## THE FACTS MATERIAL TO ONEBEACON'S MOTION FOR SUMMARY JUDGMENT

Prior to the formation of the Bank, Sykes and Sundry owned and operated Mezzanine Finance LLC, which was in the business of making second position loans to borrowers that needed short term financing, in addition to their primary existing loans. Statement of Material Facts (referred to as "SMF") 13.

Sykes and Sundry were organizers of and shareholders and directors in the Bank

---

[1] Although the FDIC initially sought recovery in this lawsuit for the Bank's loss from the Pendolino Loan, it subsequently withdrew its claim for any losses on that loan, apparently because it realized that any potential recovery for the small loss on the Pendolino Loan was outweighed by the fact that proving dishonesty in connection with that loan gave rise to termination of coverage for Sykes and Sundry for the later and larger Village Walk Loan.

which began operations in February 2007.  Sykes was also President and CEO of the Bank.  SMF 5-10.

Sykes approved the Pendolino Loan for the Bank in March 2007, because it was within his lending authority.  Sykes and Sundry both later voted to ratify approval of the Pendolino loan when it was presented to the Bank Loan Committee.  At the same time the Bank made its loan to the Pendolinos, Mezzanine made a second position loan to the Pendolinos.  The day before both loans were closed and funded, Sykes disclosed the Mezzanine loan and the ownership interest he and Sundry had in Mezzanine to Len Eichas, Vice President and director for the Bank.  SMF 18-22.

Before the Bank opened, Mezzanine made a second position loan to Village Walk in November 2006.  The borrower was not in a position to repay the loan in late 2007 and inquired whether the Bank would make a loan for its first and second position loans.  Sykes prepared an analysis and concluded the loan was a good deal for the Bank.  Sykes presented a Loan Approval Request to the Bank Loan Committee on December 12, 2007.  The Loan Approval Request and the meeting minutes for the Loan Committee included discussion of the fact that loan proceeds from the Bank loan would pay off Mezzanine, which was owned by Sykes and Sundry.  Sykes and Sundry voted in favor of the Bank's loan.  SMF 28-33.

The Bank submitted notice of a claim and then presented its sworn Proof of Loss in April 2010, alleging loan losses for the Pendolino loan and Village Walk loan resulting from dishonest and fraudulent conduct of Sykes and Sundry.  SMF 14, 17.  On April 23, 2010, the Bank was closed by its regulators, the FDIC was appointed receiver, and the

FDIC took over the bond claim. SMF 15-16. The FDIC later filed the present suit, alleging breach of contract.

## III.
## LEGAL STANDARDS

Summary judgment is appropriate where the record discloses that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper if the pleadings, discovery, and affidavits show there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1982).

Under Illinois law, insurance policies are to be interpreted in the same manner as any other contract. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir. 1987). Interpretation of policy terms is a question of law for the Court. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). Unambiguous terms must be given their plain and ordinary meaning. *Id.*

## IV.
## ONEBEACON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE BANK MADE MATERIAL MISREPRESENTATIONS IN ITS APPLICATION FOR THE BOND THAT WERE RELIED UPON BY ONEBEACON TO ITS DETRIMENT

Under Illinois law, rescission of an insurance policy is a complete defense and bar to a claim for coverage where the insured's application for the policy contained a misrepresentation that either was intentionally deceptive or material to the risk. *TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 635 (7th Cir. 2003); *Methodist Medical Ctr. v. American Medical Ctr. of Ill.*, 38 F.3d 316, 319 & n.6 (7th Cir. 1994); 215 ILL. COMP. STAT. 5/154 (2012). By Illinois statute, a misrepresentation or false warranty made by an insured avoids the policy if: (1) such misrepresentation or false warranty was stated

in the policy or in the written application for the policy,[2] and (2) the misrepresentation or false warranty was made with actual intent to deceive **or** materially affected either the acceptance of the risk or the hazard assumed by the insurer.  215 ILL. COMP. STAT. 5/154.  Illinois law does not require a "knowing" or intentional misrepresentation; rather, a material misrepresentation will avoid coverage, even if it is made through mistake or in good faith.  *Methodist Medical Ctr.*, 38 F.3d at 320.  A misrepresentation is material if it "affects either the acceptance of the risk or the hazard assumed by the company." 215 ILL. COMP. STAT. 5/154; *Garde v. Inter-Ocean Ins. Co.*, 842 F.2d 175, 176 (7th Cir. 1988).  If an insured fails to answer questions in an objectively reasonable manner, and its unreasonable answers materially affect the hazards the carrier assumed or the insurer's willingness to accept the risks of insurance at all, then the insurer can avoid its obligations under the policy pursuant to that statute.  *Bankers Trust Co. v. Old Republic Ins. Co.,* No. 87 C. 7853, 1993 U.S. Dist. LEXIS 11065, at *16-20 (N.D. Ill. Aug. 9, 1993).

Materiality under Illinois law has been described in terms of whether  "reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Methodist Medical Ctr.*, 38 F.3d at 320.  Testimony from an insurance company's underwriter may be used to establish the materiality of the omitted information.  *Id.* Misrepresentations are material as a matter of law where the risk cannot reasonably be assessed or the policy's conditions would have been altered by the insurer.  *Garde v.*

---

[2] Wheatland agreed pursuant to the terms of the Bond Application that "[i]f a bond or policy is issued, the insurer relied upon this application . . . in issuing each such bond," and that the "application and its attachments shall be the basis of a contract should a bond or policy providing the requested coverage be issued and shall be deemed to be attached to and shall form a part of any such bond or policy." Depo. Ex. 88 (Bond Application).

*Inter-Ocean Ins. Co.*, 842 F.2d at 178. Failure to disclose information on an application for insurance constitutes a material misrepresentation, as a matter of law, when that omission prevents the insurer from adequately assessing the risk involved. *TIG Ins*, 334 F.3d at 635; *Methodist Medical Ctr.*, 38 F.3d at 320. The question of materiality is appropriate for summary judgment if the misrepresentation is of such a nature that all would agree that it is material. *Garde v. Country Life Ins. Co.*, 498 N.E.2d 302, 308 (Ill. App. Ct. 1986).

In *TIG Insurance Company,* the Seventh Circuit reviewed the trial court's finding that an insurer was entitled to rescission as a matter of law on the basis of the insured's material misrepresentations in the policy application. The insurer issued an errors and omissions policy to a title insurance and escrow issuing agent. The policy application inquired about claims or suits filed against the title company for the previous ten years. The title company failed to disclose in either its initial or renewal applications that it had previously been enjoined from preparing "deeds or other legal documents relating to the transfer of real estate," and from "the unauthorized practice of law." When the title company was later sued for violating that undisclosed injunction, it sought coverage under its E&O policy. Its insurance carrier sought rescission based on the title company's material misrepresentations in the policy applications, specifically the failure to disclose the existing injunction. The Seventh Circuit upheld the district court's finding that the title company's misrepresentations were material as a matter of law: "we agree with the district court that a court order permanently enjoining a title company from the unauthorized practice of law would be a 'red flag' to any reasonably careful and intelligent underwriter of Title and Escrow Professional Liability Insurance." 334 F.3d at

637. The omission was particularly relevant, and material as a matter of law, because the fact omitted was what gave rise to the later claim at issue.

The *TIG Insurance Company* decision is particularly instructive in the present case. As in *TIG Insurance Company*, the facts here make it clear that the elements of misrepresentation and materiality are both present, and established as a matter of law. Consistent with the approach under Illinois law, no reasonably careful and intelligent persons would disagree that failure to disclose the precise facts and circumstances of the loans that later would become the subject of the claim in a Proof of Loss was a material misrepresentation that affected the hazard undertaken by OneBeacon.

## A.    Pendolino Loan

The FDIC has judicially admitted that Sykes and Sundry committed dishonest acts in connection with the Pendolino (also referred to in some documents as Bellony) Loan in March 2007.[3]  SMF 27; Original Complaint (Dkt. 1).  The Original Complaint filed in this case alleged that Sykes and Sundry fraudulently induced the Bank to make improper loans by making material misrepresentations and omissions about critical aspects of the loan, and that they engaged in conflicts of interest and intentional wrongdoing to benefit themselves at the expense of the Bank.  SMF 27; Original Complaint, ¶2.  The FDIC specifically asserted that "Sykes and Sundry committed dishonest and fraudulent acts with respect to two different loans that caused a direct financial loss to Wheatland." SMF 27; Original Complaint, ¶15.  The FDIC asserted that Sykes "misused his position at Wheatland and employed fraudulent and dishonest acts

---

[3] Interestingly, the FDIC eventually withdrew its claim for the small loss the Bank had incurred in connection with the Pendolino Loan, apparently recognizing that by admitting that Sykes and Sundry acted dishonestly in connection with the Pendolino Loan, they were admitting that coverage for Sykes and Sundry terminated under the Bond and thus there could be no coverage for any loss incurred in connection with the later and larger Village Walk Loan.  *See* discussion in Section V, *infra*.

to cause Wheatland to make a loan" for the Pendolino transaction.  SMF 27; Original Complaint, ¶39.  The FDIC asserted that the loan write up Sykes prepared about the Pendolino loan was materially misleading and concealed important facts, and that he violated the Bank's Conflict of Interest Policy.  SMF 27; Original Complaint, ¶¶44, 46. Finally, the FDIC asserted that the Bank would not have made the loan but for the dishonest and fraudulent acts.  SMF 27; Original Complaint, ¶49.  These statements all relate to the March 2007 actions by Sykes and Sundry, and each constitutes a judicial admission by the FDIC.

## B.    Village Walk Loan

The FDIC has admitted that Sykes made dishonest and fraudulent statements in the Loan Approval Request for the Village Walk Loan which was presented to the Loan Committee on December 12, 2007.  SMF 37; Amended Complaint (Dkt. 118), ¶26. Sykes had the Loan Approval Request form drafted in early December 2007, and he presented it to the Loan Committee for final approval on December 12, 2007.  SMF 36-37; Amended Complaint, ¶26.  The FDIC and Mark Spangler ("Spangler"), who was the Chairman of the Board for the Bank and a member of the Bank's Loan Committee in December 2007, testified that Sykes included dishonest and fraudulent statements and omissions in the Loan Approval Request and the meeting relating to the existence and value of collateral, lack of compliance with Bank policy, status of the Mezzanine loan, and honesty or trustworthiness of the borrower.  SMF 36-37.  These misrepresentations and omissions were made in the written Loan Approval Request presented on December 12, 2007, and discussed with the Loan Committee on that date.  SMF 36-40.

C.     **The Bond Application**

Sykes, in his role as President of Wheatland, was required to sign the Bond application.  SMF 54-55.  In doing so, he acted on behalf of the Bank.  SMF 54-55. Despite his knowledge of the facts associated with the Pendolino Loan, he answered the following questions "No," and he signed the Application which contained a warranty statement:

> 64.     Does any director/trustee or officer have any knowledge of any fact, circumstance or situation involving the Financial Institution, its subsidiaries, or any past or present director/trustee, officer or employee, which could reasonably be expected to give rise to a future liability or bond loss?
>
> No.
>
> 65.     Are there any claims or potential claims that have not been reported to the Insurer involving the Financial Institution, any subsidiary, or any Insured Person resulting from their activities as such?
>
> No.

SMF 56.

Sykes, as President, was required to update his responses to the Bond application through and including December 14, 2007, the date of issuance of the Bond. SMF 57-59.  However, Sykes did not disclose any facts or circumstances relating to the Pendolino loan or the Village Walk Loan. SMF 56.

The Bank submitted a sworn Proof of Loss swearing that Sykes and Sundry acted dishonestly in connection with the Pendolino Loan, as well as in connection with the Village Walk Loan.  SMF 14, 17, 26, 34.  The FDIC pursued that claim under the Bond.  It thereafter filed this lawsuit, alleging that Sykes and Sundry acted dishonestly in

connection with both loans. For purposes of this motion for summary judgment, OneBeacon does not dispute that Sykes and Sundry acted dishonestly.[4]

Significantly, Sykes gave false answers and incomplete answers to questions relating to the Pendolino Loan and the Village Walk Loan that became the subject of the Proof of Loss and the FDIC's Complaint in this lawsuit. When Sykes did not update his answers by December 14, 2007, to disclose his knowledge of the facts and circumstances of the Village Walk Loan and the alleged fraudulent and dishonest conduct already committed, he made material misrepresentations and omissions about the Village Walk Loan, which is now the subject of this suit. Sykes obviously would have known that he had voted in favor of the loan, in violation of Wheatland's Conflict of Interest Policy. He would have known that he had violated provisions of the Loan Policies and the Appraisal Policies. Taking the FDIC's allegations as true, by December 14, 2007, Sykes knew that there were facts or circumstances that could lead to a loss, and he knew that there was a potential bond claim for potential loss that had not been submitted.

In addition, when Sykes completed the Bond application, he knew that he had acted as the loan officer on a loan to the Pendolinos. He knew that he did not recuse himself from approving the Wheatland Bank loan to the Pendolinos or decline to act as the loan officer at Wheatland. He did not disclose the interest rate his separate entity was charging Bellony. He did not disclose the existence of additional debt in the Loan Approval Request. His computation of the loan to value ratio for the Wheatland Bank

---

[4] The FDIC has withdrawn its breach of contract claim on the Pendolino Loan in its First Amended Complaint. OneBeacon reserves the right to contest dishonesty at the time of trial. OneBeacon firmly denies that Sykes and Sundry had an intent to cause the Bank to sustain a loss or that they acted in collusion with anyone in connection with the Village Walk Loan.

loan to Bellony did not include the existence of a second loan. He knew that he acted as loan officer for and approved a loan for a matter where he had a conflict of interest. His answers to the Bond Application did not disclose that information either.

Accepting as true the FDIC's allegations that Sykes acted dishonestly and fraudulently with respect to both the Pendolino and Village Walk loans, Sykes knew that his conduct "could reasonably [have been] expected to give rise to a future liability or bond loss." SMF 56 (Bond Application, Question 64). Sykes nevertheless failed to disclose either set of facts and circumstances and either potential loss in the Bond Application.

As is made clear by the Illinois cases, Sykes' failure to truthfully answer questions in the Bond Application regarding two loans that resulted in losses and a Bond claim constitutes a material misrepresentation as a matter of law. Had Sykes answered "Yes" to either question regarding knowledge of facts and circumstances that could lead to a loss or unreported claims for potential loss, the Bond would not have been issued. SMF 61-63 (Ex. I, Placzek Affidavit; Ex. J, Cassady Affidavit).

The facts of this case are so extreme that they also were inherently material and independently establish OneBeacon's defense of rescission, as a matter of law. Several types of misrepresentations on insurance applications have been held material as a matter of Illinois law. By way of example, an insured's knowledge of facts giving rise to a claim, coupled with its failure to disclose that knowledge in response to a specific inquiry in the policy application about its knowledge of potential claims, were held to establish materiality as a matter of law. *Bankers Trust Co.*, 1993 U.S. Dist. LEXIS 11065, at *16-20; *see also, TIG Ins. Co.*, 334 F.3d at 635. Nondisclosure of

medical conditions and facts regarding the characteristics of insureds are routinely held to be material as a matter of law. *Garde v. Inter-Ocean Ins. Co.*, 842 F.2d at 179; *American Service Ins. Co. v. United Automobile Insurance Company*, 947 N.E.2d 382, 288-89 (Ill. Ct. App. 2011); *Methodist Medical Ctr.*, 38 F.3d at 320.

In sum, a bank ailing as a result of allegedly fraudulent (if the FDIC's allegations are to be believed) conduct of its president is no different from a life-insurance applicant ailing from a pre-existing but undisclosed heart disease. All would agree that the insured's failure to disclose the condition would—and here did—"substantially increase the chances of the event insured against . . . ." *Garde v. Country Life Ins. Co*, 498 N.E.2d at 308; *Methodist Med. Ctr.*, 38 F.3d at 321. Additionally here, undisputed testimony from the underwriters for the Bond establishes that the false and incomplete answers to the Bond Application were material and substantially increased the risk undertaken, and also that the Bond would not have been issued if the answers had been complete and truthful. SMF 61-63 (Ex. I, Placzek Affidavit; Ex. J, Cassady Affidavit). The facts here are much worse than other summary judgment cases cited. The FDIC has judicially admitted, and OneBeacon does not dispute for purposes of this motion, that Sykes and Sundry acted dishonestly in connection with the Pendolino Loan. SMF 27. Sykes knew this fact and yet failed to disclose his actions on the application for the Bond. Additionally, the FDIC further admits that Sykes and Sundry acted dishonestly in connection with the Village Walk Loan. SMF 35-40. If its allegations are true, then Sykes made material misrepresentations in connection with the application for the Bond. Of course, if the FDIC's allegations concerning Sykes and Sundry's conduct are incorrect, then there can be no coverage under the Bond. The

FDIC cannot have its cake and eat it too. If it is correct, and there otherwise could be coverage under the Bond because Sykes and Sundry acted dishonestly,[5] then Sykes obviously knew about it and should have revealed the same in the Bank's application for the Bond. He did not do so, and thus there was a material misrepresentation in the Bond giving rise to a complete defense to coverage.

## V.
## ONEBEACON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE COVERAGE FOR SYKES AND SUNDRY TERMINATED UNDER THE BOND AT THE MOMENT THE BANK LEARNED OF THEIR DISHONEST CONDUCT IN CONNECTION WITH THE PENDOLINO LOAN, LONG BEFORE THE VILLAGE WALK LOAN WAS MADE

The Bond provides as follows:

This Bond terminates as to any Employee . . .

(i)     As soon as any titled officer, branch manager, risk manager, or any director or trustee of the Insured not in collusion with such person, learns of any dishonest or fraudulent employment related act

. . . committed by such personal at any time, whether in the employment of the Insured or otherwise, whether or not the type covered under Insuring Agreement (A), against the Insured or any other person or entity, without prejudice to the loss of any Property then in transit in the custody of such person.

Depo. Ex. 70, Bond, V. General Agreements and Conditions.

Termination provisions such as the one in the Bond have been held to be valid and enforceable provisions under Illinois law, and courts have commented that enforcing such provisions is a matter of fundamental fairness because an insured should not be compensated for losses caused by the misconduct of its employees of which it was aware and did nothing to prevent. *Kinzer v. Fidelity & Deposit Co. of Maryland*, 652 N.E.2d 20, 27 (Ill. Ct. App. 1995); *see also, Community Sav. Bank v.*

---

[5] Of course, even if Sykes and Sundry acted dishonestly, this is not enough for coverage. The FDIC also would need to prove that they acted in collusion with the borrowers, intended to cause the Bank to sustain a loss, and received an improper financial benefit in connection with the loan.

*Federal Ins. Co.*, 960 F. Supp. 16, 20 (D. Conn. 1997). Courts from around the country have similarly enforced the termination provision, based upon the fact that an insured discovered dishonest conduct by its employee. *See, e.g., Adair State Bank v. Am. Cas. Co. Reading, Pa.,* 949 F.2d 1067, 1075-76 (10th Cir. 1991); *City State Bank v. United States Fidelity & Guaranty Co.*, 778 F.2d 1103, 1109 (5th Cir. 1985); *First Nat. Bank of Sikeston v. Transamerica Ins. Co.*, 514 F.2d 981, 987 (8th Cir. 1975); *Troy State Bank v. Bancinsure, Inc.*, No. 92115, 2005 Kan. App. Unpub. LEXIS 120, *12-13 (Kan. Ct. App. April 8, 2005); *Fidelity & Casualty Co. v. Central Bank of Houston*, 672 S.W.2d 641, 644 (Tex. App. 1984). The intent of a termination provision "clearly is to encourage the insured to release dishonest employees." *Adair State Bank*, 949 F.2d at 1076; *see also Newhard, Cook & Co. v. INA*, 929 F.2d 1355, 1358 (8th Cir. 1991). In a case such as this, where directors and officers of the Bank learned of dishonesty by Sykes and Sundry prior to the Bond being issued, coverage as to them never incepted. *See, e.g., First Sec. Sav. v. Kan. Bankers Sur. Co.*, 849 F.2d 345, 350 (8th Cir. 1988); *C. Douglas Wilson & Co. v. INA*, 590 F.2d 1275, 1278-79 (4th Cir. 1979); *RTC v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1388 (D. Ariz. 1994).

The termination provision is very broad, applying when an officer or director learns of "**any** dishonest or fraudulent employment related act," regardless of whether that dishonesty has or will lead to a type of loss covered by the Bond. *See First Nat'l Bank of Louisville v. Lustig*, 961 F.2d 1162, 1168 (5th Cir. 1992) (emphasis added) (noting that discovery of dishonest acts short of those triggering coverage will terminate coverage); *Alcona Cnty. v. Mich. Mun. League*, No. 292115, 2011 Mich. App. LEXIS 473, at *17 (Mich. Ct. App. Mar. 10, 2011) (term dishonesty in termination provision

does not require proof of all elements of insuring clause). To be dishonest, the action need only involve "bad faith, or a want of integrity or untrustworthiness or a disposition to lie or cheat or a faithlessness to a trust." *C. Douglas Wilson & Co. v. Ins. Co. of N. Am.*, 590 F.2d at 1278-79; *Capital Bank & Trust Co. v. Gulf Ins. Co.*, 91 A.D.3d 1251, 1253 (N.Y. App. Div. 2012) (defining dishonest or fraudulent acts to "broadly include acts that demonstrate a want of integrity, breach of trust or moral turpitude affecting the official fidelity or character of the employee"); *Troy State* Bank, 2005 Kan. App. Unpub. LEXIS 120, at *9 (dishonest and fraudulent defined broadly to mean "a want of integrity or breach of trust"). The rationale behind a broad definition of "dishonesty" in the context of termination provisions is clear: an insured that knowingly employs a dishonest individual must bear the risk of any loss from actions by that employee. *Ellenberg v. Certain Underwriters at Lloyd's*, 187 B.R. 785, 804 (Bankr. N.D. Ga. 1995). The termination provision "rests upon a policy that the employer should reasonably supervise its employees, particularly since the insured is in a better position than the insurer to monitor the activities." *Newhard, Cook & Co.*, 929 F.2d at 1358. The provision "simply embodies the equitable concept that it is unfair to impose upon an insurer the risk of loss from an employee whom the employer knows or has ample reason to suspect is dishonest, but continues to employ." *Cooper Sportswear Mfg. Co. v. Hartford Cas. Co.*, 818 F. Supp. 721, 724 (D.N.J. 1993).

Courts have found knowledge of dishonesty giving rise to termination in many instances, such as: where officers knew that an employee had issued an unauthorized limited partnership offering;[6] where officers knew of unusual drafts coupled with

---

[6] *See Newhard, Cook & Co.*, 929 F.2d at 1357.

knowledge that large sums were being deposited in third party account;[7] where officers knew that an employee made fictitious loans;[8] where officers knew of prior theft even where they did not consider it to be serious and charges were dismissed;[9] where officers knew the employee was violating bank policies;[10] where officers made unauthorized loans;[11] where officers knew the employee had made loans in which there was a conflict of interest;[12] and where officers knew an employee raised her credit limit without authorization.[13]

Cases have held that where an employee creates a conflict of interest, looks after his own benefit, or acts in disregard of his employer's interests, he is acting fraudulently and dishonesty under the Bond. *Boston Sec., Inc. v. United Bonding Ins. Co.*, 441 F.2d 1302, 1304 (8th Cir. 1971); *Miami Nat'l Bank v. Penn. Ins. Co.*, 314 F. Supp. 858 (S.D. Fla. 1970). An Insured's knowledge of its employee's self-dealing and/or conflict of interest constitutes discovery for termination purposes. *First Nat. Bank of Sikeston v. Transamerica Ins. Co.*, 514 F.2d at 987; *Community Sav. Bank v. Federal Ins. Co.*, 960 F. Supp. at 20; *RTC v. Aetna Cas. & Surety Co.*, 873 F. Supp. at 1391; *Troy State Bank*, 2005 Kan. App. LEXIS 120, at *12-13. As set forth in the Bond, when any officer or director not in collusion with the employee learns of *any* dishonest or fraudulent employment related act, coverage for the dishonest employee terminates immediately. The conduct need not be something that would be covered under Insuring Agreement (A) of the Bond. One Illinois court reviewing a termination provision

---

[7] *City State Bank v. USF&G*, 778 F.2d at 1108-09.
[8] *Cent. Progressive Bank v. Fireman's Fund Ins. Co.*, 658 F.2d 377, 379-83 (5th Cir. 1981).
[9] *Ritchie Grocer Co. v. Aetna Cas. & Sur. Co.*, 426 F.2d 499, 503-04 (8th Cir. 1970).
[10] *Cmty. Sav. Bank v. Fed. Ins. Co.*, 960 F. Supp. At 18-20.
[11] *RTC v. Aetna Cas. and Sur. Co.*, 873 F. Supp. At 1391.
[12] *Central Bank of Houston*, 672 S.W.2d at 645.
[13] *Troy State Bank*, 2005 Kan. App. Unpub. LEXIS 120, at *11.

determined that what an insured should have concluded from facts of which it was actually aware would be governed by an objective standard. *Kinzer*, 652 N.E.2d at 27.

In the current case, determining what Wheatland should have concluded in 2007 (based upon the reasonably prudent insured standard) is not necessary because it is known what Wheatland eventually did conclude. Wheatland concluded that the conflict of interest and omissions were dishonest and fraudulent conduct under the meaning of the Bond, as Wheatland asserted and described in the sworn Proof of Loss it provided to OneBeacon. The facts associated with the conflicts of interest and omissions described in the April 2010 Proof of Loss were known as a matter of fact to Wheatland Bank in March 2007, from a written disclosure from Sykes to Eichas. SMF 20-21, 26. Separate and apart from that first incident, the facts associated with another conflict of interest and omission were known on December 12, 2007, from the written Loan Approval Request form presented to the Loan Committee and the discussion during the Loan Committee meeting. SMF 36-40. Accordingly, termination of coverage for both Sykes and Sundry occurred in March 2007.

These facts are quite similar to those presented in *Community Savings Bank v. Federal Insurance Company*, 960 F. Supp. 16 (D. Conn. 1997), where a bank president was accused of violating the bank's conflict of interest policies and Regulation O. In that case, the court determined by summary judgment that where certain directors of the bank not in collusion with the accused employee were aware of facts about the loans and the violations of banking rules, such knowledge constituted a sufficient grounds to terminate coverage under the Bond as to the employee from that date forward. *Id.* at 20.

Under the facts of this case, termination for both Sykes and Sundry occurred in March 2007, when the facts of the Pendolino Loan were disclosed to another officer and director at Wheatland. SMF 20-21. OneBeacon is entitled to summary judgment in its favor on the issue of termination of coverage. The Bank's Proof of Loss alleged that it sustained a loss as a result of dishonest and fraudulent conduct of Sykes and Sundry. That sworn Proof of Loss alleged that dishonest and fraudulent conduct occurred in March 2007 in connection with the Pendolino Loan. SMF 26. A Pendolino Loan was actually closed on March 16, 2007 by two separate lenders: Wheatland Bank and Mezzanine Finance.

Prior to the actual funding by Wheatland Bank, Sykes disclosed in writing to Len Eichas, Vice President of Wheatland, a loan officer, a Director of Wheatland, and an employee who was not alleged to be in collusion of any kind with Sykes, that the next day there would be a closing for the Pendolinos with a first mortgage with Wheatland Bank and a second loan by Mezzanine Finance. The written disclosure even stated that Mezzanine Financial was owned by Sykes, Sundry, and a third partner (although Eichas was aware of the company), and that Mezzanine had approved the second loan and the amount of the loan the prior night. SMF 20-21.

The Loan Approval Request for that Pendolino Loan was later presented to the loan committee on March 21, 2007 for ex post facto approval. SMF 22. The committee was provided with the Loan Approval Request and a presentation regarding the ex post facto loans. SMF 22. Accordingly, by March 2007, Wheatland Bank (through Len Eichas, both a titled officer and a director) was aware of a conflict of interest by Sykes and Sundry in regard to a Pendolino Loan that Sykes personally approved, and an

omission of facts regarding that loan in the written Loan Approval Request (approved by Sykes earlier in March and made a part of the Wheatland Bank records). The conflict of interest and self-dealing would have been a violation of the formal Conflict of Interest Policy of Wheatland Bank. That conflict of interest was later alleged by Wheatland to constitute fraudulent and dishonest conduct in the sworn Proof of Loss that was submitted and signed under oath in April 2010. SMF 26. However, in this instance, Wheatland Bank, through an officer and director not in collusion with Sykes or Sundry, was aware of the allegedly fraudulent and dishonest conduct in March 2007. Therefore, as of March 2007, coverage terminated for both Sykes and Sundry.

A similar discovery by Wheatland Bank of a conflict of interest and self-dealing occurred in connection with the Village Walk Loan in early December 2007. On December 12, 2007, Sykes presented the Loan Approval Request form for the Village Walk Loan to the Loan Committee. SMF 33. The Loan Approval Request form stated that the borrower had an existing loan with Mezzanine Finance, which was the Sykes and Sundry business. SMF 31-33. The committee minutes state that the conflict was disclosed to the committee members. SMF 33. The members of that committee, who were officers and directors, had knowledge of that conflict and self-dealing on December 12, 2007, as a result of the meeting. SMF 33, 42, 43. The conflict of interest was later alleged by Wheatland to constitute fraudulent and dishonest conduct in the Sworn Proof of Loss provided in April 2010. SMF 34. In this instance as well, coverage would have terminated no later than December 12, 2007 (in advance of the funding of the Village Walk Loan and in advance of any loss to the bank).

## VI.

## ONEBEACON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE FDIC ADMITS THERE WAS NO COLLUSION BETWEEN SYKES AND/OR SUNDRY AND VILLAGE WALK

In order for there to be coverage for the FDIC's claim, the FDIC must prove all the conditions stated in Insuring Agreement (A), Employee Dishonesty, dealing with loans. Insuring Agreement (A) clearly states that when an insured's loss results directly or indirectly from loans, that loss is not covered unless that "Employee [at the Bank] was in collusion with one or more parties to the transaction." SMF 65; Bond, Insuring Agreement A. The word "transaction" clearly refers to the loan which is referred to in the introductory clause of the sentence. The collusion condition is imposed solely within the context of loan coverage in Insuring Agreement (A). Such language makes it explicitly clear that the accused employee (acting for the Bank) must collude with another party to the loan, meaning the borrower. Here, the FDIC admits that neither Sykes nor Sundry acted in collusion with Village Walk, or any other person or entity. Rather, it merely alleges that Sykes and Sundry acted in collusion with each other in order to cause the Bank to approve the loan. This allegation is not enough for coverage under the Bond.

Under Illinois law, "a court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Crum & Forster Managers Corp. v. RTC*, 620 N.E.2d 1073, 1077-78 (Ill. 1993). Here, in order for there to be coverage there must be collusion between the "parties to the transaction." In the normal course, the parties to a loan transaction are the bank, as lender, and the customers, as borrower. Thus, in

order for there to be coverage, there must be collusion between representatives of the bank, on the one hand, and the borrower or its representatives, on the other hand.

Not unsurprisingly, then, every single published decision analyzing the collusion issue requires collusion between the bank employee and the bank's borrower. *See, e.g, Nat'l Bank of Andover v. Kan. Bankers Sur. Co.*, 225 P.3d 707, 730-31 (Kan. 2010) (collusion requirement satisfied by evidence of collusion between insured's cashier and customers); *Peoples State Bank v. American Casualty Co.*, 818 F. Supp. 1073, 1078 n.5 (E.D. Mich. 1993) (through "loan loss provision, insurers were attempting to limit their liability to situations where the loan officer was getting a substantial benefit for conspiring with a customer to defraud the bank"); *Bankinsure, Inc. v. Peoples Bank of the South*, 866 F. Supp. 2d 577, 589 (S.D. Miss. 2012) (finding fact issue regarding alleged collusion between bank employee and customer); *Kan. Bankers Sur. Co. v. Farmers State Bank*, 408 F. Supp. 2d 751, 756 (S.D. Iowa 2005) (assuming that loans were only covered if the employee was in collusion with the borrower); *Oxford Bank & Trust v. Hartford Accident & Indem. Co.*, 698 N.E.2d 204, 210-12 (Ill. App. Ct. 1998) (discussing potential collusion between employee and borrower as relevant); *Hudson United Bank v. Progressive Cas. Ins. Co.*, 284 F. Supp. 2d 249, 254 (E.D. Pa. 2003) (loan losses not "recoverable absent proof of collusion between a bank employee and a third party"); *Standard Chartered Bank v. Milus*, 826 F. Supp. 310, 313 (D. Ariz. 1990) (no evidence of collusion between bank vice president and borrowers); *Progressive Cas. Ins. Co. v. First Bank*, 828 F. Supp. 473, 475 (S.D. Tex. 1993) (granting summary judgment for insurer due to lack of allegation or evidence of employee's collusion with borrower).

**Defendant OneBeacon Midwest Insurance Company's Memorandum In Support Of Motion For Summary Judgment**
5125330.5/SP/15247/0107/081613

**Page 21**

In *Progressive Casualty Insurance Company v. First Bank*, 828 F. Supp. 473, the court emphasized the importance of the collusion requirement, noting: "There must be collusion, at least inferable, from the banker's personal secret gain." *Id.* at 476. In the court's mind, it was necessary that the borrowers actually be implicated in the officer's wrongdoing: "The bank does not allege borrower dishonesty. The bank's only complaint is that [the former president] violated loan policies and violated other bank policies . . . these violations in no way implicate the borrower." *Id.* at 475.

Similarly, in *Standard Chartered v. Milus*, 826 F. Supp. 310, the loan officer allegedly made billions of dollars in unauthorized loans to two financially illiquid borrowers in order to ensure that the borrowers did not default on other loans. The district court agreed that the loan officer was not in collusion with the borrowers, finding that neither a conspiracy nor collusion existed between the officer and customers, and noting that "loans are not a commodity inherently susceptible to illegal abuse . . . [in that] the mere act of procuring a loan, even when given negligently or recklessly by the loan officer, does not inherently place a borrower on notice of possible illegal activity on the part of the loan officer." *Id.* at *2.

In *Peoples State Bank v. American Casualty Company*, 818 F. Supp. 1073, the district court put the purpose behind coverage under the employee dishonesty insuring agreement in context:

> [T]he loan loss provision of insuring agreement (A) was intended to protect insurers from having to pay for bad loans that were extended after an officer's acceptance of "favors," such as small financial kickbacks, theatre tickets or other minimal inducements. Through the loan loss provision, insurers were attempting to limit their liability to the situations where the loan officer was getting a substantial benefit for conspiring with a **customer** to defraud the bank . . . .

*Id.* at 1077 n.5 (emphasis added).

These authorities make clear how critical the collusions between employee and borrower is as a condition for coverage. Here, the FDIC acknowledges that neither Sykes nor Sundry acted in collusion with any borrowers. Therefore, the FDIC has failed to satisfy a condition to coverage under the Bond and summary judgment is proper for OneBeacon.

## VII.
## SUMMARY

The summary judgment evidence on file establishes that OneBeacon is entitled to summary judgment, as a matter of law, on three distinct bases. First, summary judgment is proper for OneBeacon because there can be no coverage for the FDIC's claims as a result of the Bank's material misrepresentations in its application for the coverage. Second, summary judgment is proper because the Bank was aware of dishonest conduct by Sykes and Sundry in March 2007, and coverage for those employees terminated at that time. Summary judgment is also proper because, at the very least, coverage for Sykes and Sundry terminated on December 12, 2007, when the Bank indisputably became aware of Sykes and Sundry's conflict of interest (and allegedly dishonest conduct) with respect to the Village Walk loan. Finally, summary judgment is proper because the FDIC admits that there was no collusion by Sykes and Sundry with the borrower in the loan at issue. Collusion with the borrower is a condition to coverage that cannot be satisfied.

Wherefore, for the foregoing reasons, OneBeacon respectfully requests that this Court grant summary judgment in its favor on the affirmative defense that the Bond was void, voidable, or unenforceable, and on the issue of coverage as presented in the

Plaintiff's Complaint, and grant One Beacon such other relief, both at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

/s/Michael Keeley
MICHAEL KEELEY
Texas Bar No. 11157800
Admitted Pro Hac Vice
michael.keeley@strasburger.com
TONI SCOTT REED
Texas Bar No. 07788376
Admitted Pro Hac Vice
toni.reed@strasburger.com
JUSTIN P. MELKUS
Texas Bar No. 21041469
Admitted Pro Hac Vice
justin.melkus@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, TX 75202
(214) 651-4300
(214) 651-4303 – fax

MICHAEL P. TONE
michael.tone@wilsonelser.com
WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER, LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
(312) 704-0550

**COUNSEL FOR DEFENDANT
ONEBEACON MIDWEST INSURANCE
COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the Court's CM/ECF website on August 16, 2013, on all counsel of record on the Service List below.

Antony S. Burt
aburt@schiffhardin.com
David C. Giles
dgiles@schiffhardin
Lawrence H. Heftman
lheftman@schiffhardin.com
Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606


/s/ Michael Keeley
Michael Keeley